LATHAM & WATKINS LLP
Elizabeth L. Deeley (CA Bar No. 230798)
    *elizabeth.deeley@lw.com*
Nicole C. Valco (CA Bar No. 258506)
    *nicole.valco@lw.com*
Robin L. Kuntz (CA Bar No. 305048)
    *robin.kuntz@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA  94111-6538
Telephone:  +1.415.391.0600
Facsimile:  +1.415.395.8095

Susan E. Engel (*pro hac vice pending*)
    *susan.engel@lw.com*
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone:  +1.202.637-2200
Facsimile:  +1.202.637-2201

*Attorneys for Defendant Facebook, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

|  |  |
|---|---|
| INTEGRITYMESSAGEBOARDS.COM, LLC, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No. 4:18-cv-05286 PJH<br><br>**FACEBOOK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:  February 13, 2019<br>Time: 9:00 a.m.<br>Court:  Courtroom 3, 3rd Floor<br>Hon. Phyllis J. Hamilton |

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2

**TO PLAINTIFF AND TO ITS ATTORNEYS OF RECORD:**

3

PLEASE TAKE NOTICE that on February 13, 2019, at 9:00 a.m. in Courtroom 3 of the

4  United States District Court for the Northern District of California, located at 1301 Clay Street,

5  Oakland, California, Defendant Facebook, Inc. will and hereby does move for an order dismissing

6  Plaintiff's Class Action Complaint ("Complaint").  This motion is made pursuant to Federal Rules

7  of Civil Procedure 8(a), 9(b), 12(b)(1), and 12(b)(6), on the grounds that (1) Plaintiff lacks standing

8  to seek injunctive relief; and (2) Plaintiff's Complaint fails to state a claim as a matter of law.

9

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and

10  Authorities, Defendant's Request for Judicial Notice and the declaration of Robin L. Kuntz

11  enclosed therewith, the pleadings and papers on file in this action, the arguments of counsel, and

12  any other matter that the Court may properly consider.

13

## STATEMENT OF RELIEF SOUGHT

14

Facebook seeks an order pursuant to Federal Rules of Civil Procedure 12(b)(1) and

15  12(b)(6) dismissing with prejudice the Complaint for lack of standing and failure to state a claim

16  upon which relief can be granted.

17

18  DATED:  November 13, 2018                    Latham & Watkins LLP

19                                               By:    /s/ Elizabeth L. Deeley
                                                        Elizabeth L. Deeley (CA Bar No. 230798)
20                                                      Nicole C. Valco (CA Bar No. 258506)
                                                        Robin L. Kuntz (CA Bar No. 305048)
21                                                      505 Montgomery Street, Suite 2000
                                                        San Francisco, CA  94111-6538
22                                                      *elizabeth.deeley@lw.com*
                                                        *nicole.valco@lw.com*
23                                                      *robin.kuntz@lw.com*

24                                                      Susan E. Engel (*pro hac vice pending*)
                                                        555 Eleventh Street, N.W., Suite 1000
25                                                      Washington, D.C. 20004
                                                        Telephone:  +1.202.637-2200
26                                                      Facsimile:  +1.202.637-2201
                                                        *susan.engel@lw.com*

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...........................................................................................................1

II.     BACKGROUND ...........................................................................................................3

     A.   Advertising On Facebook ................................................................................3
     B.   Plaintiff's Allegations Regarding Ad Delivery To Target Audiences....................4
     C.   Plaintiff's Ad Campaigns...................................................................................5

          1.   Plaintiff's IV Likes Campaign ...............................................................5
          2.   Plaintiff's SCD Likes Campaign ............................................................6

III.    LEGAL STANDARD....................................................................................................7

IV.     THE COMPLAINT MUST BE DISMISSED ...............................................................8

     A.   The Complaint Must Be Dismissed Because Plaintiff's Allegations Lack
         The Specificity Required By Rule 9(b) ...........................................................9

          1.   Plaintiff Does Not Plead With Particularity That Facebook Made
             Any Guarantees Regarding Its Ad Targeting Accuracy .............................9
          2.   Plaintiff Does Not Plead With Particularity That Facebook Misled
             It By "Programmatically" Displaying Its Ads To Users Outside
             The Ad's Target Audience...........................................................................9

             a.   Plaintiff Does Not Plead That Facebook Programmatically
                 Displayed Ads To Users Outside the Target Audience
                 During The IV Likes Campaign ....................................................10
              b.   Plaintiff Does Not Plead That Facebook Programmatically
                 Displayed Ads To Users Outside the Target Audience
                 During The SCD Likes Campaign..................................................11

     B.   Plaintiff Fails To Plead Statutory Standing Under The UCL ...............................12

          1.   Plaintiff Lacks Standing Because It Fails To Plead An Economic
             Injury Resulting From The Alleged Misrepresentations ..........................12
          2.   Plaintiff's Claims Are Limited To The Misrepresentations On
             Which It Alleges It Relied ........................................................................13

     C.   Plaintiff Fails To State A UCL Claim On The Merits ...........................................15

          1.   Plaintiff Fails To State A Claim Under The "Fraudulent" Prong Of
             The UCL .................................................................................................15

             a.   Plaintiff Fails To Show How Nielsen's 89 Percent Figure Is
                 False Or Misleading......................................................................16
              b.   Plaintiff Fails To Show How The Statements It Alleges It
                 Saw And Relied Upon Are False Or Misleading...........................17

2.   Plaintiff Fails To State A Claim Under The "Unfair" Prong Of The UCL ........................................................................................18

3.   Plaintiff Fails To State A Claim Under The "Unlawful" Prong Of The UCL ...............................................................................20

D.   Plaintiff Fails To Plead Standing For Injunctive Relief Because It Does Not Allege A Threat Of Future Harm ...............................................21

V.   CONCLUSION ...........................................................................................22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Actimmune Mktg. Litig.*,
   No. 08-cv-02376 MHP, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009), *aff'd*,
   464 F. App'x 651 (9th Cir. 2011) ...........................................................................................18

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,
   2013 WL 3460707 (N.D. Cal. July 9, 2013)..........................................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................................3, 7, 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................................................7

*Bias v. Wells Fargo & Co.*,
   942 F. Supp. 2d 915 (N.D. Cal. 2013) ...................................................................................18

*Bly-Magee v. California*,
   236 F.3d 1014 (9th Cir. 2001) ..................................................................................................8

*Cafasso v. Gen. Dynamics C4 Sys.*,
   637 F.3d 1047 (9th Cir. 2011) ................................................................................................16

*Chapman v. Skype Inc.*,
   220 Cal. App. 4th 217 (2013) ...........................................................................................15, 16

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)..................................................................................................................22

*Claridge v. RockYou, Inc.*,
   785 F. Supp. 2d 855 (N.D. Cal. 2011) ...................................................................................20

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) .........................................................................................9, 21, 22

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ................................................................................................17

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ...............................................................................................14

*In re Facebook PPC Advert. Litig.*,
   No. 09-cv-3043-JF, 2010 WL 5174021 (N.D. Cal. Dec. 15, 2010) .......................................18

*Figy v. Amy's Kitchen, Inc.*,
  No. CV 13-03816 SI, 2013 WL 6169503 (N.D. Cal. Nov. 25, 2013) ...................................14

*Frenzel v. AliphCom*,
  76 F. Supp. 3d 999 (N.D. Cal. 2014) ...................................................................................21

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*,
  528 U.S. 167 (2000)..............................................................................................................21

*Garcia v. Sony Computer Entm't Am., LLC*,
  859 F. Supp. 2d 1056 (N.D. Cal. 2012) ...............................................................................15

*In re Gilead Scis. Secs. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ................................................................................................7

*Glen Holly Entm't, Inc. v. Tektronix Inc.*,
  343 F.3d 1000 (9th Cir. 2003) ..............................................................................................15

*In re Google, Inc. Privacy Policy Litig.*,
  58 F. Supp. 3d 968 (N.D. Cal. 2014) ...................................................................................21

*Hadley v. Kellogg Sales Co.*,
  273 F. Supp. 3d 1052 (N.D. Cal. 2017) .............................................................................2, 15

*Hutchins v. Nationstar Mortg. LLC*,
  No. 16-CV-07067-PJH, 2017 WL 4224720 (N.D. Cal. Sept. 22, 2017) ...............................12

*In re iPhone Application Litig.*,
  6 F. Supp. 3d 1004 (N.D. Cal. 2013) ...................................................................................13

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ................................................................................................8

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) .........................................................................................................12

*Labra v. Cal-W. Reconveyance Corp.*,
  No. C 09-2537 PJH, 2010 WL 889537 (N.D. Cal. Mar. 11, 2010) ..................................19, 21

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (2003) ...............................................................................................15

*Letizia v. Facebook, Inc.*,
  267 F. Supp. 3d 1235 (N.D. Cal. 2017) .......................................................................*passim*

*Lozano v. AT&T Wireless Servs., Inc.*,
  504 F.3d 718 (9th Cir. 2007) ................................................................................................20

*Noll v. eBay, Inc.*,
  282 F.R.D. 462 (N.D. Cal. 2012).............................................................................................8

*Punian v. Gillette Co.*,
No. 14-cv-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016).................................18

*Rosado v. eBay Inc.*,
53 F. Supp. 3d 1256 (N.D. Cal. 2014) ....................................................................................21

*Rosal v. First Fed. Bank of California*,
671 F. Supp. 2d 1111 (N.D. Cal. 2009) ............................................................................20, 21

*United States ex. rel. Silingo v. WellPoint, Inc.*,
904 F.3d 667 (9th Cir. 2018) ..............................................................................................8, 9

*Singh v. Google LLC*,
No. 16-cv-03734-BLF, 2018 WL 984854 (N.D. Cal. Feb. 20, 2018) ........................... *passim*

*Smith v. LG Elecs. U.S.A., Inc.*,
No. C 13-4361 PJH, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014) ....................................18, 19

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)................................................................................................................22

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) .....................................................................................................13, 21

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .................................................................................................8

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
2017 WL 3727318, No. 16-MD-02752-LHK (N.D. Cal. Aug. 30, 2017)..................14, 16, 17

**STATUTES**

Cal. Bus. & Prof. Code
§ 17200, *et seq.* ...........................................................................................7, 15, 18, 20
§ 17204....................................................................................................................12
§ 17500, *et seq.* ..................................................................................................7, 20

**RULES**

Fed. R. Civ. P.
9(b)................................................................................................................... *passim*
12(b)(1) ..................................................................................................................8, 22

1

## I.     INTRODUCTION

Plaintiff IntegrityMessageBoards.com, LLC, alleges that Defendant Facebook, Inc. violated California's Unfair Competition Law ("UCL") by misrepresenting the accuracy with which it delivers advertisements to a "target audience," and then "programmatically" displaying ads to users outside the target audience and charging the advertiser for mistargeted ads.  *See* Class Action Compl. (Dkt. No. 1) ("Compl.") ¶¶ 9-11.  The Complaint must be dismissed because (1) Plaintiff's UCL claim sounds in fraud and Plaintiff fails to allege facts with specificity as required by Federal Rule of Civil Procedure 9(b); (2) Plaintiff lacks UCL standing; and (3) the UCL claim fails on the merits.

First, Plaintiff fails to plead with specificity as required by Rule 9(b) that Facebook made any guarantees regarding its ad targeting accuracy or that it misled advertisers by "programmatically" displayed ads to users outside of Plaintiff's target audiences.  The Complaint stumbles at the outset because Facebook makes clear to advertisers that while it "do[es] [its] best to deliver the ads to the audience [an advertiser] specif[ies]," it "cannot guarantee in every instance that [the] ad will reach [its] intended target."  Ex. A (Self-Serve Ad Terms dated November 15, 2014) ¶ 1.[1]  Indeed, during the time when Plaintiff advertised on the platform, Facebook specifically disclosed the following:  "In instances where we believe doing so will enhance the effectiveness of your advertising campaign, *we may broaden the targeting criteria you specify*."  Ex. A ¶ 2 (emphasis added).  Recognizing this hurdle, the Complaint does not allege that Facebook guaranteed 100 percent accuracy but instead alleges that Facebook touted an 89 percent "average online reach."  Compl. ¶¶ 23-25, 66, 77.  That figure comes from a 2013 Nielsen study that purportedly compared the "average online reach" for "narrowly targeted [advertising] campaigns" on Facebook versus other platforms and asserted that the accuracy of such campaigns on Facebook

---

[1] Citations to "Ex." are to the exhibits to the declaration of Robin L. Kuntz (the "Declaration") filed concurrently with this Motion.  Exhibits to the Declaration are incorporated by reference by the Complaint and/or are proper subjects for judicial notice, for the reasons set forth in the accompanying Request for Judicial Notice.

The current Self-Serve Ad Terms also state that Facebook "use[s] [its] best efforts to deliver the ads to the audience [an advertiser] specif[ies]" but "cannot guarantee in every instance that [the] ad will reach [its] intended target."  Ex. B (Self-Serve Ad Terms effective May 25, 2018) at 1.

was 89 percent.  Compl. ¶¶ 23-25.  Plaintiff does not specify when, where, or for how long that figure allegedly appeared on Facebook's website, the context of the statement and surrounding representations or disclosures, or any information about the campaigns that were the subject of the Nielsen study.  Moreover, the term "reach" generally refers to the number (or relative percentage) of people in a target audience to whom an ad was displayed.  The Complaint contains no facts about the results of the campaigns in terms of the number of people to whom the ad was displayed. Plaintiff's claim rests on something different—partial data (eight "Likes" over three days) that says nothing about the accuracy of Facebook's alleged representation about the "average online reach" of certain "narrowly targeted campaigns," much less a plausible basis from which one can draw an inference that Facebook was "programmatically" delivering ads to a non-target audience.

Second, Plaintiff lacks standing to bring its UCL claim.  Plaintiff fails to allege any economic injury, because it alleges no particularized facts about the overall results of its campaigns, and thus cannot show it was actually charged for some (or even any) mistargeted ads. *See Singh v. Google LLC*, No. 16-cv-03734-BLF, 2018 WL 984854, at *4-5 (N.D. Cal. Feb. 20, 2018) (finding that plaintiff lacked statutory standing to assert a UCL claim based on Google's representations of the percentage of "invalid" ad clicks an advertiser might pay for, because the complaint did not allege that plaintiff paid for invalid clicks "at a rate above what was advertised"). And Plaintiff fails to allege actual reliance, because it fails to allege that it saw or relied upon the alleged 89 percent "average online reach" figure.  *See Letizia v. Facebook, Inc.*, 267 F. Supp. 3d 1235, 1243 (N.D. Cal. 2017) ("[A] plaintiff must have actually relied on the misrepresentation . . . in order to have standing to sue.").

Third, Plaintiff's claim fails on the merits, because (i) there is no plausible basis for inferring that the accuracy rate of its campaigns was below the 89 percent "average online reach" figure, and thus no basis for finding the alleged 89 percent representation to be false or misleading; and (ii) none of the other representations that Plaintiff alleges it relied upon say anything about a specific accuracy rate.  *See Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1081 (N.D. Cal. 2017) (where a plaintiff's allegations are "[g]eneralized, vague, and unspecific," they are not actionable under the UCL).

1    For all of these reasons, Facebook respectfully requests that the Court dismiss Plaintiff's

2  UCL claim with prejudice.  Facebook also requests that the Court dismiss Plaintiff's request for

3  injunctive relief because it does not allege a threat of future harm and thus lacks standing.

4  **II.    BACKGROUND**

5    **A.    Advertising On Facebook**

6    Facebook provides a self-serve ad interface called "Ads Manager" to any advertiser who

7  wants to advertise on Facebook's platform.  Compl. ¶ 8.[2]  Advertisers can use Ads Manager to

8  create and manage advertising "campaigns," and Facebook displays their ads to Facebook users.

9  *See id.* ¶¶ 8, 28.

10    As the first step of setting up a campaign, Ads Manager allows advertisers to select an

11  "objective" for the campaign, one of which is to secure more "Likes" for a Facebook "Page."[3]

12  *Id.* ¶ 29.  Facebook "optimizes" delivery of an ad based, in part, on the advertiser's chosen

13  campaign objective.  *Id.* ¶ 45.  For example, if the objective is to increase Page Likes, Facebook

14  will attempt to optimize the ads to reach people who are more likely to Like the advertiser's page.

15  *See id.*  After setting the campaign objective, an advertiser creates an "ad set," defining the "target"

16  audience of Facebook users to whom it wants its ads displayed based on various criteria, such as

17  location, demographics, and interests.  *Id.* ¶ 32.  Finally, advertisers can select the event for which

18  they are charged; for example, they can choose to be charged for "impressions"—i.e., the number

19  of times an ad is displayed to users—or for Likes to their Facebook Page.  *See id.* ¶¶ 59, 76.  The

20  event for which an advertiser is charged is not necessarily the same as the "optimization event"

21  associated with the campaign objective.  *See id.* ¶¶ 56, 59.

22    In the Self-Serve Ad Terms—to which all advertisers on Facebook's platform agree—

23  Facebook informs advertisers that Facebook "do[es] [its] best to deliver the ads to the audience

24

---

25  [2] While Facebook disputes Plaintiff's allegations, for purposes of this motion only Facebook accepts them as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

26  [3] With respect to "Pages" and "Likes," Plaintiff states:  "Having a 'Page' on Facebook is a prerequisite for advertising on Facebook.  A 'Page' is a free public profile hosted by Facebook

27  through which businesses and other organizations, brands, public figures, and causes, can interact with individual Facebook users.  To publicly endorse a business, individuals can 'Like' its

28  Facebook Page."  Compl. ¶ 31 n.11.

[an advertiser] specif[ies]" but that it "cannot guarantee in every instance that [the] ad will reach [its] intended target." Ex. A ¶ 1.[4]

### B.     Plaintiff's Allegations Regarding Ad Delivery To Target Audiences

Plaintiff IntegrityMessageBoards.com, a company doing business as Investor Village,[5] alleges that Facebook deceived advertisers by allegedly representing it would display ads only to users *within* the target audience, but then "programmatically" displaying ads to users outside the target audience and charging advertisers for those allegedly mistargeted ads.  Compl. ¶¶ 9, 15.  But Plaintiff does not—and cannot—point to any guarantee that Facebook would display ads only to users within the target audience.  To the contrary, Facebook explicitly disclosed in its Self-Serve Ad Terms that "we may broaden the targeting criteria you specify," and that it "cannot guarantee in every instance that [the] ad will reach [its] intended target." Ex. A ¶¶ 1-2.   Instead, to support its claims, Plaintiff points to an alleged "89% accuracy" figure.  *See id.* ¶¶ 10, 64, 66, 70, 77, 79.  As noted above, that number comes from a survey by a company called Nielsen in August 2013 that compared "narrowly targeted campaigns" on Facebook versus other online platforms and calculated an "average online reach" of 89 versus 38 percent, respectively, for such campaigns. *Id.* ¶¶ 23-25.   Reach is generally the number of people who saw an advertiser's ads.  Ex. F at 1. Plaintiff does not allege that it saw or relied on any representation containing the 89 percent "average online reach" figure.

The statements that Plaintiff alleges it actually relied on are only those statements contained in four paragraphs of the Complaint that generally tout Facebook advertising.  *See id.* ¶¶ 65, 67

---

[4] This is, in part, because, particularly at the beginning of an advertising campaign, Facebook does not "have all the data necessary to deliver [ads] as stably as possible." Ex. C at 1.  In order to get that data, Facebook has to "show ads to different types of people to learn who is most likely to get [the advertiser] optimization events," such as Likes to its Page.  *Id* at 2.  This process is called the "Learning Phase," and Facebook typically needs "about 50 optimization events"—e.g., 50 Likes— after the campaign launches to complete the Learning Phase.  *Id.*  Once Facebook has additional data, the ad set "should experience fewer performance fluctuations," and at that point the advertiser can evaluate whether there are any ways to improve the performance of its ads in meeting the advertiser's ad objective.  *Id.*

[5] Investor Village's Facebook Page describes itself as a forum purportedly designed to "serve[] the research & communication needs of hundreds of thousands of self-directed investors from around the world."  Ex. D at 1.  The last post on the Page was December 31, 2015.  Ex. E at 2.  As of November 13, 2018, this Page had 1,318 Likes.  *Id.*

1    (identifying paragraphs 21, 31, 36, and 41).   None of these promotional statements make any

2    specific representation about Facebook's accuracy in displaying ads.

3        **C.    Plaintiff's Ad Campaigns**

4        Plaintiff alleges that it was misled in connection with two ad campaigns that it ran on

5    Facebook's platform: (1) the "IV Likes Campaign" and (2) the "SCD Likes Campaign."

6            1.    Plaintiff's IV Likes Campaign

7        In the IV Likes Campaign launched on August 29, 2015, Compl. ¶ 60, Plaintiff alleges that

8    it selected "the objective of increasing 'Likes'" to the Investor Village Facebook Page, and it

9    created an ad set based on criteria that resulted in a "Potential Reach of 61,000 people for that

10   target audience." *Id.* ¶¶ 33, 58.   Plaintiff alleges few other details about the IV Likes Campaign.

11   In fact, the only facts it alleges about the campaign relate just to the *first few days* that the campaign

12   was running.   Plaintiff claims that, three days after it launched the IV Likes Campaign, its

13   Facebook Page had received 21 Likes, but that Plaintiff "noticed," based on Plaintiff's review of

14   the users' own Facebook profiles and unknown "other reliable third party data," that at least eight

15   of these Likes (i.e., "nearly 40%") were from users outside the target audience. *Id.* ¶¶ 62-64.[6]

16   Plaintiff does not allege any details about the number of Likes it received after the first three days

17   of the campaign.   Nor does it allege that Facebook even delivered Plaintiff's ads to the people who

18   Liked its Page.   Indeed, as Plaintiff alleges, "individuals can 'Like' [a] Facebook Page" if they

19   want to "publicly endorse a business." *Id.* ¶ 31 n.11.   Plaintiff also admits that it elected to be

---

[6] Plaintiff's claims about the identity of the people who liked their Pages are dubious at best, and its conclusion that certain of these users fell outside the target audience should not be credited even if the number of Likes were relevant here. *Cf. Singh*, 2018 WL 984854, at *2 (finding that plaintiff's "personal experiments" purporting to "demonstrate that Google does not sift out a vast majority of invalid clicks" on advertisers' ads were "utterly implausible and would not be admissible in any form" because they are "not scientific").   Plaintiff states that it determined that four of the "initial" Likes to its Page were from users outside the target audience based, in part, on "third party data that Plaintiff accessed." Compl. ¶ 63.   But there is no allegation that Facebook used or even had access to this "third party data," and thus it says nothing about how Facebook determined which users should receive Plaintiff's ads.   In addition, Plaintiff alleges that it "surveyed six of the users who liked its Page as a result of the IV Likes Campaign," and that all of these users "confirmed" that they did not meet the target audience criteria, *id.* ¶ 68, but Plaintiff says nothing about what data Facebook actually relied on when determining who to serve the ad to, or whether the data on which Facebook actually relied in determining the parameters of the target audience "confirmed" that these users were outside the target audience.

charged for "impressions" for the IV Likes Campaign, not for Likes, *id.* ¶ 59, and that it "ultimately paid $1,409.69 to Facebook for impressions generated in connection with the IV Likes Campaign," *id.* ¶ 72 (emphasis added).  Plaintiff does not dispute that its campaign received the number of impressions it paid for.  Nor does plaintiff allege a single fact about how many (if any) *impressions* (as opposed to *Likes*) involved any users outside the target audience.  *Id.* ¶¶ 62-67.

### 2.   Plaintiff's SCD Likes Campaign

Plaintiff launched another campaign, the SCD Likes Campaign, on January 7, 2016, and selected the objective of increasing "Likes" for Plaintiff's "Small Cap Directory" Facebook Page.[7] Compl. ¶¶ 73-74.  It defined a broader target audience than the one it defined for the IV Likes Campaign, with an alleged "potential reach of the defined audience [of] 250,000 people."  *Id.* ¶¶ 74-75.  Plaintiff alleges that it elected to be charged for *Likes*, rather than impressions, for the SCD Campaign, *id.* ¶ 76, but provides barely any details about this campaign.  Plaintiff does not allege that it relied on *any* representations by Facebook in connection with this campaign.  *See id.* ¶¶ 73-80.  It merely asserts that, after launch and over some unknown period of time, it "found" that a "material percentage" of the Likes it received on its SCD Page were from users outside the target audience, that the "accuracy rate" was "materially lower than the 89% that Facebook was touting at the time," and that it "ultimately paid $242.17 to Facebook for Likes generated in connection with the SCD Likes Campaign."  *Id.* ¶¶ 77, 80.  But Plaintiff does not identify how many Likes it received from users outside the target audience or any information about the total number of Likes it received during the campaign.  And as with the IV Likes Campaign, Plaintiff does not allege any facts about how many people its ads reached, or how many of those people were outside the target audience.  *See id.* ¶¶ 77-79.

Plaintiff filed this lawsuit on August 28, 2018—more than two years after it ran the SCD Likes Campaign—and brings a claim under the UCL, Cal. Bus. & Prof. Code § 17200, *et seq.*, alleging that Facebook's purported representations regarding the accuracy of its ad delivery are

---

[7] The Small Cap Directory's Facebook Page describes itself as a "[f]ree online investor tool where investors can search thousands of small cap company profiles by keyword, industry, exchange, market cap and even location."  Ex. G. at 1.  The last post on the Page was January 7, 2016.  Ex. H at 1.  As of November 13, 2018, the Page had 441 Likes.  *Id.*

fraudulent, unfair, and unlawful under California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*[8] Compl. ¶¶ 94-109. Plaintiff seeks damages and injunctive relief under the UCL on behalf of a purported class of "[a]ll persons or entities within the United States who, from December 1, 2013, to the present . . . , paid Facebook for advertisements displayed to Facebook users who fell outside the target audiences defined by such persons or entities using Ads Manager." Compl. ¶ 84, Prayer for Relief.

## III.   LEGAL STANDARD

A complaint must be dismissed where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In determining if a claim has been stated, a court accepts as true only the complaint's well-pleaded factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A court begins its analysis of a complaint by "identifying pleadings that, because they are no more than conclusions, are not entitled to the presumption of truth." *Id.* The court also "need not . . . accept as true allegations [in a complaint] that contradict matters properly subject to judicial notice or by exhibit," or that are "unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

Taking only "well-pleaded factual allegations" as true, a court then "determine[s] whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Claims based on allegations of fraud are subject to a heightened pleading requirement under Federal Rule of Civil Procedure 9(b). Where a plaintiff alleges a "unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of [its] claim," the claim "is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d

---

[8] Plaintiff does not assert a separate cause of action for its claim that Facebook violated the FAL, but asserts it in connection with its claim that Facebook violated the "unlawful" prong of the UCL. *See* Compl. ¶ 107.

1120, 1125 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003)); *see also Noll v. eBay, Inc.*, 282 F.R.D. 462, 468 (N.D. Cal. 2012) ("This district has previously required plaintiffs to satisfy Rule 9(b) where their claims were premised on allegations that misleading statements on a defendant's website caused harm.").

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy this requirement, a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *United States ex. rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (citation omitted) (alteration in original).  The allegations "must be specific enough . . . so that [Defendants] can defend against the charge and not just deny that they have done anything wrong." *Id.* (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quotation marks omitted)).

## IV.   THE COMPLAINT MUST BE DISMISSED

The Court must dismiss Plaintiff's Complaint for several independent reasons.  First, Plaintiff fails to plead with the requisite particularity, *see Kearns*, 567 F.3d at 1125, that Facebook made any representation regarding the specific level of accuracy with which Facebook delivers an ad to a target audience, or that Facebook misled them by "programmatically" displaying Plaintiff's ads to users outside its target audiences.  Second, Plaintiff's claim must be dismissed for lack of UCL standing, because Plaintiff does not plead with particularity that it suffered an economic injury that resulted from Facebook's alleged misconduct.   Third, Plaintiff's claim must be dismissed on the merits, because the Complaint does not state a claim under either the "fraudulent," "unfair," or "unlawful" prongs of the UCL.  And finally, Plaintiff's request for injunctive relief should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because it has failed to allege standing. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970-72 (9th Cir. 2018).

**A.      The Complaint Must Be Dismissed Because Plaintiff's Allegations Lack The Specificity Required By Rule 9(b)**

> 1.      Plaintiff Does Not Plead With Particularity That Facebook Made Any Guarantees Regarding Its Ad Targeting Accuracy

None of the statements on which Plaintiff alleges it actually relied include any representation regarding the specific level of accuracy with which Facebook delivers an ad to a target audience, let alone a guarantee of perfect accuracy. *See* Compl. ¶¶ 21, 31, 36, 41.  Nor could they because Facebook makes clear to advertisers in its Self-Serve Ad Terms that it "do[es] [its] best to deliver the ads to the audience [an advertiser] specif[ies]" but "cannot guarantee in every instance that [the] ad will reach [its] intended target."  Ex. A ¶ 1.

Plaintiff points instead to a 2013 Nielsen statistic that allegedly appeared on Facebook's website and stated that, "compared to the average online reach of 38% for narrowly targeted campaigns, Facebook is 89% accurate[.]"  Compl. ¶ 25.  Plaintiff fails to allege any detail about when, where, or for how long the 89 percent "average online reach" statistic appeared on Facebook's website, and thus it fails to identify "the who, what, when, where, and how of the misconduct charged" as required by Rule 9(b).  *See id.* at 1244 (internal quotation marks and citation omitted).   Moreover, the Nielsen study allegedly evaluated "narrowly targeted campaigns," but Plaintiff does not specify *any* other details about the campaigns that were part of the Nielsen study, including the duration of the campaigns, the targeting criteria used, or the total number of people the ads in those campaigns actually reached.  Without those allegations, it is impossible to evaluate whether Facebook's purported representations regarding the Nielsen study relate in any way to the campaigns that Plaintiff ran.  *See WellPoint*, 904 F.3d at 677.

> 2.      Plaintiff Does Not Plead With Particularity That Facebook Misled It By "Programmatically" Displaying Its Ads To Users Outside The Ad's Target Audience

The Complaint must be dismissed for a separate reason:  Plaintiff's allegations do not permit a plausible inference that Facebook misled Plaintiff by displaying Plaintiff's ads to users outside the defined target audience.  Plaintiff does not and cannot allege that Facebook represented that it would not display ads to users outside the target audience because Facebook makes clear in the Self-Serve Ad Terms that it "may broaden the targeting criteria" specified by advertisers.

Ex. A ¶ 2.  Moreover, Plaintiff does not allege that Facebook "programmatically display[ed]" ads outside of Plaintiff's target audience—let alone at a rate lower than the 89 percent "average online reach" figure that Plaintiff says Facebook was "touting" at the time, *see* Compl. ¶¶ 64, 66, 67— with respect to either its "IV Likes Campaign" or its "SCD Likes Campaign."  *Id.* ¶ 96.

a. *Plaintiff Does Not Plead That Facebook Programmatically Displayed Ads To Users Outside the Target Audience During The IV Likes Campaign*

Plaintiff attempts to demonstrate that Facebook "programmatically display[ed]" ads to users outside the target audience during the IV Likes Campaign by alleging that it received "Likes" on its Facebook Page from non-target-audience users during that campaign.  *See* Compl. ¶¶ 65-69. But Plaintiff's allegations regarding these Likes are devoid of any particulars.  First, Plaintiff says nothing about the total number of Likes or the overall accuracy rate.  While Plaintiff alleges that, *just three days* after the initiation of the IV Likes Campaign, "nearly 40%" of the 21 Likes it received on its Page were from users outside the target audience, *id.* ¶¶ 60-64, the Complaint does not specify any information about the actual results of the campaign in terms of the number or demographics of people to whom the ad was displayed or who Liked the Page "as a result of" the campaign, or how many of those Likes were purportedly from users outside the target audience.

Plaintiff's Complaint fails in several other respects.  Plaintiff opted to be charged for impressions (not Likes) in connection with the IV Likes Campaign.  Nowhere in the Complaint does Plaintiff allege that it did not receive the number of impressions it paid for or that it was charged for Likes by non-target-audience users.  Instead, Plaintiff simply assumes, without explanation or supporting facts, that the percentage of non-target-audience users who Liked its Page must be equal to the percentage of non-target-audience-users to whom Facebook allegedly delivered its ad.  Similarly, Plaintiff assumes that because "nearly 40%" of the 21 Likes it allegedly received on its Page over three days were from users outside the target audience, that renders Facebook's alleged representation about "average online reach" false.  But as noted above, reach relates to the number (or relative percentage) of people in a target audience to whom an ad was displayed—not who took a particular action such as Liking a Page.

1    Plaintiff attempts to mask these pleading issues by alleging that the number of Likes on its

2    Page "created the false impression that the IV Likes Campaign was more successful than it

3    otherwise actually was," and thereby "induced" Plaintiff to continue the campaign.  Compl. ¶ 71.

4    This assertion is nonsensical and inconsistent with Plaintiff's allegation that it *knew* that some of

5    the Likes were from users outside the target audience.  *Id.* ¶ 66.  If Plaintiff knew that non-target-

6    audience users were Liking its Page as a result of the IV Likes Campaign, it could not have had a

7    "false" sense of the campaign's success.

8    Plaintiff's allegations relating to the IV Likes Campaign do not establish with any

9    particularity that Facebook "programmatically display[ed]" ads to users outside the target

10   audience, and thus Plaintiff cannot state a claim based on the IV Likes Campaign.

11
              b.      *Plaintiff Does Not Plead That Facebook Programmatically*
12                    *Displayed Ads To Users Outside the Target Audience During The*
                      *SCD Likes Campaign*
13

14   Plaintiff's allegations relating to the SCD Likes Campaign are even more deficient.  All

15   Plaintiff alleges is that, "after launching" the campaign, it "found that a material percentage of the

16   Likes generated by the Campaign" were "from users outside of Plaintiff's defined target audience,"

17   thus resulting "in an accuracy rate materially lower than the 89% that Facebook was touting at the

18   time." Compl. ¶ 77.  Plaintiff does not allege that it ever saw or relied on the 89 percent "average

19   online reach" figure, and Plaintiff fails to allege how that figure relates in any way to ad campaigns

20   that are billed on the basis of Likes (rather than impressions).  And as with the IV Likes Campaign,

21   the Complaint contains no allegations about the actual results of the campaign in terms of the

22   number or demographics of people to whom the ad was displayed or who Liked the Page, or how

23   many of those Likes were from users outside the target audience.  Plaintiff alleges the total amount

24   it paid for the campaign—$242.17—but does not disclose what part of that was for allegedly

25   mistargeted Likes.  *See* Compl. ¶ 80.  Plaintiff's conclusory and unspecific allegations about Likes

26   do not establish any basis for inferring that Facebook "programmatically display[ed]" ads to any

27   percentage of non-target-audience users in connection with the SCD Likes Campaign, and

28   therefore that campaign too cannot be a basis for Plaintiff's claim.  *See Iqbal*, 556 U.S. at 678.

1

**B.**     **Plaintiff Fails To Plead Statutory Standing Under The UCL**

To plead statutory standing under the UCL, Plaintiff must "'(1) establish a loss or deprivation of money or property sufficient to qualify as injury-in-fact, i.e., economic injury, and (2) show that the economic injury *was the result of, i.e., caused by*, the unfair business practice or false advertising that is the gravamen of the claim.'" *Hutchins v. Nationstar Mortg. LLC*, No. 16-CV-07067-PJH, 2017 WL 4224720, at *11 (N.D. Cal. Sept. 22, 2017) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011)) (emphasis added); Cal. Bus. & Prof. Code § 17204. Plaintiff's Complaint fails on both scores.

1.     Plaintiff Lacks Standing Because It Fails To Plead An Economic Injury Resulting From The Alleged Misrepresentations

Plaintiff fails to plead that it suffered an economic injury flowing from any alleged misrepresentation, as it must for UCL standing, because Plaintiff fails to demonstrate that it was charged for any mistargeted ads.

Instructive on this point is *Singh v. Google*, which arose from "Google's conduct with respect to 'pay-per-click' advertisements on its online advertising platform, AdWords." 2018 WL 984854, at *1 (N.D. Cal. Feb. 20, 2018). Plaintiff—a small business owner who used AdWords to run advertisements—alleged that Google made "false and misleading statements to potential advertisers concerning the extent of invalid or fraudulent clicks on the AdWords platform" and then charged advertisers for such clicks. *Id.* at *1.

In determining whether the plaintiff alleged statutory standing under the UCL, the court explained that because "the misconduct alleged is that Google charged its advertisers for more invalid clicks than it represented, the injury must necessarily be that [the plaintiff] was charged for invalid clicks at a rate exceeding those representations." *Id.* at *5. The court found the plaintiff lacked standing because the complaint did "not allege that [the plaintiff] paid for even a single invalid or fraudulent click," let alone invalid clicks "at a rate above what was advertised." *Id.* at *4-5. The court explained that the plaintiff's "conclusory allegation, without facts to support it," that he was "charged for, and subsequently . . . paid for, invalid and/or fraudulent clicks on the

1    Google AdWords platform" was insufficient to demonstrate injury that resulted from Google's

2    alleged misconduct.  *Id.* at \*4.

3            Here, Plaintiff lacks statutory standing for the same reason as Plaintiff Singh.  Plaintiff

4    does not allege any facts to support its allegation that it was charged for the delivery of even *a*

5    *single* ad to non-target audience users, let alone at a rate exceeding the alleged margin of

6    mistargeting implied by the Nielsen study (11 percent)—which, again, represented an "average"

7    across unknown "narrowly targeted" campaigns.  For the IV Likes Campaign, Plaintiff simply

8    asserts that it "ultimately paid $1,409.69 to Facebook for impressions generated in connection with

9    the IV Likes Campaign."  Compl. ¶ 72.  And for the SCD Likes Campaign, Plaintiff asserts that it

10   "paid Facebook for *Likes* generated in connection with the SCD Likes Campaign," Compl. ¶¶ 76,

11   80 (emphasis added), but alleges no facts that demonstrate a connection between Facebook's

12   alleged representation regarding "average online reach" and its purported injury (i.e., paying for

13   Likes by non-target-audience users).  Plaintiff thus fails to plead any injury from Facebook's

14   alleged misrepresentation.  *Singh*, 2018 WL 984854, at \*5.

15                      2.    Plaintiff's Claims Are Limited To The Misrepresentations On Which It
                              Alleges It Relied
16

17           Even if Plaintiff can plead economic injury (it cannot), it still fails to plead standing because

18   Plaintiff does not allege that it actually relied on any purported misrepresentations alleged in the

19   Complaint.  "'California courts have held that when the 'unfair competition' underlying a

20   plaintiff's UCL claim consists of a defendant's misrepresentation'"—as it does here—"'a plaintiff

21   must have *actually relied* on the misrepresentation, and suffered economic injury *as a result of*

22   that reliance, in order to have standing to sue.'"  *Letizia*, 267 F. Supp. 3d at 1243 (quoting *In re*

23   *iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1013 (N.D. Cal. 2013)) (emphasis added); *see also*

24   *In re Tobacco II Cases*, 46 Cal. 4th 298, 306, 326 (2009) (holding that "a class representative

25   proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate

26   actual reliance on the allegedly deceptive or misleading statements").

27           "Thus, in order for a UCL claim to survive a motion to dismiss, a plaintiff must sufficiently

28   satisfy the actual-reliance requirement, which means the plaintiff must allege that he or she saw

the specific misrepresentation at issue and actually relied upon it" in taking the action that it alleges it otherwise would not have taken.  *See Letizia*, 267 F. Supp. 3d at 1243 (finding that plaintiffs lacked standing because they did not allege that "they *actually saw* either of the erroneous metrics at issue and *because of* that metric decided to spend more money on Facebook video ads") (citation omitted) (emphasis in original); *see also In re Yahoo! Inc. Customer Data Security Breach Litig.*, 2017 WL 3727318, No. 16-MD-02752-LHK, at *27-28 (N.D. Cal. Aug. 30, 2017) (dismissing UCL claim even where plaintiffs included screenshots of the alleged misrepresentations because plaintiffs had failed to "establish that any of the Plaintiffs actually read or relied on the misrepresentations" in signing up for Yahoo's online services); *Figy v. Amy's Kitchen, Inc.*, No. CV 13-03816 SI, 2013 WL 6169503, at *4 (N.D. Cal. Nov. 25, 2013) (finding that, where plaintiff did not allege that it "saw the representation at issue" "prior to purchasing the products," it lacked UCL standing); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010) (affirming dismissal of plaintiff's UCL claim where plaintiff failed to allege that he ever saw or read defendant hospital's representations regarding costs for its services "in going to [the hospital] or in seeking or accepting services once he was transported there").

Here, Plaintiff's Complaint is chock full of excerpts from Facebook's website and its Ads Manager interface, but Plaintiff does not allege that it relied on *any* of these representations in launching its first advertising campaign, the IV Likes Campaign.  *See* Compl. ¶¶ 56-60.  It is only *after* Plaintiff allegedly "noticed" that some of the Likes on its Page were from users outside the target audience that Plaintiff allegedly viewed any representations on Facebook's website, *id.* ¶¶ 62-67—and even then, Plaintiff identifies *only four* statements that it actually saw.  *See id.* ¶¶ 65, 67 (identifying paragraphs 21, 31, 36, 41).  Plaintiff lacks standing to bring a UCL claim based on *any* of the other misrepresentations alleged in the Complaint—including the purported representation that the "average online reach" of "narrowly targeted campaigns" on Facebook are "89% accurate," *id.* ¶ 25—because Plaintiff does not allege that it ever "actually read or relied on" them.  *See In re Yahoo!*, 2017 WL 3727318, at *27-28.

And with respect to the four statements Plaintiff alleges it actually saw, Plaintiff does not allege that it relied on any of them in the *SCD Likes Campaign* or prior to September 4, 2015.  *See*

Compl. ¶¶ 73-80.  Plaintiff thus has failed to allege that it suffered any injury at all in the SCD Likes Campaign or during the pre-September 4, 2015 part of the IV Likes Campaign (including from the 21 Likes) "because of" any representation.  *See Letizia*, 267 F. Supp. 3d at 1243.

**C.      Plaintiff Fails To State A UCL Claim On The Merits**

Plaintiff's claim also fails on the merits.  The UCL prohibits any "unlawful, unfair or fraudulent business practice," Cal. Bus. & Prof. Code § 17200, and Plaintiff fails to allege the facts necessary to establish a claim under any of these three prongs.

1.      Plaintiff Fails To State A Claim Under The "Fraudulent" Prong Of The UCL

To state a UCL claim based on "fraudulent" conduct, Plaintiff must plead a "false statement" or "one which, though strictly accurate, nonetheless has the likely effect of misleading or deceiving the public." *Garcia v. Sony Computer Entm't Am., LLC*, 859 F. Supp. 2d 1056, 1062 (N.D. Cal. 2012) (citations omitted).  It is not enough to show "a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  *Garcia*, 859 F. Supp. 2d at 1062 (internal quotation marks and citation omitted).  Rather, this is a "reasonable consumer" standard, such that Plaintiff must show "that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226 (2013) (emphasis added) (citing *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)).  Where a plaintiff's allegations are "[g]eneralized, vague, and unspecific" as opposed to "specific," they are statements "upon which a reasonable consumer could not rely" and thus are not actionable under the UCL.  *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1081 (N.D. Cal. 2017) (quoting *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1005 (9th Cir. 2003)) (quotation marks omitted).

Plaintiff has not alleged that any statements were "fraudulent" under the UCL:  (1) Plaintiff fails to explain how the 89 percent figure from the Nielsen study is false or misleading, and (2) the other four statements that Plaintiff alleges it reviewed, *see* Compl. ¶¶ 21, 31, 36, 41, are generalized, promotional statements that do not speak to the percentage of ads that Facebook

delivers to a target audience, and thus are not likely to deceive a "significant portion" of reasonable consumers about Facebook's accuracy rate.  *Chapman*, 220 Cal. App. 4th at 226.  Accordingly, Plaintiff's claim under the "fraudulent" prong of the UCL must be dismissed.

        a.    *Plaintiff Fails To Show How Nielsen's 89 Percent Figure Is False Or Misleading*

Plaintiff alleges that Facebook published to its website a 2013 Nielsen statistic stating that, "compared to the average online reach of 38% for narrowly targeted campaigns, Facebook is 89% accurate[.]"  Compl. ¶ 25.  But Plaintiff has not identified "what is false or misleading about [the purportedly misrepresentative] statement[], and why it is false."  *See Cafasso v. Gen. Dynamics C4 Sys.,* 637 F.3d 1047, 1055 (9th Cir. 2011); *see also In re Yahoo!*, 2017 WL 3727318, at *28 (plaintiff must plead "what makes the representations false or misleading") (internal quotation omitted).  To begin with, as discussed *supra* Section IV.A.2, Plaintiff alleges no facts that provide a plausible basis for inferring that the "average online reach" of either campaign at issue here was above or below 89 percent.  It is meaningless that Plaintiff "noticed," after just *three days* of running its first campaign, that approximately 40 percent of the 21 people who Liked its Page may not have been in the target audience, *see* Compl. ¶¶ 60-64, because those initial and partial observations do not demonstrate anything about the rate at which Facebook *delivered* ads to the target audience or the accuracy rate of Plaintiff's campaign as a whole.

Moreover, as discussed *supra* Section IV.A.1, Plaintiff ignores that the 89 percent figure, as alleged, is an "average" for certain (unknown) "narrowly targeted campaigns."  Compl. ¶ 25. Plaintiff does not specifically allege that either of its ad campaigns were similar to the campaigns that were part of the Nielsen study, either in duration, or target audience size.  Because Plaintiff fails to demonstrate a connection between its campaigns and those in the Nielsen study, or that the Nielsen study applied more broadly than the campaigns it surveyed, the results of Plaintiff's campaigns say nothing about whether the 89 percent "average online reach" figure is false.

b.   *Plaintiff Fails To Show How The Statements It Alleges It Saw And Relied Upon Are False Or Misleading*

All of the other statements Plaintiff points to—the ones it says it actually reviewed—are generalized, promotional statements about Facebook's advertising on which a reasonable consumer could not rely as guaranteeing a specific accuracy rate.  *See In re Yahoo!*, 2017 WL 3727318, at *26 (finding that a reasonable consumer could not rely on defendant Yahoo's statement that "protecting our systems and our users' information is paramount to ensuring Yahoo users enjoy a secure user experience and maintaining our users' trust" as "describing the security of [Yahoo's] servers").   These statements "say[] nothing about the specific [percentage]" of Facebook's ad delivery, *see In re Yahoo!*, 2017 WL 3727318, at *26:

- "[c]hoosing your audience with such reach, accuracy and affordability is what makes Facebook an incredible place to advertise" (Compl. ¶ 21);

- "the Facebook platform 'offers powerful and unique ways to show your ads to the people most likely to care about your business'" (*id.* ¶ 21);

-  "[w]hen you create a Facebook ad, you can choose the audience that should see it" (*id.* ¶ 21);

- the "Page Likes" objective is "a mechanism to connect with more of the people who matter to you'" (*id.* ¶ 31);

- "you can choose the type of people who should see your ad" (*id.* ¶ 36);

- "[w]hen you run your ads, we'll serve it in the places you selected" (*id.* ¶ 36);

- "if you are advertising an app and your objective is to get more downloads, your ads will be set up to show to people within your target audience who are most likely to install your app" (*id.* ¶ 41); and

- "[b]y default, your ad will be optimized to show to the people who are most likely to take the actions that will help you meet your objective within your target audience" (*id.* ¶ 41).

Particularly in light of Facebook's express disclosure that it does not guarantee 100 percent accuracy in terms of which users will see ads, *see* Ex. A ¶ 1, no reasonable consumer could have read them as such.  *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (dismissing UCL and FAL claims where "no reasonable consumer could have believed that if an

annual fee was not mentioned, it must not exist," given disclaimer that "[o]ther restrictions may apply"); *In re Facebook PPC Advert. Litig.*, No. 09-cv-3043-JF, 2010 WL 5174021, at *6 (N.D. Cal. Dec. 15, 2010) ("The disclaimer in [the click through agreement] is unambiguous with respect to third-party click fraud, and Plaintiffs must show that they were reasonable in relying on the representations even in light of those disclaimers.").

### 2. Plaintiff Fails To State A Claim Under The "Unfair" Prong Of The UCL

Plaintiff's claim under the "unfair" prong of the UCL is based on the same alleged misrepresentations as its claim under the "fraudulent" prong. *Compare* Compl. ¶ 102 ("Facebook engaged in unfair and deceptive acts and business practices by misrepresenting that it would deliver ads to the audiences defined by advertisers using Ads Manager, and then programmatically displaying a material percentage of ads to Facebook users *outside* defined target audiences in order to maximize its own ad revenue. . . .") *with id.* ¶ 96. Accordingly, Plaintiff's claim under the "unfair" prong must be dismissed for that reason alone. *See Punian v. Gillette Co.*, No. 14-cv-05028-LHK, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016) (holding that cause of action under the unfair prong of the UCL did not survive where the "cause of action under the unfair prong of the UCL overlap[ped] entirely with Plaintiff's claims" under the FAL, CLRA, and fraudulent prong of the UCL); *see also In re Actimmune Mktg. Litig.*, No. 08-cv-02376 MHP, 2009 WL 3740648, at *14 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 F. App'x 651 (9th Cir. 2011) (dismissing unfair prong of UCL cause of action where "plaintiffs' unfair prong claims overlap[ped] entirely with their claims of fraud" and plaintiffs had not pled fraudulent conduct with particularity).

Even if Plaintiff based its "unfair" claim on different conduct than its "fraudulent" claim, which it did not, Plaintiff nonetheless fails to plead a violation of the "unfair" prong under any of the tests that courts use to evaluate claims under that prong.[9]

---

[9] As this Court has recognized, the California Supreme Court "has not established a definitive test to determine whether a business practice is 'unfair' under the UCL," and "[s]tate and federal courts have recognized three tests." *Smith v. LG Elecs. U.S.A., Inc.*, No. C 13-4361 PJH, 2014 WL 989742, at *9 (N.D. Cal. Mar. 11, 2014) (citing *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 933 (N.D. Cal. 2013); *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 2013 WL 3460707 at *8 (N.D. Cal. July 9, 2013)).

1   The first test—the "tethering test"—"limits unfair conduct to that which 'offends an

2   established public policy' and is 'tethered to specific constitutional, statutory, or regulatory

3   provisions.'" *Smith*, 2014 WL 989742, at *9 (citations omitted).  The second test—the "balancing

4   test"—"evaluates whether the business practice is 'immoral, unethical, oppressive, unscrupulous

5   or substantially injurious to consumers' and 'requires the court to weigh the utility of the

6   defendant's conduct against the gravity of the harm to the alleged victim.'"  *Id.* (citation omitted).

7   The third test—the "FTC test"—"which borrows the definition of 'unfair' from the Federal Trade

8   Commission Act, requires that 'the consumer injury . . . be substantial;' that 'the injury . . . not be

9   outweighed by any countervailing benefits to consumers or competition;' and that the injury be

10   one 'that consumers themselves could not reasonably have avoided.'"  *Id.* (citation omitted).

11   Plaintiff does no more than recite the elements of each of these tests in its Complaint, which

12   is insufficient to satisfy its burden under Rule 9(b).  *See Labra v. Cal-W. Reconveyance Corp.*, No.

13   C 09-2537 PJH, 2010 WL 889537, at *14 (N.D. Cal. Mar. 11, 2010) ("A plaintiff alleging 'unfair'

14   business practices 'must state with reasonable particularity the facts supporting the statutory

15   elements of the violation.'") (citations omitted).  With respect to the tethering test, Plaintiff alleges

16   that Facebook's conduct "violates established public policy against deceptive conduct by

17   businesses," Compl. ¶ 101, but provides no detail about this "established public policy" and does

18   not describe how Facebook's conduct "violates" such policy.

19   Plaintiff also pleads the elements of the balancing test in conclusory fashion, but fails to

20   plead any supporting facts with reasonable particularity.  *See id.* ¶ 101 (alleging that Facebook's

21   conduct "is oppressive, immoral, unethical, and unscrupulous" and "caused Plaintiff and the Class

22   substantial injury"), ¶ 103 (alleging that "the justifications or reasons for, or the utility or benefit

23   (if any) of Facebook's unfair and deceptive acts and business practices are substantially

24   outweighed by the substantial economic injury and harm that such conduct caused to Plaintiff and

25   other members of the Class").  And as discussed *supra* Section IV.B.1, Plaintiff has failed to

26   connect any injury it suffered (which in any event was less than $2,000, *see* Compl. ¶¶ 72, 80) to

27   Facebook's alleged conduct, and thus is has not demonstrated "substantial" injury by any stretch.

28

Finally, with respect to the FTC test, Plaintiff again recites the elements of the test in its Complaint, *see* Compl. ¶ 104, but alleges no facts in support of them.[10]  Plaintiff's conclusory allegations do not state a claim under the UCL's "unfair" prong.

> 3.   Plaintiff Fails To State A Claim Under The "Unlawful" Prong Of The UCL

The UCL prohibits "unlawful" practices in addition to fraudulent and unfair ones.  Cal. Bus. & Prof. Code § 17200.  Under the UCL, "[g]enerally speaking, unlawful practices are any activities that are forbidden by law."  *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 862 (N.D. Cal. 2011) (citation omitted).  Plaintiff alleges that Facebook violated the "unlawful" prong of the UCL because it violated the FAL, which "provides that it is unlawful for any company . . . to make or disseminate any statement concerning real or personal property or professional services, which is known, or which by the exercise of reasonably care should be known, to be untrue or misleading." *Rosal v. First Fed. Bank of California*, 671 F. Supp. 2d 1111, 1134 (N.D. Cal. 2009) (citing Cal. Bus. & Prof. Code § 17500).  As with the UCL, Plaintiff "must demonstrate that members of the public are likely to be deceived" in order to state a claim under the FAL.  *Id.* (citation and internal quotation marks omitted).

Here, Plaintiff alleges that Facebook violated the FAL for precisely the same reasons that Plaintiff allegedly violated the UCL:  "because Facebook misrepresented that it would deliver ads to the audiences defined by advertisers using Ads Manager, and then programmatically displayed a material percentage of ads to Facebook users outside defined target audiences in order to maximize its own ad revenue."  Compl. ¶ 107.  Plaintiff's claim that Facebook violated the FAL fails for several reasons.

First, for the same reasons discussed with respect to its UCL claim, *supra* Section IV.B.1, Plaintiff lacks standing under the FAL because it does not allege an economic injury resulting from Facebook's purported misconduct.  *See Singh*, 2018 WL 984854, at *3 ("In addition to identifying an unlawful, unfair or fraudulent business act or practice under one of the California UCL's prongs

---

[10] In any event, the Ninth Circuit has rejected the FTC test in consumer actions.  *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007).

*or the FAL*, a plaintiff must allege that he or she has suffered (1) economic injury (2) as a result of the challenged practice.") (emphasis added).

In addition, Plaintiff fails to allege a violation of the FAL for the same reasons that it fails to allege a claim under the UCL's "fraudulent" prong.  With respect to the alleged misrepresentations upon which Plaintiff asserts it actually relied, Plaintiff fails to plead these statements with the requisite particularity and does not explain how the reported results it achieved through its advertising campaigns demonstrate that any of Facebook's representations were misleading.  *See Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1010 (N.D. Cal. 2014) (where claims under FAL "sound in fraud" they are "governed by Rule 9(b)'s heightened pleading standard") (citations omitted); *Rosado v. eBay Inc.*, 53 F. Supp. 3d 1256, 1267 (N.D. Cal. 2014) ("Generally, a violation of the UCL's fraud prong is also a violation of the FAL.") (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 312, n.8) (2009); *see also Rosal*, 671 F. Supp. 2d at 1134 ("However, because this claim merely incorporates the other facts in the [complaint] by reference and makes the conclusory allegation that plaintiff suffered damage as a result of 'defendants' false, misleading and deceptive representations and marketing materials, it is not pled with the requisite particularity to satisfy the heightened pleading requirements of Rule 9(b).").

Because Plaintiff has not adequately pled a predicate violation of the FAL, it also fails to plead an unlawful business practice under the UCL.  *See, e.g., In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 984 (N.D. Cal. 2014) ("Plaintiffs' claim under the unlawful prong of the UCL is based entirely on their CLRA claim.  As the CLRA claim fails, so does the derivative UCL claim."); *see also Labra*, 2010 WL 889537, at *13 ("Where a plaintiff cannot state a claim under the 'borrowed' law, he cannot state a UCL claim either.") (citations omitted).  Plaintiff's UCL claim should be dismissed.

### D.    Plaintiff Fails To Plead Standing For Injunctive Relief Because It Does Not Allege A Threat Of Future Harm

"A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson*, 889 F.3d at 967 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 185 (2000)).  Plaintiff must plead harm that is "actual and imminent,

1   not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

2   Allegations of *possible* future injury are insufficient, *see Clapper v. Amnesty Int'l USA*, 568 U.S.

3   398, 409 (2013), and "where standing is premised entirely on the threat of repeated injury, a

4   plaintiff must show a sufficient likelihood that he will again be wronged in a similar way,"

5   *Davidson*, 889 F.3d at 967.   Here, Plaintiff's claim for injunctive relief should be dismissed

6   because it makes no such allegation.   Plaintiff does not allege that it desires to purchase Facebook

7   advertising in the future, nor does Plaintiff allege that it will be unable to trust Facebook's

8   representations about its targeting of those advertisements.   Plaintiff does not even allege that

9   Facebook continues to publish on its website the 89 percent "average online reach" figure from

10  the 2013 Nielsen study.   *See* Compl. ¶¶ 66, 77 (alleging that Facebook was representing an 89

11  percent accuracy rate "at the time" Plaintiff was advertising on the platform).

12  **V.      CONCLUSION**

13         For these reasons, the Court should grant Facebook's motion to dismiss the Complaint with

14  prejudice pursuant to Rule 12(b)(6) and 12(b)(1).

15
16  DATED: November 13, 2018                   LATHAM & WATKINS LLP

17                                             By:   /s/ Elizabeth L. Deeley
                                                     Elizabeth L. Deeley (CA Bar No. 230798)
18                                                   Nicole C. Valco (CA Bar No. 258506)
                                                     Robin L. Kuntz (CA Bar No. 305048)
19                                                   505 Montgomery Street, Suite 2000
                                                     San Francisco, CA  94111-6538
20                                                   *elizabeth.deeley@lw.com*
                                                     *nicole.valco@lw.com*
21                                                   *robin.kuntz@lw.com*

22                                                   Susan E. Engel (*pro hac vice pending*)
                                                     555 Eleventh Street, N.W., Suite 1000
23                                                   Washington, D.C. 20004
                                                     Telephone:  +1.202.637.2200
24                                                   Facsimile:  +1.202.637.2201
                                                     *susan.engel@lw.com*
25
26                                                   *Attorneys for Defendant Facebook, Inc.*

27
28