UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTEGRITYMESSAGEBOARDS.COM, <br> Plaintiff, <br> v. <br> FACEBOOK, INC., <br> Defendant. | Case No. 18-cv-05286-PJH <br><br> **ORDER DENYING MOTION TO DISMISS** <br> Re: Dkt. No. 25 |

Facebook, Inc.'s ("Facebook") motion to dismiss came on for hearing before this court on February 13, 2019. Plaintiff IntegrityMessageBoards.com appeared through its counsel, Solomon Cera, Pamela Markert, and Seth Lesser. Defendant appeared through its counsel, Elizabeth Deeley and Susan Engel. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES Facebook's motion.

Facebook provides users with an online platform to stay connected with family and friends. Compl. ¶ 1. Rather than charging users to access its platform, Facebook generates revenue by selling advertising on its platform to businesses seeking to market their products to Facebook users. Id. ¶ 3. "To fuel its massive advertising revenues, Facebook collects vast amounts of data concerning its users[,]" including data such as age, gender, work, education, location, etc. Id. ¶¶ 4-5. During the relevant period, Facebook also "acquired data concerning user demographics such as household income and homeownership from third party data providers." Id. ¶ 5. Using this data, Facebook allowed advertisers to tell Facebook the type of user they wished to target, and Facebook represented that it would show the advertisements to the those types of users. Id. ¶ 7.

Plaintiff operates Investor Village, which offers a platform to individual "Main Street" investors to connect and communicate with other like-minded investors concerning publicly-traded stocks. Compl. ¶ 50. Plaintiff focuses its marketing efforts on more highly educated investors with substantial incomes and assets. Id. ¶ 51. Plaintiff operates its own website and an Investor Village Facebook page. Id. ¶ 53.

To promote its Facebook page, plaintiff started two advertising campaigns—the Investor Village ("IV") Campaign and the "Small Cap Directory" ("SCD") Campaign—that attempted to target specific types of Facebook users. Id. ¶¶ 56-80. Like all Facebook advertisers, plaintiff used Facebook's "Ads Manager" to launch its advertising campaigns. Id. ¶ 28. As relevant here, Ads Manager allows, and appears to encourage, advertisers to define the target audience that they wish their advertisement to be seen by or interacted with. Id. ¶¶ 28-49. Plaintiff's IV Campaign began in August 2015 and targeted users aged 45 years or older, who had graduated college, owned a home, expressed an interest in investment, and had a household income of over $250,000. Id. ¶¶ 56-57. Plaintiff's SCD Campaign began in January 2017 and targeted nearly the same demographic as the IV Campaign, but added users located in Canada and restricted the targeted household income to over $500,000. Id. ¶¶ 73-74.

After launching the IV Campaign, plaintiff noticed that as of September 1, 2015, 40% of the "Likes" generated by the campaign "were from users outside the target audience" (henceforth, "Outside Likers"). Id. ¶¶ 62-64. "Concerned that it may have set up the targeting incorrectly," plaintiff continued the IV Campaign only after reviewing Facebook's representations about Facebook's targeting capabilities. Id. ¶ 65. Specifically, plaintiff reviewed Facebook's representations that "when [advertisers] create a Facebook ad, [they] can choose the audience that should see it," id. ¶ 21, that "with the ad creation tool, [advertisers] can choose the type of people who should see [their] ad," and that Facebook will "serve [advertisements] in the places [advertisers] select[,]" id. ¶ 36. Over the next three months, plaintiff continued to monitor the campaign, continued to notice that a material percentage of the "Likes" generated by the campaign were from

1  users outside the targeted audience, and continued to rely on Facebook's
2  representations that it showed advertisements "to people within [plaintiff's] target
3  audience." Compl. ¶¶ 41, 66-68. Plaintiff ultimately paid $1,409.69 to Facebook in
4  connection with the IV Campaign. Id. ¶ 72.

Plaintiff's SCD Campaign fared little better. Again, after launching and monitoring the campaign, "plaintiff found that a material percentage of the "Likes" generated by the Campaign (for which plaintiff paid) were from users outside of plaintiff's defined target audience[.]" Id. ¶ 77. Plaintiff paid Facebook $242.17 for "Likes" in connection with the SCD Campaign. Id. ¶ 80.

"[W]hen plaintiff compared the list of Outside Likers from the SCD [ ] Campaign to the Outside Likers for the IV Campaign, there were overlaps." Id. ¶ 78. Further, plaintiff's analysis indicated that "many of the[ ] [Outside Likers] had a substantial number of seemingly unrelated page 'Likes' displayed on their Facebook profiles," that those users "Liked" numerous pages in a row, and that the Outside Likers "Liked" many of the same unrelated pages. Id. ¶ 69

Based on the above, plaintiff alleges that contrary to Facebook's targeting-related representations, Facebook programmatically displays a material percentage of ads to users outside the defined target market and displays ads to "serial Likers" outside the defined target audience. Id. ¶ 79. Plaintiff allegedly relied on Facebook's representations and Facebook's conduct allegedly harmed plaintiff because plaintiff paid for all "impressions" or "Likes" generated by plaintiff's campaigns, even those programmatically displayed to users plaintiff's campaign did not target. Id. ¶¶ 65, 67, 71-72, 76, 80.

On August 28, 2018, plaintiff filed this putative class action alleging Facebook's advertising practices violate California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. Facebook subsequently moved to dismiss the complaint in its entirety.

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

Under the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). Further, the Ninth Circuit has "specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the . . . UCL" because they sound in fraud. Kearns v. Ford Motor Co., 567 F.3d 1120, 1125-26 (9th Cir. 2009) (fraud requires a misrepresentation, knowledge, intent to defraud/induce reliance, justifiable reliance, and damages).

The court finds that plaintiff has pled facts sufficient to survive defendant's motion to dismiss. In short, plaintiff alleges that Facebook represented that advertisers could "choose the audience who should see [their] ad" and that Facebook would "serve [the advertisements] in the place [the advertiser] selected." Compl. ¶¶ 21, 36. Plaintiff relied on those representations and was harmed when Facebook allegedly, and contrary to its representations, programmatically displayed plaintiff's advertisements to non-targeted users. Compl. ¶¶ 41, 66-68, 72, 79-80. The court finds that plaintiff's allegations satisfy the UCL's "reasonable consumer" test, see Williams v. Gerber Prod. Co., 552 F.3d 934, 938 (9th Cir. 2008), and, if true, state a claim against Facebook.

Accordingly, the court DENIES defendant's motion to dismiss in its entirety.[1]

**IT IS SO ORDERED.**

Dated: February 20, 2019

_____
PHYLLIS J. HAMILTON
United States District Judge

---

[1] Because the documents defendant requests judicial notice of do not meaningfully change the analysis, the court DENIES defendant's request for judicial notice as moot.

4