1
2
3
4
5
6

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

7  INTEGRITYMESSAGEBOARDS.COM,

8              Plaintiff,

9      v.

10  FACEBOOK, INC.,

11              Defendant.

Case No.  18-cv-05286-PJH

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS THE FAC'S COUNT I AND
ALL REQUESTS FOR EQUITABLE
RELIEF AND MOTIONS TO SEAL**

12  Re: Dkt. Nos. 116, 118, 125

13         Before the court is defendant Facebook, Inc.'s ("defendant") Rule 12(b)(6) motion

14  to dismiss the California Business & Professions Code § 17200 claim and all requests for

15  equitable relief in plaintiff IntegrityMessageBoards.com's ("plaintiff") first amended class

16  action complaint ("FAC").  Dkt. 118.[1]  Also before the court are defendant's motions to

17  seal various portions of the FAC, Dkt. 116, and associated portions of plaintiff's

18  opposition to defendant's motion to dismiss, Dkt. 125.  Having read the parties' papers

19  and carefully considered their argument and the relevant legal authority, and good cause

20  appearing, the court hereby **GRANTS IN PART** and **DENIES IN PART** defendant's

21  motion to dismiss and **GRANTS IN PART** and **DENIES IN PART** defendant's motions to

22  seal.

23                                    **BACKGROUND**

24         On August 28, 2018, plaintiff initiated the instant putative class action against

25  defendant.  Dkt. 1 (Compl.).  In its original complaint, plaintiff alleged a single claim

26

27  _____
[1] At the time of filing, the FAC also included Retour, Inc., ("Retour") as a named plaintiff.
FAC ¶ 16.  On September 29, 2020, Retour filed a notice of voluntary dismissal, Dkt. 144,
leaving IntegrityMessageBoards.com as the only remaining named plaintiff in this action,
id. ¶¶ 15-18.

28

against defendant for violation of California's Unfair Competition Law ("UCL"), Business & Professions Code § 17200, *et. seq* (the "§ 17200 claim").  Plaintiff premised that claim on defendant's alleged practice of knowingly misrepresenting to businesses purchasing its advertisement services the nature and scope of the Facebook users to whom defendant would deliver a purchasing business's advertisements.  Compl. ¶¶ 94-109.  In relevant part, plaintiff then sought "damages[] or restitution," id. Prayer for Relief ¶ C, as well as "injunctive relief and other equitable relief . . . including . . . an order enjoining defendant from continuing to programmatically display ads to Facebook users outside the audiences defined by [the purchasing business]," id. ¶ D.  On November 13, 2018, defendant filed its motion to dismiss the original complaint, Dkt. 25, which the court denied in a four-page order issued on February 20, 2019, Dkt. 44.  The parties then engaged in class certification discovery.

On July 13, 2020, plaintiff filed its FAC.  Dkt. 112 (unredacted); Dkt. 113 (redacted).  The court provisionally sealed various portions of the FAC pending its determination of defendant's impending request that the court permanently seal such portions.  Dkt. 115.  Defendant made that request in a subsequent administrative motion filed on July 23, 2020.  DKt. 116.  Plaintiff opposed that request.  Dkt. 120.

The FAC retains the original complaint's theory that defendant knowingly displayed its advertisements outside a purchasing business's defined audience, FAC ¶ 7, as well as its § 17200 claim, id. ¶¶ 143-53.  Importantly, though, the FAC also articulates a new theory of liability—i.e., that defendant misled purchasers about the quality of data that it relied on when targeting Facebook users for advertisements.  Id. ¶ 8.  The FAC further adds two legal claims under California law: (1) deceit under Civil Code §§ 1709-11, id. ¶¶ 154-162; and (2) common law fraud, id. ¶¶ 163-70.  Those additions are relevant to the instant motion to dismiss because both seek money damages (actual, nominal, or punitive damages), id. ¶¶ 162, 170, premised on past harm, id. ¶¶ 161, 169.

On July 27, 2020, defendant filed the instant motion.  Dkt. 118.  Defendant asks that the court dismiss the § 17200 claim with prejudice, as well as all requests for

United States District Court
Northern District of California

1   equitable relief.  Id.  Plaintiff opposed.  Dkt. 125-3 (unredacted opposition).[2]

2       The parties' dispute is straightforward.  Defendant principally argues that federal

3   common law bars plaintiff from pursuing equitable relief if it maintains an adequate legal

4   remedy.  Citing the added claims for money damages, defendant asserts that plaintiff has

5   conceded such condition and, thus, the court must dismiss all equitable claims.  Plaintiff

6   disagrees with defendant's characterization of the effect of federal common law on those

7   claims.  Plaintiff principally argues that, prior to trial, it may pursue claims for both

8   equitable and legal relief because, under California law, such remedies are cumulative.

9   Alternatively, plaintiff asserts that because its claims for money damages are premised

10  on only prior harm, it may—regardless of whether defendant's proffered federal common

11  law principle controls—still pursue injunctive relief against future harm.  Both parties rely

12  heavily on recent Ninth Circuit authority to support their principal positions.

**DISCUSSION**

13

14  **A.    Legal Standard**

15      A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims

16  alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Rule 8

17  requires that a complaint include a "short and plain statement of the claim showing that

18  the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), dismissal "is

19  proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege

20  sufficient facts to support a cognizable legal theory." Somers v. Apple, Inc., 729 F.3d 953,

21  959 (9th Cir. 2013).  While the court is to accept as true all the factual allegations in the

22  complaint, legally conclusory statements, not supported by actual factual allegations,

23  need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The complaint

24  must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atl.

25  Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007).

26      As a general matter, the court should limit its Rule 12(b)(6) analysis to the

27

28  [2] The court will cite to only the unredacted opposition.  For the redacted, publicly-filed
    version, the court directs readers to Docket 126.

contents of the complaint, although it may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007) ("a court can consider a document on which the complaint relies if the document is central to the plaintiff's claim, and no party questions the authenticity of the document"). The court may also consider matters that are properly the subject of judicial notice, Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001), exhibits attached to the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents referenced extensively in the complaint and documents that form the basis of the plaintiff's claims, No. 84 Emp'r-Teamster Jt. Counsel Pension Tr. Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

A district court "should grant [a] plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations," however, dismissal without leave "is proper if it is clear that the complaint could not be saved by amendment." Somers, 729 F.3d at 960.

**B.     Motion to Dismiss Analysis**

   **1.      Federal Common Law Bars Any Claim for Equitable Relief If There Exists an Adequate Legal Remedy**

To support its contention that a plaintiff may pursue equitable relief only if it shows that it lacks an adequate legal remedy, defendant relies on Sonner v. Premier Nutrition Corp., 971 F.3d 834 (9th Cir. 2020).  In Sonner, the panel considered whether the district court properly dismissed a plaintiff's equitable claim for restitution following the voluntarily dismissal of her sole legal claim on the eve of trial.  Id. at 837.  The panel explained that "[a] singular and strategic purpose drove this maneuver: to try the class action as a bench trial rather than to a jury."  Id.  It affirmed the district court's dismissal.  Id. at 845.

To reach that decision, the panel relied on Justice Frankfurter's statement in Guaranty Trust. Co. v. York, 326 U.S. 99, 105 (1945) that:

4

Equitable relief in a federal court is of course subject to restrictions: the suit must be within the traditional scope of equity as historically evolved in the English Court of Chancery . . . *a plain, adequate and complete remedy at law must be wanting* . . . explicit Congressional curtailment of equity powers must be respected . . . the constitutional right to trial by jury cannot be evaded . . . That a State may authorize its courts to give equitable relief unhampered by any or all such restrictions cannot remove these fetters from the federal courts. Id. at 105-06 (emphasis added).

Citing these first principles, the panel stated that a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA [Consumer Legal Remedies Act]." 971 F.3d at 844. The panel held that plaintiff failed to show that she lacked an adequate legal remedy because, in large part, she conceded that she sought "the same sum in equitable restitution . . . as she requested in damages to compensate her for the same past harm." Id.

Plaintiff disputes that the principles detailed in Sonner control the viability of its equitable claims prior to trial. Dkt. 125-3 at 11-13. To support that position, plaintiff relies on Moore v. Mars Petcare US, Inc., 966 F.3d 1007 (9th Cir. 2020). In that case, the district court dismissed plaintiff's claims for violations of various consumer protection laws in connection with defendant-manufacturers' alleged deceptive labeling of their pet food products. Id. at 1014-16. Plaintiff sought both "injunctive relief [] and damages." Id. at 1015. The district court dismissed those claims on three independent grounds, all of which concerned either plaintiff's failure to allege sufficient facts under Rule 12(b)(6) or fraud with the requisite specificity under Rule 9(b). Id. at 1016-17. Those grounds did not include plaintiff's failure to show that she lacked an adequate legal remedy. The divided panel in Moore disagreed with the district court on all three grounds, id. at 1017, and, following an analysis of the legal standards underlying each ground, id. at 1017-22, reversed the district court, id. at 1022.

Immediately following its conclusion on these issues, the majority footnoted that it "reject[ed]" defendants' "additional argument" that "plaintiffs cannot seek equitable relief under the UCL or FAL, given an adequate legal remedy under the CLRA," as "foreclosed

by statute." Id. at 1021 n.13.  The majority reasoned that "[t]he UCL, FAL and CLRA explicitly provide that remedies under each act are cumulative to each other."  Id.  To support that reasoning, the majority proffered only a "see" cite to the statutes at issue.  Id.

Here, the court concludes that the rules set forth in Sonner control plaintiff's ability to pursue its equitable claims at this juncture in the litigation.  First, the panel in Sonner rested its decision on longstanding Supreme Court authority unequivocally requiring the absence of a "plain, adequate, and complete remedy at law" to obtain equitable relief. York, 326 U.S. at 105.  The cumulative nature of any state law remedy may not alter this requirement.  Id. at 105-06 ("That a State may authorize its courts to give equitable relief unhampered by any or all such restrictions cannot remove these fetters from the federal courts.").  Thus, to the extent the majority's reasoning in Moore is inconsistent with York, York controls.

Second, by its terms, the Moore footnote addresses only the scope of remedies available under California state law.  966 F.3d at 1021 n.13.  Critically, it is silent on the federal common law rules underlying the availability of equitable relief in this forum.

Lastly, and in any event, the Moore footnote is dictum.  The panel described defendants' challenge to the availability of equitable relief as one of three "additional arguments," id., which it addressed only after reaching its decision to "reverse the district court's dismissal," id. at 1021.  Thus, its statement is non-binding.  Cetacean Cmty. v. Bush, 386 F.3d 1169, 1173 (9th Cir. 2004) ("A statement is dictum when it is 'made during the course of delivering a judicial opinion, but . . . is unnecessary to the decision in the case and is therefore not precedential.'" (alteration in the original) (citation omitted)).

Plaintiff's attempts to limit Sonner to its procedural posture—i.e., when a litigant makes a strategic eleventh-hour decision immediately before trial to drop a legal claim to guarantee a bench trial, Dkt. 125-3 at 15—is unpersuasive.  The Sonner panel's recitation of the subject common law principles unequivocally applies to any request for equitable relief.  971 F.3d at 844 ("Guided by that instruction, we hold that the traditional principles **governing equitable remedies** in federal courts, including the requisite

inadequacy of legal remedies, ***apply when a party requests*** restitution under the UCL and CLRA in a diversity action." (emphasis added) (footnote omitted)).

Plaintiff's remaining arguments do not alter the court's conclusion.  First, plaintiff argues that <u>Sonner</u>'s reasoning "underscores why it does not apply here." Dkt. 125-3 at 15-16.  Citing <u>Sonner</u>'s recognition that, pursuant to the <u>Erie</u> doctrine, the outcome of an action brought under diversity jurisdiction should be "substantially the same regardless of whether it is filed in state or federal court," 971 F.3d at 841, plaintiff reasons that its equitable claims should go forward because "at the pleadings stage, California law permits UCL claims and legal claims to proceed together." Dkt. 125-3 at 15.

This argument fails.  Plaintiff's recitation of <u>Sonner</u>'s discussion of <u>Erie</u> is incomplete.  Omitted from plaintiff's characterization is the <u>Sonner</u> panel's subsequent recognition that:

> the Supreme Court clearly foresaw the possibility of this sort of inconsistency in <u>York</u> and concluded that federal courts ***must nonetheless apply principles of federal common law***. . . . Since <u>York</u>, the Court has never held or suggested that state law can expand a federal court's equitable powers, even if allowing such expansion would ensure a similar outcome between state and federal tribunals." <u>Id.</u> at 841-42 (emphasis added).

Second, plaintiff argues that it may pursue its equitable claims in the alternative pursuant to Rule 8.  Dkt. 125-3 at 13-14.  To support that position, plaintiff briefly cites <u>Moyle v. Liberty Mutual. Retirement Benefit Plan</u>, 823 F.3d 948, 962 (9th Cir.), <u>as amended on denial of reh'g and reh'g en banc</u> (Aug. 18, 2016) for the proposition that "Rule 8 [] permit[s] pursuit of equitable remedies alongside a legal claim that separately 'provides adequate relief.'" Dkt. 125-3 at 14.  But the decision in <u>Moyle</u> dealt with the availability of equitable relief under various ERISA statutes, which, as explained by the panel in that case, have their own unique policy objectives.  <u>Moyle</u>, 823 F.3d at 962 ("Finally, allowing plaintiffs to seek relief under both § 1132(a)(1)(B) and § 1132(a)(3) is consistent with ERISA's intended purpose of protecting participants' and beneficiaries' interests.").  Further, as suggested by the panel in <u>Sonner</u>, federal statutory law may

displace its common law counterpart. <u>Sonner</u>, 971 F.3d at 844 n.7 ("We need not linger long on Sonner's argument that 'under federal law' we look to the legislature's intent with respect to 'whether a statute provides for equitable remedies ***irrespective of an adequate-remedy-at-law*.*' The cases Sonner cites apply when equitable relief is sought under a federal statute, not a state statute.") (emphasis added).  In any event, the <u>Moyle</u> panel made no reference to the binding precedent in <u>York</u> and plaintiff failed to explain why Rule 8's general permission for alternative pleading limits otherwise applicable principles of federal common law.  Given the clear and unequivocal statement of the subject principle by the panel in <u>Sonner</u>, 971 F.3d at 844, the court will not impose any such limitation here.

Third, plaintiff argues that, even if it were required to allege why it lacks an adequate legal remedy to pursue its equitable claims, such requirement does not extend to its request for injunctive relief.  Dkt. 125-3 at 20.  To support that argument, plaintiff cites the <u>Sonner</u> panel's recognition that it addressed only equitable claims for restitution premised on past harms, ***not*** injunctive relief.  <u>Id.</u>  The court disagrees with plaintiff's attempt to cabin the subject requirement to equitable claims for non-injunctive relief.  Whatever the facts before the panel in <u>Sonner</u>, the Supreme Court in <u>York</u> did not draw any distinction among the various forms of equitable relief when requiring the absence of a "plain, adequate, and complete remedy at law" to obtain it.  Thus, plaintiff's final argument about the applicable rules is unavailing.  Having decided such rules, the next issue is whether plaintiff maintains an adequate remedy at law for its alleged harms.

## 2.   The Adequacy of Plaintiff's Legal Remedies

As part of its § 17200 claim, plaintiff principally seeks two forms of equitable relief: (1) restitution for past harm, <u>id.</u> ¶¶ 151-52; and (2) an injunction prohibiting defendant from misrepresenting the accuracy of its targeting, <u>id.</u> ¶ 153, and requiring it to disclose the accuracy rates of its targeting categories, Prayer for Relief ¶ C.  For good measure, plaintiff tacks on unspecified requests for disgorgement and declaratory relief.  <u>Id.</u> ¶¶ B-C.

/ / /

United States District Court
Northern District of California

### a.    Plaintiff Failed to Show Why It Lacks an Adequate Legal Remedy for Past Harm

To substantiate its position that plaintiff maintains an adequate legal remedy for its requests for equitable relief, defendant points to plaintiff's recent addition of claims for statutory and common law fraud.  Dkt. 118 at 12.  Both claims seek money damages.  FAC ¶¶ 162, 170.  Plaintiff takes the position that the addition of its legal claims may not be construed as an admission.  Dkt. 125-3 at 16.  Plaintiff's position might be correct.  However, that position still fails to explain why, if indeed the rules set forth in <u>Sonner</u> control, plaintiff nonetheless lacks an adequate legal remedy for past harm.  That omission is fatal when viewed alongside plaintiff's direct argument that it lacks an adequate legal remedy with respect to future harm.  Dkt. 125-3 at 19-22.  The court will construe this difference as a tacit waiver by plaintiff that it maintains an adequate legal remedy for past harms.

Plaintiff's recent provision of an October 23, 2020 decision in a multi-district litigation case pending in this district, <u>In re: Juul Labs, Inc, Marketing, Sales Practices, and Products Liability Litig.</u>, No. 19-md-02913-WHO, , 2020 WL 6271173 (N.D. Cal. Oct. 23, 2020), does not alter that conclusion.  Plaintiff directed the court's attention to a particular page in that decision.  Dkt. 146 at 2.  At that section, Judge Orrick considered (one of the many) defendant's arguments that "claims for equitable relief under the UCL (and the FAL) fail because plaintiffs have not shown that they have inadequate remedies at law." 2020 WL 6271173 at *55.

Judge Orrick did not directly address defendant's argument.  Instead, he permitted plaintiffs "leave to amend to expressly allege that their remedies at law are inadequate and to support their claim to equitable restitution under the UCL and FAL."  <u>Id.</u>  Immediately after reaching that conclusion, Judge Orrick distinguished another recent decision from this district, <u>In re MacBook Keyboard Litig.</u>, No. 18-cv-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020).  In that case, Judge Davila dismissed plaintiffs' § 17200 claim with prejudice after finding that monetary damages were available and would

United States District Court
Northern District of California

1  serve as an adequate legal remedy for the alleged injury.  2020 WL 6047253, at *4.

2  Judge Orrick characterized the posture of the complex action before him as "significantly

3  different from that in <u>In re MacBook Keyboard Litig</u>," explaining that, "[f]or example,

4  damage claims are asserted primarily against [the subject defendant], but the UCL and

5  equitable relief claims are asserted against [the subject defendant] *and* the other

6  defendants from whom damages may not be recoverable."  2020 WL 6271173 at *55 n.

7  67 (emphasis in the original).

8       Here, Facebook is the only defendant in this action.  Plaintiff directs all requests at

9  only it.  The rationale driving Judge Orrick's decision to permit plaintiffs leave to amend

10  their claim for restitution (which would be based on past harms) are inapplicable here.

11  Accordingly, the requests for restitution and disgorgement are dismissed with prejudice.[3]

12       **b.**    **Plaintiff Lacks an Adequate Legal Remedy for Future Harm**

13       Defendant principally argues that plaintiff failed to allege why damages would not

14  protect it from any harm that "might befall [it] in the future."  Dkt. 118 at 12.  In its

15  opposition, plaintiff argues that its claims for deceit and common-law fraud seek only

16  "actual damages," which, under California law, may be recovered for future harm only if

17  plaintiff can prove that such harm is "certain." Dkt. 125-3 at 20-21.  "Thus," plaintiff

18  asserts, there is "no adequate legal remedy for the injunctive relief [it] seeks."  <u>Id.</u> at 21.

19  In its reply, defendant does not address plaintiff's argument that its fraud claims are

20  limited to actual damages.  Instead, defendant characterizes plaintiff's claims of future

21  harm as "conclusory" and repeats its opening brief's argument that plaintiff has "not

22  alleged why the nature of any harm [it] might suffer in the future could not be remedied by

23  legal relief."  Dkt. 134 at 20.

24       As plaintiff argues, and defendant fails to oppose, the California Supreme Court

25  has recognized that "[i]n the absence of a fiduciary relationship, recovery in a tort action

26

27

28

---

[3] Plaintiff asks that the court permit it leave "to clarify" that its request for restitution is "alleged in the alternative."  Dkt. 125-3 at 23.  As explained in Section B.1. above, Rule 8 does not limit the federal common law principle at issue.  Thus, any amendment on that ground would not salvage the subject equitable claims.

for fraud is limited to the actual damages suffered by the plaintiff." <u>Ward v. Taggart</u>, 51 Cal. 2d 736, 741 (1959). The California Supreme Court has also ruled that California Civil Code § 1709 provides that damages for deceit "must be measured by the actual losses suffered because of the misrepresentation." <u>Gagne v. Bertran</u>, 43 Cal. 2d 481, 490 (1954). California intermediate appellate courts have explained that "actual damages," including in the context of claims for deceit:

> "[a]re those which compensate someone for the harm from which he or she has been proven to currently suffer ***or from which the evidence shows he or she is certain to suffer in the future***. They are to be distinguished from those which are nominal rather than substantial, exemplary or punitive rather than compensatory, and speculative rather than existing ***or certain***." <u>Saunders v. Taylor</u>, 42 Cal. App. 4th 1538, 1543-44 (1996) (emphasis added).

In its complaint, plaintiff alleges that injunctive relief is "appropriate on behalf of members of the Class because Facebook continues to violate the UCL by knowingly misrepresenting the accuracy of its ad targeting and failing to disclose the true accuracy rates of its targeting categories." FAC ¶ 153. Plaintiff further alleges that it faces an "actual threat of future harm that is concrete and particularized." <u>Id.</u> It explains that "while [it] would like to resume advertising on Facebook, [it] cannot do so because [it] remain[s] unable to rely on Facebook's representations about the accuracy of its ad targeting." <u>Id.</u>

On its face, this allegation does not address why plaintiff cannot prove future harm with certainty. However, the court finds that explanation reasonably inferable: plaintiff has no factual basis to quantify its actual damages for future harm. At minimum, such calculation depends on how many advertisements it would purchase but-for the challenged conduct and how much defendant would charge for such purchases. Plainly, both factors are unknown. This action's procedural posture further complicates that problem of proof. Importantly, the court has not certified any class. Given that, the scope of any class, the identities of its members, and their respective advertisement purchasing practices also remain unknown.

1   Defendant's remaining counterarguments do not alter the court's conclusion that

2   the circumstances of this action show that plaintiff cannot prove actual damages for

3   future harm.  First, defendant argues that plaintiff's request for injunctive relief is barred

4   because it rests on facts that overlap with its legal claims.  Dkt. 134 at 17-19.  To support

5   that argument, defendant relies on Loo v. Toyota Motor Sales, USA, Inc., 2019 WL

6   7753448, at *13 (C.D. Cal. Dec. 20, 2019).  In that case, the court concluded that

7   plaintiffs may not plead its equitable claims in the alternative because, in relevant part,

8   they did "not dispute that their equitable and legal claims are based on the same factual

9   predicates."  Id.

10   Plaintiff makes no such concession here.  To the contrary, plaintiff argues that its

11   equitable claims partially rest on future harm.  Dkt. 125-3 at 19.  Plaintiff expressly

12   disclaims such harm as a basis for its deceit or common law fraud claims.  Id. at 20

13   ("Plaintiffs' claims for deceit and common-law fraud do not provide for injunctive relief or

14   otherwise address this risk of *future* harm plaintiffs face.").  That position is supported by

15   plaintiff's allegations.  FAC ¶¶ 161, 170 (alleging harm element for both claims in only the

16   past tense).  Thus, Loo is beside the point.

17   Second, defendant suggests that plaintiff's request for compensatory and punitive

18   damages undermines its ability to allege a cognizable risk of future harm.  Dkt. 134 at 20.

19   That might be, since, as defendant points out, punitive damages are "meant to *deter*

20   future misconduct."  Id.  However, defendant fails to identify any authority establishing

21   that such deterrence eliminates an actionable risk of future harm.  Given that the court

22   must draw all reasonable inferences in plaintiff's favor, the court declines to itself find any

23   such link.

24   Lastly, the recent decisions identified by defendant, Dkt. 141 (Gibson v. Jaguar

25   Land Rover N. Am., LLC, 2020 WL 5492990 (C.D. Cal. Sept. 9, 2020)) and Dkt. 145 (In

26   re MacBook Keyboard Litig., 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020)) do not

27   bear on the court's conclusion that plaintiff lacks an adequate legal remedy for future

28   harms.  Neither decision analyzes the adequacy of monetary damages with respect to

United States District Court
Northern District of California

1  only future harm.  Instead, both decisions lump their analyses of the adequacy of such

2  legal remedy as it pertains to all harm (past and future) without differentiation.  Thus, the

3  court finds their reasoning unpersuasive on the precise issue at hand.[4]

4  In short, the court concludes that plaintiff may pursue its equitable claims for

5  injunctive and declaratory relief to the extent it premises them on future harm.

6  Accordingly, the court denies defendant's motion to dismiss with respect to such claims.

7  **C.  Motions to Seal**

8  "There is a general principle in favor of public access to federal court records."

9  Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). "The proponent of sealing

10  bears the burden with respect to sealing.  A failure to meet that burden means that the

11  default posture of public access prevails."  Kamakana v. City & City of Honolulu, 447 F.3d

12  1172, 1182 (9th Cir. 2006).

13  The Ninth Circuit has recognized that two different standards may apply when a

14  request to seal a document is made in connection with a motion—namely the "compelling

15  reasons" standard or the "good cause" standard. Ctr. For Auto Safety v. Chrysler Grp.,

16  LLC, 809 F.3d 1092, 1096-97 (9th Cir. 2016).  While the compelling reasons standard

17  applies to any sealing request made in connection with a motion that is "more than

18  tangentially related to the merits of a case," id. at 1101, the Ninth Circuit has not spoken

19  on the standard applicable to a request to seal a complaint.  However, numerous courts

20  in this district have ruled that the compelling reasons standard controls such a request.

21  Ojmar US, LLC v. Sec. People, Inc., 2016 WL 6091543, at *2 (N.D. Cal. Oct. 19, 2016)

22  (collecting cases).

23  Under the compelling reasons standard, a court may seal a record only if it finds a

24  "compelling reason" to support such treatment and articulates "the factual basis for its

25  _____

26  [4] In its reply, defendant asserts that plaintiff failed to allege that any future harm suffered as a result of the challenged practices would be irreparable.  Dkt. 134 at 20-21.

27  Defendant did not raise this argument in its opening brief, Dkt. 118, so plaintiff did not have the opportunity to respond. The court will not consider the merits of defendant's new

28  contention.  Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

ruling, without relying on hypothesis or conjecture." <u>Ctr. for Auto Safety</u>, 809 F.3d at 1096-97.  If it has made such finding, the court "must then conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." <u>Id.</u> at 1097.  Factors relevant to that balancing test include the public interest "in understanding the judicial process," <u>Pintos v. Pac. Creditors Ass'n</u>, 605 F.3d 665, 679 n.6 (9th Cir. 2010), as well as the volume of material sought to be sealed, <u>Algarin v. Maybelline, LLC</u>, 2014 WL 690410, at *3 (S.D. Cal. Feb. 21, 2014).

The Ninth Circuit has expressly acknowledged that "[w]hat constitutes a 'compelling reason' is best left to the sound discretion of the trial court." <u>Ctr. for Auto Safety</u>, 809 F.3d at 1097.  "Examples include when a court record might be used to gratify private spite or promote public scandal, to circulate 'libelous' statements, or 'as sources of business information that might harm a litigant's competitive standing.'" <u>Id.</u>

Here, defendant asks the court to seal portions of two filings: (1) the FAC, Dkt. 116; and (2) plaintiff's opposition to the motion to dismiss, Dkt. 131.  Defendant agrees that the compelling reasons standard controls its requests.  Dkt. 116 at 4; Dkt. 131 at 2-4.

At the outset, the court notes the unusual nature of these requests: defendant is asking the court to seal an ***opposing*** party's pleadings.  In ordinary course, such a request is improper.  The FAC is plaintiff's pleading and, within the bounds of Rule 11, it is free to allege what it wants independent of any stricture defendant wishes to impose.  The court understands, however, that plaintiff has taken discovery and that the FAC is more detailed than an ordinary verified pleading.  Given that difference, the court will consider these requests.

### 1.    The FAC Portions

Defendant asks that the court partially or completely seal 37 paragraphs and two footnotes in the FAC that purportedly concern the following categories of information:

1.    Defendant's internal analyses of its data.  Dkt. 116-1 ¶ 10.[5]

---

[5] In her declaration, defendant's Associate General Counsel Holly Tambling ("Tambling") specifies the FAC paragraphs sought for sealing per category.

United States District Court
Northern District of California

2.       Defendant's internal analyses of third-party data used for targeting. Id. ¶ 11.

3.       Analyses performed on defendant data by The Nielsen Company.  Id. ¶ 12.

4.       Defendant's revenue streams.  Id. ¶ 13.

5.       Defendant's internal testing and assessments of product features.  Id. ¶ 14.

6.       The technical processes and functionalities of defendant's ads targeting and delivery systems.  Id. ¶ 15.

To be clear, as noted below, the FAC portions sought for sealing reflect plaintiff's interpretation of the information it has received in discovery.  Such characterizations by plaintiff do not amount to admissions by defendant.  With that clarification in mind, the court will analyze each category in turn.

### a.       Internal Analyses of Defendant's Product

This category comprises 22 FAC paragraphs.  Dkt. 116-1 ¶ 10.  Defendant claims that the information in them quotes and characterizes its internal assessments of user data.  Id.  Defendant relies on its assessments to provide its advertising platform and services.  Id.

Defendant argues that the court should seal the information in this category for two reasons.  First, courts routinely seal commercially sensitive R&D details.  Dkt. 116 at 7. Second, if this information were disclosed, such disclosure would provide defendant's competitors "fodder to make inaccurate, incomplete, and commercially harmful claims about Facebook's ad targeting capabilities."  Id.

The court declines to seal the information in this category.  Defendant's first argument rests on district court authorities relying on the good cause standard to justify the requested sealing.  Verinata Health, Inc. v. Ariosa Diagnostics, Inc., 2014 WL 4805332, at *1 (N.D. Cal. Sept. 25, 2014); GPNE Corp. v. Apple Inc., 2015 WL 4381244, at *2 (N.D. Cal. July 16, 2015).  As defendant concedes, that less demanding standard is inapplicable here.

Defendant's second argument fails because it lacks factual support.  In her five-page declaration, Tambling principally states that defendant:

> treats this information as confidential . . . and public disclosure of [it] would provide Facebook's competitors with non-public and competitively sensitive information about Facebook's ad platform and its advertising services. Id. ¶ 10.

Then, as something of a catch-all statement indiscriminately directed at all categories of information at issue in this motion, Tambling adds that:

> [Defendant] believes the likelihood of competitive harm caused by the disclosure of information in categories 1-6 is even more acute in this case because plaintiffs have selectively quoted from and mischaracterized the information in the documents.
>
> . . .
>
> Such disclosure of incomplete information, preliminary assessments, or misleading characterizations about Facebook's advertising platform and the advertising services it provides could confuse advertisers and other stakeholders and be misused by Facebook's competitors.
>
> . . .
>
> In addition, disclosure may chill free and open discussions and analyses of future issues and other contemplated product changes at Facebook, which could cause competitive harm by minimizing the likelihood that such discussions and analyses will take place. Id. ¶ 16.

The above statements fail to explain why a competitor's acquisition of the subject information would unfairly provide such competitor with fodder to make commercially harmful claims. While Tambling's second statement at paragraph 16 superficially touches on defendant's proffered second compelling reason, it does so in only speculative terms through its use of the verb "could" to describe the potential misuse. A lot of things "could" happen—but such a mere possibility, without more factual explanation substantiating its plausibility, is insufficient to hide the information from the public record. Thus, defendant failed to articulate compelling reasons supported by specific facts to justify sealing subject information.

In any event, even if defendant had articulated a compelling reason supported by non-speculative evidence, the court is not persuaded that defendant's interest in it outweighs the public's interest in accessing it. The ratio of FAC paragraphs sought to be sealed under this category (22 of 170) is not inconsequential. More importantly, though,

United States District Court
Northern District of California

this action sounds in fraud.  Such actions, as a general matter, turn on detail.  Thus, to understand the process concerning it, the public has a significant interest in accessing the allegations (whatever their merits) that form its basis.  Given the above, the court denies defendant's request to seal the first category of information.

### b.   Internal Analyses of Third-Party Data

This category comprises five FAC paragraphs.  Dkt. 116-1 ¶ 11.  Defendant claims that the information in them quotes and characterizes defendant's internal analyses concerning its "partner categories," id., which, "were a former partnership between Facebook and third-party data providers used to provide additional targeting options to advertisers," Dkt. 116 at 7.

Defendant argues that the subject paragraphs reveal confidential information about "some specific methods" it has used and continues to use to analyze the accuracy of its data sources and such analyses' corresponding results.  Id.  Defendant also points out that the subject paragraphs include internal commentary regarding those results.  Id.

The court declines to seal the information in this category.  In her declaration, Tambling explains that:

> [b]ecause similar types of methods are currently in use to evaluate the accuracy of other data sources, disclosing [the methods purportedly reflected in the subject paragraphs] publicly would allow Facebook's competitors to gain an unfair insight into how Facebook manages and assesses the effectiveness of its advertising services and its advertising platform, thereby giving them a competitive advantage and causing Facebook competitive harm."  Dkt. 116-1 ¶ 11.

That explanation fails to support defendant's proffered compelling reason to seal the subject material.  First, defendant fails to identify (in even general terms) the supposed "specific methods" reflected in this category of information.  Based on the court's review, it appears that at least one of the five paragraphs sought for sealing, FAC ¶ 105:11-18, discusses the results of internal surveys from August 2015 that compare the relative accuracy of defendant's data sources.  That discussion does not detail any "specific method" used to reach those results.  While the court might seal survey results

17

as potential trade secret information, Tambling's explanation for the competitive harm that would result from disclosure is premised on only defendant's ongoing use of "similar types of methods," ***not*** five-year old results.

Second, to the extent defendant suggests that internal surveys using variables such as "household income" or "parental status," see e.g., id. ¶ 9:13-16, serve as the specific methods that qualify as "confidential information" regarding its services, Dkt. 116 at 8, defendant failed to proffer any authority to support the proposition that studies relying on such unremarkable and obvious variables qualify as trade secrets or otherwise protectable material under the compelling reasons standard.  That decision is in-line with this court's prior refusal to find that like general information satisfies even the less demanding good cause standard.  In re Rocket Fuel Inc. Sec. Litig., 2017 WL 344983, at *6 (N.D. Cal. Jan. 24, 2017) ("Moreover, the material that defendants characterize as revealing its fraud prevention 'methodology' do not generally provide the sort of technical detail that would make them sealable as a trade secret.  In the main, the emails are merely reports about high click through rates, fraud on particular ad campaigns, or general discussion about the fraud problem.  Such emails do not disclose the technical details of Rocket Fuel's technology.").

Regardless, even if the court were willing to adopt defendant's unsubstantiated position that allegations reflecting ***the use*** of such variables is protectable, defendant still fails to explain why ***the efficacy of the results*** of such use, see, e.g., FAC ¶ 9:11, 13-14, ¶ 101:23-24, ¶ 121:5, ¶ 127: 11-18, as opposed to the results themselves, is sealable.  Thus, defendant's request to seal this category is, in any event, overbroad.  Oregonian Pub. Co. v. U.S. Dist. Court for Dist. of Or., 920 F.2d 1462, 1465 (9th Cir. 1990) ("This presumed right can be overcome only by an overriding right or interest "based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."); Civ. L.R. 79-5(b) ("The request must be narrowly tailored to seek sealing only of sealable material . . .").  Given the above, the court denies defendant's request to seal the second category of information.

### c.     Data Analysis by the Nielsen Company

This category comprises one FAC paragraph.  Dkt. 116-1 ¶ 12.  The information in it quotes and characterizes an analysis of defendant's data by a third-party, the Nielsen Company ("Nielsen").  Id.  Defendant argues that the court should seal the paragraph because, if disclosed, it would cause "competitive harm" to Facebook and Nielsen.  Dkt. 116 at 8.

The court declines to seal the information in this category.  In her declaration, Tambling principally states that this information's disclosure would:

> allow Facebook's competitors to gain an improper insight into how Facebook evaluates and assesses the effectiveness of its advertising services and its advertising platform, thereby giving them a competitive advantage and causing Facebook competitive harm.  Dkt. 116-1 ¶ 12.

That explanation fails to substantiate defendant's proffered compelling reason.  The three lines sought for sealing characterize changes in the accuracy of defendant's advertisement targeting.  FAC ¶ 34:4-5,7.  Those characterizations are silent on **how** defendant (or Nielsen) assessed such accuracy.[6]  Separately, and as plaintiff aptly points out, Dkt. 121 at 8, the fact that defendant was willing to disclose the results of the Nielsen analysis when such results were favorable (i.e., 89% targeting accuracy) seriously belies defendant's purported justification for sealing.  The only difference between the results is a relatively less favorable outcome.  Accordingly, the court denies defendant's request to seal the third category of information.

### d.     Defendant's Revenue Streams

This category comprises five FAC paragraphs.  Dkt. 116-1 ¶ 13.  The information in it quotes and characterizes documents concerning the size and relative significance of defendant's revenue streams.  Id.

Defendant argues that the court should seal the subject paragraphs because

---

[6] Tambling's catch-all declaration that disclosure of the subject information "**could** . . . be misused," Dkt. 116-1 ¶ 16, fares no better.  As decided above, a party's declaration of vague possibility of misuse is factually insufficient to justify sealing under the compelling reasons standard.

United States District Court
Northern District of California

courts routinely seal filings containing product information "concerning such things as costs, sales, profits, and profit margins."  Dkt. 116 at 9.  To support that position, defendant relies on <u>Apple v. Samsung Electronics Co.,</u> 727 F.3d 1214, 1225 (Fed. Cir. 2013), in which the Federal Circuit reversed the district court under the compelling reasons standard for not sealing the parties' financial information.

The court will seal the information in this category.  In her declaration, Tambling states that:

> disclosure of this information would allow Facebook's competitors to gain unfair insights into Facebook's strategic thinking regarding its revenue streams and products, thereby causing Facebook competitive harm. In addition, disclosure would reveal sensitive information about how Facebook conducts its operations.  Dkt. 116-1 at 6.

The court finds the latter part of Tambling's explanation persuasive.  The financial information detailed at paragraph 10, 116, 117, 118, and 123 reflects a combination of revenue earned by defendants from its various services and its profit margins for some such services.  The subject numbers provide some glimpse into defendant's mental impressions about how to dedicate its organizational efforts.

The court also finds that defendant's interest in this category of information outweighs the public's interest in accessing it.  Critically, the public does not need see the subject financial details to understand this action.  Accordingly, the court grants defendant's request to seal the fourth category of information.

### e.    Defendant's Internal Testing and Assessments of Product Features

This category comprises six FAC paragraphs and a footnote.  Dkt. 116-1 ¶ 14. Defendant claims that the information in them quotes and characterizes documents concerning its internal testing and assessing of the effectiveness of its advertising platforms, as well as potential changes to such platform and related strategies.  <u>Id.</u> Defendant argues that the court should seal the information in this category because "[c]ourts frequently seal information of this nature."  Dkt. 116 at 9.  Five of the seven

United States District Court
Northern District of California

portions sought for sealing concern plaintiff's advertisement campaign.  FAC ¶¶ 7, 84, 84 fn.5, 85, 86.

With one exception, the court declines to seal the information in this category.  In her declaration, Tambling principally states that "the public disclosure of this information would allow Facebook's competitors to gain an unfair advantage, thereby causing Facebook competitive harm."  Dkt. 116-1 ¶ 14.  This explanation fails to establish why disclosure of the five FAC portions pertaining to plaintiff's advertising campaign in particular would result in competitive harm *to defendant*.  Plaintiff pointed out this shortcoming in its opposition.  Dkt. 120 at 9.  Defendant failed to proffer any response.  Given that failure, defendant failed to articulate a compelling reason supported by specific facts to justify sealing paragraphs 7, 84, 84 fn. 5, 85, 86.

Second, with respect to paragraph 87, Tambling's explanation is unpersuasive.  Critically, she fails to establish why the alleged fact concerning what defendant's data showed would confer an unfair advantage to its competitors.  Thus, defendant failed to articulate a compelling reason supported by specific facts to justify sealing paragraph 87.

However, the court finds Tambling's explanation persuasive with respect to paragraph 83.  That paragraph discusses a study's findings.  These findings do not concern plaintiff's campaign in particular and their specificity suggest that they might qualify as trade secrets.  Accordingly, the court finds that defendant articulated a compelling reason to justify sealing this paragraph.

The court acknowledges that this paragraph's discussion concerns the accuracy of defendant's advertising, which, of course, bears a close relationship to the merits of this action and, thus, would aid the public's understanding of this litigation.  Still, given the specificity of the information at issue and the fact that it is contained in a single FAC paragraph, the court finds that the remaining balancing factors cut in favor of sealing it.  Given the above, the court denies defendant's request to seal the fifth category of information, except with respect to paragraph 83, which it grants.

/ / /

1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

f.     **The Technical Processes and Functions of Defendant's Systems**

This category comprises a single footnote.  Dkt. 116-1 ¶ 15.  It concerns the pricing mechanism used by defendant for certain ads.  Id.  Defendant argues that the court should seal this footnote because it reflects trade secrets.  Dkt. 116 at 9-10.

The court finds a compelling reason to seal the subject information.  To be sure, Tambling's summary assertion that defendant treats the subject information as "competitively sensitive," Dkt. 116-1 ¶ 15, is inadequate to support sealing it.  Still, the court reviewed the subject footnote.  Based on that review, the court finds that its specific description of how the pricing mechanism functions supports defendant's proffered compelling reason.

The court also finds that defendant's interest in maintaining the secrecy of this information outweighs the public's interest in accessing it.  Presently, the public does not need to know the function of the subject pricing mechanism to understand this litigation. To the extent this detail (or others like it) affect such understanding at latter stages of the litigation, the court may revisit this decision.  Accordingly, the court grants defendant's request to seal the sixth category of information.

2.     **Plaintiff's Opposition to Defendant's Motion to Dismiss**

Defendant seeks to seal approximately ten lines from a single page of plaintiff's opposition to the motion to dismiss.  Dkt. 131.  All such lines concern information that falls into either the first, second, or fifth categories analyzed above.  Id.  To support this request, defendant primarily relies on its briefing in support of its request to seal the FAC. Id. ¶¶ 3-5 (incorporating Docket 116 and Docket 121 by reference).

For the same reasons provided above, the court denies defendant's request to seal those portions of plaintiff's opposition that reflect the first and second categories of information.  The court grants defendant's request to seal the portion of that filing relying on FAC ¶ 83.

/ / /

**CONCLUSION**

For the above reasons, the court **GRANTS** defendant's motion to dismiss plaintiff's § 17200 claim and all requests for equitable relief **WITH PREJUDICE** to the extent they rely on past harm but **DENIES** that motion to the extent they rely on future harm.

The court also **GRANTS** defendant's motion to seal portions of the FAC (under provisional seal at Docket 112-3), Dkt. 116, with respect to only the following sections:

- FAC ¶ 10, lines 19-21.
- Id. ¶ 83, lines 13-18.
- Id. ¶ 116, lines 3-9.
- Id. ¶ 117, lines 11-12.
- Id. ¶ 118, lines 13-15.
- Id. ¶ 123, lines 12 and 14.
- Id. fn. 6.

To the extent any of the above referenced lines also include grey-highlighted sections that defendant identified in Docket 116-4 as not subject to protection, those grey-highlighted sections may not be sealed.  Only the yellow-highlighted sections of the above lines are subject to redaction.  Except the above enumerated portions, the court **DENIES** defendant's motion to seal the remaining portions of the FAC in its entirety.

Lastly, the court **GRANTS** defendant's motion to seal plaintiff's opposition (Dkt. 125) with respect to only page two, lines 21-23 (Dkt. 125-3 at 10:21-23).   Otherwise, the court **DENIES** that motion in its entirety.  Because defendant moved to seal these documents, but plaintiff originally filed them, the court **ORDERS** defendant to provide plaintiff with redacted versions of them that is consistent with this court's sealing order within ten days.  Plaintiff must then file those revised redacted documents on the public docket within fourteen days.

**IT IS SO ORDERED.**

1   Dated: November 6, 2020

2

3

                       /s/ Phyllis J. Hamilton

                       PHYLLIS J. HAMILTON
                       United States District Judge

United States District Court
Northern District of California