1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| INTEGRITYMESSAGEBOARDS.COM, LLC, Individually and on Behalf of All Others Similarly Situated, | Case No.: 4:18-CV-05286 PHJ-JCS |
| Plaintiff, | **DECLARATION OF GREGORY PINSONNEAULT IN SUPPORT OF PLAINTIFF'S MOTION TO CERTIFY CLASS** |
| v. | |
| FACEBOOK, INC., | |
| Defendant. | |

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

I.      Introduction ............................................................................................................. 1

II.     Executive Summary .................................................................................................. 1

III.    Qualifications ........................................................................................................... 2

IV.     Background .............................................................................................................. 4

        A.  Plaintiff's Class Allegations ......................................................................... 4

            1.  Proposed Class ................................................................................... 4

            2.  Causes of Action at Issue ................................................................... 5

        B.  Statement of Instruction on Damages for Fraud Causes of Action ............. 5

        C.  Overview of Facebook's Advertising Products and Services ........................ 6

        D.  ███████████████████████████████████████████████
            .................................................................................................................... 8

            1.  Interests Targeting Accuracy ............................................................. 9

            2.  Behaviors Targeting Accuracy ......................................................... 12

            3.  Partner Categories Targeting Accuracy ............................................ 13

V.      Bases for Opinions ................................................................................................. 18

        A.  Fact of Damages: Advertisers Received Less Value from Their Ads When
            Those Ads Were Displayed to Users Outside Their Targeted Audience ..... 18

            1.  Detailed Targeting Is Valuable to Advertisers ................................. 18

            2.  Accurate Targeting Is Valuable to Advertisers ................................ 22

            3.  ███████████████████████████████████ Support That
                Inaccurate Targeting Decreases Value for Advertisers ..................... 31

            4.  Advertisers Were Damaged ............................................................. 34

        B.  Damages Can Be Calculated on a Classwide Basis ................................... 35

            1.  Diminution in Value Can Be Calculated ████████████████
                .................................................................................................... 37

                (a)  The R/N Methodology Is a Reasonable Way To Apportion Advertiser
                     Value Among Targeting Criteria ................................................... 37

                (b)  The R/N Methodology Is a Reasonable Way to Calculate the
                     Diminution in Value for Particular Targeting Criteria .................. 45

                (c)  The R/N Methodology Can Be Reasonably Applied Based on the
                     Circumstances of the Case ............................................................ 50

                     (1)  ████████████████████ relating to the probability targeting
                          criteria are accurate ............................................................. 50

                     (2)  Targeting criteria that include multiple levels ...................... 53

                     (3)  Adjustment to probability of inaccuracy if advertisers expect
                          some level of inaccuracy ..................................................... 57

                (d)  ████████████████████████████ Supports the
                     Calculation of the Diminution in Value Based on the R/N
                     Methodology ................................................................................ 57

███ ████████████████████████████████████ .................................. 60

██ ████████████████████████████████████████ .................................. 60

    (b)  It is Reasonable to Use the Revenue-Share Methodology as a Basis to Apportion Advertiser Value to Partner Categories ........................................ 63

    (c)  Calculation of Diminution in Value Based on Revenue Share ..................... 66

   3.   Conclusion ...................................................................................... 68

VI.   Documents, Data and Other Information Received ........................................... 68

VII.  Compensation ................................................................................................ 69

VIII. Potential Additional Analyses to Perform .................................................... 69

I, Gregory Pinsonneault, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

## I.      Introduction

1.      I have been retained on behalf of IntegrityMessageBoards.com, LLC ("IMB" or "Plaintiff"), and the class of advertisers it seeks to represent, to determine whether the damages suffered by advertisers as a result of Facebook's fraudulent misrepresentation and concealment of its targeting inaccuracy can be reliably calculated on a classwide basis. I will refer to Plaintiff along with the class of advertisers it seeks to represent as the "Class Plaintiffs."

2.      I submit this declaration in support of Plaintiff's motion for class certification. The analysis below seeks to apply my specialized knowledge based on my experience, training, and education to documents and information produced in discovery. If called as a witness, I could competently testify, based upon a reasonable degree of professional certainty, to the opinions set forth in this declaration.

3.      For purposes of developing the opinions that I set forth in this declaration, I have assumed that Plaintiff's allegations are true and that liability will be established. I offer no opinions related to the veracity of Plaintiff's allegations or the assumption that liability will be proven. I summarize below the relevant background relating to the class allegations in this matter.

## II.     Executive Summary

4.      Based on my review and analysis of evidence produced by Facebook, as well as my education, training, and experience, I conclude that Class Plaintiffs were damaged when Facebook displayed ads to users outside the audiences Class Plaintiffs had defined in Facebook's self-serve targeting interface. I also conclude that Class Plaintiffs' damages can be calculated on a classwide basis and propose two methodologies for doing so, both based on methodologies Facebook itself used.

5.      My conclusion that Class Plaintiffs were damaged — that they received less value when their ads were displayed to users who did not match the targeting criteria Class Plaintiffs had selected — is supported by the documents and research Facebook produced. ██████████

---

6.      I further conclude that I can calculate the out-of-pocket losses incurred by Class Plaintiffs on a classwide basis by using apportionment principles to estimate what portion of the value given by Class Plaintiffs was related to the inaccurate targeting criteria.  Specifically, by using apportionment principles, I can estimate the difference in actual value between what each Class Plaintiff gave (the amount paid to Facebook in connection with the display of an ad) and what value that Class Plaintiff received.

7.

8.      The R/N methodology and the revenue-share methodology provide a reasonable and reliable basis to calculate on a classwide basis the diminution in value that Class Plaintiffs suffered.

**III.    Qualifications**

9.      My qualifications are set forth in my curriculum vitae, which is included as Exhibit A to this declaration.  My curriculum vitae includes a list of the cases in which I have served as an expert and provided expert testimony through declaration, deposition, or before a finder of fact, as well as a list of my publications and speeches.  I include a brief summary of my qualifications below.

10.     I am a Managing Director and the Chief Executive Officer of LitiNomics, Inc. ("LitiNomics"), a financial and economic consulting firm of about 10 professionals that is primarily dedicated to supporting corporations, law firms, and financial institutions as they address issues that

arise in commercial litigation.  LitiNomics was started in 2007 and its primary office is located in Walnut Creek, California.

11.     Prior to becoming a Managing Director and Chief Executive Officer at LitiNomics in September 2016, I held the positions of Director and Chief Executive Officer, Principal and Chief Operating Officer, Principal, and Senior Associate from the time I started at LitiNomics in April 2007.  Prior to joining LitiNomics, I held positions with increasing responsibility at Charles River Associates International from 2003 to 2007 (ending with Senior Associate) and worked as an independent consultant for several consulting firms.

12.     I earned two bachelor degrees from the University of Washington in 1996: a Bachelor of Science (cum laude) in computer science and a Bachelor of Arts (cum laude) in economics and mathematics.  I also earned a Master of Arts in economics from the University of California at Berkeley in 2002, with fields of specialization of Industrial Organization and Econometrics.  During my time at the University of California at Berkeley, I was a graduate student instructor for Industrial Organization (three semesters) and Econometrics (one semester), in addition to other economic courses, and I was awarded the "Outstanding Graduate Student Instructor Award" in 2002.

13.     During my 18-year consulting career, I have consulted on more than 210 matters, more than 170 of which have involved the calculation of economic damages.  I have been the retained expert or project lead (in non-litigation matters) in more than 90 of these matters, involving a wide range of causes of action, including cases involving intellectual property disputes (patent infringement, misappropriation of trade secrets, copyright infringement and trademark infringement), consulting on reasonable license terms (non-litigation), breach of contract disputes, class certification issues, and other issues.  The matters for which I have consulted have included a wide range of technologies, including consumer electronics, medical devices, touchscreen devices, online advertising, computers, chip design and manufacturing, software, and e-commerce.

14.     I am a Certified Licensing Professional, a designation that is intended to recognize professionals who have demonstrated their experience and proficiency in the licensing and

commercialization of intellectual property.  I am a member of the American Economic Association, the Western Economic Association International, the Licensing Executive Society, and the American Intellectual Property Law Association.  I am also an Associate of the American Bar Association, and a committee member of the patent litigation, copyright litigation, and trademark litigation committees of the American Bar Association.

## IV.  Background

### A. Plaintiff's Class Allegations[1]

15.     This section provides a general overview of my understanding of the allegations at issue in this case.  I understand that Plaintiff seeks to represent a class of advertisers who used Facebook's self-serve advertising platform to target the display of their ads to Facebook users from August 28, 2014 to the present (the "Class Period").  During this period, Facebook persistently misrepresented that it could "show ads to people that match the advertiser's target audience." Facebook defrauded these advertisers because Facebook knew, but fraudulently concealed from these advertisers, that certain of its targeting categories — interest, behavior, and partner categories — were ███████████ inaccurate, and therefore, that a ██████████████████ were being displayed to users who did not match the targeting criteria that advertisers had selected.[2]

### 1.  Proposed Class

16.     In its class certification motion, I understand that Plaintiff seeks to certify the following class:

All individuals or entities within the United States who, from August 28, 2014 to the present, targeted Facebook users in one or more "interest," "behavior," or "partner" categories selected using Facebook's self-serve targeting interface, and who paid Facebook for at least one ad for which they had neither (a) expressly authorized Facebook to disregard their targeting criteria by opting into "Targeting Expansion"

---

[1] In this section I set forth my understanding of the background of the case and Class Plaintiffs' allegations based on the latest complaint filed in this matter, my review of relevant motions and court transcripts, and discussions with counsel.

[2] First Amended Class Action Complaint, July 13, 2020 (hereafter, "First Amended Complaint"), pp. 2-3.

nor (b) elected to be charged only when a user made a purchase or downloaded an app.[3]

## 2. Causes of Action at Issue

17.     I understand that Plaintiff seeks to certify a class under Rule 23(b)(3) pursuing claims for (1) deceit under Section 1709 of the California Civil Code, and (2) common law fraud. These claims allege that Facebook misrepresented (both through affirmative statements and material omissions it had a duty to disclose) its ability to display ads to users who actually matched the targeting criteria advertisers selected through Facebook's targeting interface.[4]  Plaintiff is also seeking punitive damages on its fraud claims.

18.     I am further advised that Plaintiff seeks to certify a class under Rule 23(b)(2) for declaratory and injunctive relief under California's Unfair Competition Law.  Specifically, I understand that Plaintiff seeks a declaration that Facebook's practices are likely to deceive a reasonable consumer, in violation of the UCL, and a mandatory injunction that would require Facebook to provide truthful, non-misleading information about its targeting accuracy in the future.

## B. Statement of Instruction on Damages for Fraud Causes of Action

19.     I understand from counsel that if Plaintiff prevails in certifying its deceit and/or common law fraud claims, and proving Facebook's liability on such claims, California law provides that the class members will be entitled to out-of-pocket damages, which are measured as the difference between what the class members paid and the value of what the class members received. Specifically, I understand that the California Supreme Court has held that defrauded parties are ordinarily limited to recovering out-of-pocket losses, defined as "the measure of damages . . .

---

[3] I understand the proposed class definition also excludes Facebook and its subsidiaries, affiliates, and current and former officers or employees (and members of their immediate families); their representatives, heirs, or assigns; and any judge, justice, or judicial officer presiding over this matter (and members of their immediate families).  I note that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ even if a targeting specification is used to deliver a very small number of ads, it is very likely that at least one of the targeting criteria at issue is inaccurate.  For example, if a targeting criterion has an accuracy rate of 50%, and if 10 ads are delivered using that targeting criterion, the chance the targeting criterion is actually satisfied for all 10 ads is 1 in 1,024, or less than 0.1%.

[4] First Amended Complaint, pp. 35-38.

directed to restoring the plaintiff to the financial position enjoyed by him prior to the fraudulent transaction," i.e., "the difference in actual value at the time of the transaction between what the plaintiff gave and what he received."[5]

20.      I understand from counsel that Plaintiff is seeking class certification of its statutory and common law fraud claims for damages under Rule 23(b)(3),[6] and that to do so, Plaintiff must show that " 'damages are capable of measurement on a classwide basis,' in the sense that the whole class suffered damages traceable to the same injurious course of conduct underlying the plaintiffs' legal theory."[7]  At the same time, I understand that Plaintiff need *not* show that class members' damages from the injurious conduct are identical.[8]  Further, I understand that California law "requires only that some reasonable basis of computation be used, and the damages may be computed even if the result reached is an approximation."[9]

**C. Overview of Facebook's Advertising Products and Services**

21.      Throughout the Class Period, Facebook has generated substantially all of its revenue selling advertising to businesses that market products and services to Facebook users.[10] Accordingly, Facebook's advertising system is a critical component of its operations.  In this section and to provide context for my opinions, I provide a general overview of Facebook's advertising products and services.

---

[5] *All. Mortg. Co. v. Rothwell*, 900 P.2d 601, 609 (1995) (Citations omitted).

[6] First Amended Complaint, pp. 31-33.

[7] *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (Citation omitted).

[8] *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 816-17 (9th Cir. 2019).

[9] *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) (Citation omitted).

[10] Facebook, Inc. Form 10-K for the fiscal year ended December 31, 2015, pp. 5-6, 9, 42.  *See also* Facebook, Inc. Form 10-K for the fiscal year ended December 31, 2016, pp. 5-6, 9, 41.  *See also* Facebook, Inc. Form 10-K for the fiscal year ended December 31, 2017, pp. 5-6, 9, 43.  *See also* Facebook, Inc. Form 10-K for the fiscal year ended December 31, 2018, pp. 5-6, 9, 44.  *See also* Facebook, Inc. Form 10-K for the fiscal year ended December 31, 2019, pp. 7-8, 11-12, 56.

22.     Facebook allows advertisers to create ads, identify a target audience of users with certain characteristics the advertiser would like those ads to reach, and manage those ads as part of an ad campaign, all using Facebook's self-serve targeting interface.

23.     As part of setting up an ad campaign, advertisers use Facebook's self-serve targeting interface to identify their objective and elect how to be charged for their ad (one option, for example, was "per impression," or each time an ad was shown to a user).[11]

24.     Using Facebook's self-serve targeting interface, advertisers can then define an audience for their ads.[12] This interface allows advertisers to create an audience using targeting criteria, including location, age, language, gender, custom / lookalike audiences, connections, and ███████████.[13] Those ████████ include ██████████████ information,[14] such as a

---

[11] Facebook Document, March 28, 2019, FBIMB000180. *See also* Facebook Webpage, "Help: Choose the Right Ad Objective - Facebook Business Help Center," Updated November 13, 2020, <https://www.facebook.com/business/help/1438417719786914>, accessed December 17, 2020. *See also* Facebook Document, ████████████ February 2, 2016, FBIMB010244-259 at '245 (showing Objective Categories in early 2016). *See also* Facebook Document, ████████ Summer 2015, FBIMB006787, p. 10. *See also* Facebook Webpage, "About Getting Charged," <https://www.facebook.com/business/help/146070805942156?id=629338044106215>, accessed December 16, 2020. *See also* Facebook Webpage, "Will I be charged for my ad if it didn't receive impressions or link clicks?" <https://www.facebook.com/business/help/189320824449558?id=1792465934137726>, accessed December 16, 2020.

[12] Exhibit 18 to Declaration of Caleb Hayes-Deats, December 23, 2020.

[13] Exhibit 18 to Declaration of Caleb Hayes-Deats, December 23, 2020. *See also* Facebook Document, ███████████████ February 2, 2016, FBIMB010244-259 at '244.

[14] ████████████████████████████████████ ████████████████████████████████████ ████████████████████████ (Facebook Spreadsheet, "FBIMB012464.xlsx," tab "Top Segments") ████████ ████████████████████████████████ ████████████████████. *See also* Facebook Document, FBIMB000325. *See also* Facebook Document, FBIMB000326. *See also* Facebook Document, FBIMB000327. *See also* Facebook Presentation, ████████████ February 2016,

1   user's household income, homeownership status, and parental status, as well as the user's

2   "interests" based on the user's online activity, and "behaviors" on or offline.[15]  Facebook offered

3   ███████ segments based on data Facebook accumulated about users through the Facebook

4   platform itself and on data Facebook obtained through contracts with third-party data vendors,

5   through a program called Partner Categories.[16]

6          25.     Once an advertiser creates an ad campaign, ████████████████████████

7   ██████████████████████████████████████████████████████████████████████████

8   ███████████████████████████

9   ████████████████████████████████████████████████████

10  ████████████████████████████████████████████████

11  ███████████████████████████████████████████████████████████

12

13  David Amsallem, FBIMB012120-143 at '124.  *See also* Facebook Webpage, "Ad Targeting: Help
    your ads find the people who will love your business,"
    <https://www.facebook.com/business/ads/ad-targeting>, accessed December 16, 2020.

14

15  [15] Facebook Document, ████████████████████ February 2, 2016, FBIMB010244-
    259 at '244.  *See also* Facebook Presentation, ██████████████████ February 2016,

16  David Amsallem, FBIMB012120-143 at '124.  *See also* AdEspresso, "The Beginner's Guide to
    Facebook Audiences and Targeting," <https://adespresso.com/guides/facebook-ads-

17  beginner/demographic-targeting/>, accessed November 9, 2020.  *See also* Facebook Document,
    ███████████ June 1, 2015, FBIMB011021-028 at '021.

18  [16] ████████████████████████████████████████████████████████████████████
    ████████████████████████████████████████ *See* Facebook Document,

19  ███████████████████████████████████ FBIMB005919.  *See also*
    Facebook Document, ███████████████████████████ October 30, 2017, FBIMB033909-

20  915.  *See also* Email from Xingyao Ye to Mitu Singh, ████████████████████████
    ███████████████████████ July 9, 2015, FBIMB005914-918 at '915.  *See also* Facebook Document,

21  ████████████████████████ February 2, 2016, FBIMB010244-259 at '244.

22  [17] Facebook Document, ████████████████████████████ April 8, 2016, Richie Morrisroe,

23  FBIMB010023, p. 2.  *See also* Facebook Document, ██████████████████ May 16, 2019,
    FBIMB012024, p. 3. *See also* Facebook Document, "About the delivery system: Ad auctions," June

24  27, 2018, FBIMB000148, p. 2.  *See also* Facebook Document, ██████████████████████
    FBIMB001165, pp. 1-2.

25  [18] Facebook Document, ███████████████████████████████ November 22, 2017,

26  FBIMB012334, p. 12.  *See also* FBIMB023925-930 at '925 (████████████████████████
    ████████████████████████████).

27

28
─────────────────────────────────────────────



1.  **Interests Targeting Accuracy**

---

[19] Facebook Document, ██████████████████ August 18, 2017, FBIMB025352-375 at '359.  *See also* Facebook Document, ████████████████ November 22, 2017, FBIMB012334, p. 22.  *See also* FBIMB023925-930 at '926 ██████████████████████████████████

(Facebook Document, ████████████████████ November 15, 2017, David Amsallem, FBIMB033852, p. 2.  *See also* Facebook Document, ████████ November 22, 2017, FBIMB012334, p. 12.)

[20] Email from Sean Gahagan to Ming Lee, et al., ████████████ June 18, 2017, FBIMB023943-947 at '946. ████████████████████████

[21] Deposition of Jian Yuan, September 30, 2020 (hereafter, "Yuan Deposition") at 23:24-24:7, 127:13-127:20.

[22] Yuan Deposition at 126:17-21.

[23] Yuan Deposition at 126:21-23, 134:22-24.



24 Yuan Deposition at 128:6-12.

25 Yuan Deposition at 129:17-130:4.

26 Email from Xingyao Ye to Peng Fan, et al., ███████████ July 20, 2015, FBIMB005694-700 at '696.

27 Yuan Deposition at 128:24-129:8.

28 Yuan Deposition at 129:8-19.

29 Yuan Deposition at 139:22-140:25.

30 Yuan Deposition at 142:2-143:2.

31 Email from Xingyao Ye to Peng Fan & Jian Yuan, et al., ███████████ March 16, 2015, FBIMB000990-994 at '990-991.

32 Deposition of Christopher Casorio, September 25, 2020 (hereafter, "Casorio Deposition") at 83:20-84:10.

1 ██████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████

3 ███████████████████████████

4

5

6 ████████████████████████████████████████████████

7

8 ████████████████████████████████████

9 ██ ████████████████████████████████████████████████████

10 ███████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████

12 ██████████████████████████████ █ █████████████████████

13 ██████████████████████████████████████ █ ██████████████

14 █████████████████████████████████████ █ ██████████████

15 ██ ██████████████████████████████████████████████████

16 ██████████████████████████████████████████████████ :

17

18 [33] ███████████████████████████████████████████████████

19

20 (Email from David Amsallem to Jason Liao, et al., ██████████████ December 13, 2016, FBIMB012335-337 at '335.) ████████████████████████

21 ████████████████████████████ (Email from Anup Dhalwani to Jason Liao, et al., ███████████ December 13, 2016, FBIMB012335-337 at '335.)

22 [34] Facebook Document, ████████████████████ February 2016, FBIMB012118, p. 3. (Emphasis added.)

23 [35] Facebook Presentation, ██████████████████ August 1, 2016, FBIMB026338, p. 12.

24 [36] Email from Amy Dunn to Sean Gahagan, ██████████████ October 24, 2016, FBIMB025753; Multiple emails, ███████████████ December 13, 2016, FBIMB012335-337.

26 [37] Email from Jian Yuan to Mary Ku, et al., ████████████████████ February 2, 2018, FBIMB024055-058 at '056.

27

28

**Figure 1:** ████████████████████████████████████

| Date | | Facebook Document |
|---|---|---|
| January 31, 2016 | | FBIMB005598 at '603 |
| February 17, 2016[39] | | FBIMB012118, p. 3 |
| August 1, 2016 | | FBIMB026338, p. 12 |
| September 21, 2016 | | FBIMB033842, p. 1 |
| October 24, 2016 | | FBIMB025753 at '753 |
| December 13, 2016 | | FBIMB012335 at '335 |
| January 2017 | | FBIMB024224, p. 3 |
| February 9, 2017 | | FBIMB005288 at '290 |
| April 12, 2017 | | FBIMB024501 at '502 |
| February 2, 2018 | | FBIMB023951 at '951 |
| June 6, 2018 | | FBIMB024096 at '096 |

35. ████████████████████████████████

████████████████████████████████████████

████████████████

### 2. Behaviors Targeting Accuracy

█████ ████████████████████████████████

████████████████████████████████████████

█████████████████████████

---

[38] ████████████████████████████████████████
████████████████████████████████████ (Email from David
Amsallem to Jason Liao, et al., ████████ December 13, 2016, FBIMB012335-
337 at '335.)

[39] Email from Nipun Mathur to Andrew Bosworth, Rob Goldman, et al., ████████
████████████████ February 17, 2016, FBIMB012117.

[40] Yuan Deposition at 147:8-14.

37. ████████████████████████████████
████████████████████████████████████████
███████████████████████

### 3. Partner Categories Targeting Accuracy

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

---

[41] Email from Jian Yuan to David Amsallem, et al., ████████████████
February 1, 2018, FBIMB024030-034 at '032. *See also* Deposition of David Amsallem, November 12, 2020 (hereafter, "Amsallem Deposition") at 35:22-25.

[42] Facebook Document, ███████████████ June 22-23, 2016, FBIMB009727, pp.1-2.

[43] Yuan Deposition at 293:6-12, 22-25, 296:14-19, & errata.

[44] Email from Chris Casorio to Annie Kim, ████████████████████ August 26, 2015, FBIMB004966-971 at '967. *See also* Casorio Deposition at 13:6-8, 27:3-8.

[45] Email from Sean Gahagan to Ning Li, et al., ███████████████████ June 18, 2017, FBIMB023943-947 at '946.

[46] Defendant Facebook, Inc.'s Supplemental Response to Plaintiff's Sixth Set of Requests for Production (No. 77), at 7 (Dec. 11, 2020).

1
2
3
4   **Figure 2:**                                                        47



5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

---
[47] Facebook Spreadsheet, "FBIMB025595_HIGHLY CONFIDENTIAL_AEO.xlsx." The spreadsheet indicates it was created on March 3, 2015, and last modified on April 2, 2015.

48

49

50

1
2
3
4
5
6
7
8
9


10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

41.

[51] Facebook Spreadsheet, "FBIMB033506_HIGHLY CONFIDENTIAL_AEO.xlsx."  The spreadsheet indicates it was created and last modified on April 21, 2015.  Based on the metadata of the file, the original filename was ████████████████████████████

**Figure 3:** [52]

---

[52] Facebook Spreadsheet, "FBIMB033506_HIGHLY CONFIDENTIAL_AEO.xlsx." The spreadsheet indicates it was created and last modified on April 21, 2015. Based on the metadata of the file, the original filename was ████████████████

[53] Facebook Spreadsheet, "FBIMB025597_HIGHLY CONFIDENTIAL_AEO.xlsx." The spreadsheet indicates it was created and last modified on March 24, 2015.

[54] Facebook Spreadsheet, "FBIMB025598_HIGHLY CONFIDENTIAL_AEO.xlsx," ██ ████████████ The spreadsheet indicates it was created on November 20, 2014, and last modified on October 26, 2017.

[55] Facebook Document, ████████████████████ March 17, 2015 FBIMB000995, p. 8.



45.     In an exchange in March 2018 just before Facebook announced that it was terminating partner categories,[61]

[56] Email from Jian Yuan to Jake McCauley & Natalie Kubitz, ▮▮▮▮▮ December 4, 2015, FBIMB002891-894 at '893.

[57] Email from Chris Casorio to Annie Kim, et al., ▮▮▮▮▮ August 26, 2015, FBIMB004966-971 at '966.

[58] Facebook Presentation, ▮▮▮▮▮ August 2015, FBIMB004972, pp. 13-19.

[59] Email from Julia Metcalfe, ▮▮▮▮▮ July 6, 2017, FBIMB026790-791 at '790.  Oracle acquired Datalogix in December 2014.  See "Oracle Buys Datalogix," December 22, 2014, <https://www.oracle.com/corporate/pressrelease/oracle-buys-datalogix-122214.html>, accessed December 18, 2020.

[60] Email from Julia Metcalfe, ▮▮▮▮▮ July 6, 2017, FBIMB026790-791 at '790.

[61] Facebook Webpage, "Shutting Down Partner Categories," March 28, 2018 <https://about.fb.com/news/h/shutting-down-partner-categories/>, accessed December 16, 2020.

[62] Email from Patricia Sharp to Catherine Oddenino, ▮▮▮▮▮ March 16, 2017, FBIMB026632-643 at '636.

[63] Facebook Document, ▮▮▮▮▮ June 18, 2019, FBIMB034063.

[64] Email from Clare Brown to Kristy Cook, et al., "Message Summary," March 22, 2018, FBIMB021513-518.



[redacted]

## V. Bases for Opinions

46. In this section, I discuss my opinions and the bases for them. The first section evaluates certain evidence demonstrating, in my opinion, the fact of damages: that advertisers value accurate targeting and receive less value from their ads when those ads are displayed to users outside advertisers' targeted audience due to inaccurate data. The second section discusses damages methodologies that can be used to estimate the diminution in value to advertisers.

### A. Fact of Damages: Advertisers Received Less Value from Their Ads When Those Ads Were Displayed to Users Outside Their Targeted Audience

47. In this section, I discuss evidence supporting the conclusion that ads being displayed to Facebook users who did not match the specified targeting criteria diminished the value of those ads to advertisers, including [redacted]

48. Based on my review and analysis of this evidence and my education, training, and experience, I conclude that advertisers were damaged when Facebook displayed ads to users outside the audiences defined by advertisers in Facebook's self-serve targeting interface.

#### 1. Detailed Targeting Is Valuable to Advertisers

[redacted]

[65] Email from Clare Brown to Kristy Cook, et al., "Message Summary," March 22, 2018, FBIMB021513-518 at '514-515.

66 Facebook Document, ███████████████████████ June 13, 2018, Shanshan Ma, FBIMB033849.

67 Facebook Document, ███████████████████████ June 13, 2018, Shanshan Ma, FBIMB033849, p. 2.

68 Facebook Document, ███████████████████████ June 13, 2018, Shanshan Ma, FBIMB033849, pp. 2-3.

69 Facebook Document, ███████████████████████ June 13, 2018, Shanshan Ma, FBIMB033849, p. 3.

70 Facebook Document, ███████████████████████ June 13, 2018, Shanshan Ma, FBIMB033849, p. 3.

71 Facebook Document, ███████████████████████ June 13, 2018, Shanshan Ma, FBIMB033849, p. 5.

72 Facebook Document, ███████████████████████ June 13, 2018, Shanshan Ma, FBIMB033849, p. 5.

**Figure 4:** ████████████████████ [74]



---

[73] Facebook Document, ████████████████████ June 13, 2018, Shanshan Ma, FBIMB033849, p. 6.

[74] Facebook Document, ████████████████████ June 13, 2018, Shanshan Ma, FBIMB033849, p. 6.

[75] Facebook Document, ████████████████████ August 28, 2018, FBIMB019272-322 at '281.





2.  **Accurate Targeting Is Valuable to Advertisers**

---

[81] Facebook Document, ████████████████████ Summer 2015, FBIMB006787, p. 5. *See also* Email from Amy Dunn to Amy Dunn & Fred White, "Message summary," April 19, 2016, FBIMB006782-786 at '782.

[82] Facebook Document, ████████████████████ Summer 2015, FBIMB006787, p. 5.

[83] Facebook Document, ████████████████████ Summer 2015, FBIMB006787, p. 5.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16  [84] ████████████████████████████ (Facebook Document,

17  ████ August 18, 2017, FBIMB025352-375 at '359.), ████████████

18  ████████████████████████████ (Facebook Document,
    ████ November 15, 2017, David Amsallem, FBIMB033852, p. 2.

19  *See also* Facebook Document, ████████████████████ November 22,
    2017, FBIMB012334, p. 12.)

20

21  [85] Facebook Document, ████████████████████ March 17, 2015,
    FBIMB000995, p. 4.

22  [86] Facebook Document, ████████████████████████ FBIMB012118, p. 3.  *See also* Email
    from Nipun Mathur to Andrew Bosworth, Rob Goldman, et al., ████████████████

23  ████████ February 17, 2016, FBIMB012117.

24  [87] Facebook Document, ████████████████████ g," March 12, 2018,
    FBIMB014028, p. 9.

25  [88] Yuan Deposition at 242:15-16.

26  [89] Email from Jian Yuan to Mark Rabkin, ████████████████ June 24, 2016,
    FBIMB025391-398 at '395.

27

28



[90] Email from Jian Yuan to Mark Rabkin, ████████████████ June 21, 2016, FBIMB025391-398 at '396.

[91] Facebook Document, ████████ January 20, 2017, FBIMB026385. *See also* Email from Jennifer Kattula to Daniel Arantes, et al., ████████ ████████ January 23, 2017, FBIMB026384.

[92] Facebook Document, ████████ January 20, 2017, FBIMB026385, p. 27.

[93] Casorio Deposition at 186:14-15. *See also* Deposition of Sean Gahagan, September 18, 2020, at 17:11-12.

[94] Email from Jackie Pimentel to Ning Li, et al., ████████ ████ June 19, 2017, FBIMB023925 at '925.

[95] Facebook Document, ████████ November 22, 2017, FBIMB012334, p. 12. ████████████████████████████████ ████████████████████████ (Facebook Document, ████████ August 18, 2017, FBIMB025352-375 at '356.)

[96] Facebook Document, ████████ FBIMB005954, p. 16.



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21  [97] Facebook Document, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ August 18, 2017, FBIMB025352-

22  375 at '355.

    [98] Facebook Document, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ August 18, 2017, FBIMB025352-

23  375 at '356.

    [99] Facebook Document, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ November 22, 2017,

24  FBIMB012334, p. 9.

25  [100] Yuan Deposition at 40:24-41:2.

    [101] Email thread between Jian Juan and Ning Li, ▓▓▓▓▓▓▓▓▓ January 29 -

26  February 2, 2016, FBIMB005598-605 at '600.

27

28



[102] Email thread between Jian Juan and Ning Li, ██████████████████ January 29 - February 2, 2016, FBIMB005598-605 at '598.

[103] Facebook Document, ██████████████ FBIMB012118, p. 3. *See also* Email from Nipun Mathur to Andrew Bosworth, Rob Goldman, et al., ████████████████ February 17, 2016, FBIMB012117.

[104] Facebook Document, ████████████ June 22-23, 2016, FBIMB009727, pp. 1-2.

[105] Email from Chris Casorio to Brad Smallwood, et al., ████████████████ September 7, 2017, FBIMB017855 at '855.

[106] Email from Chris Casorio to Brad Smallwood, et al., ████████████████ September 7, 2017, FBIMB017855 at '856.

[107] Facebook Document, ████████████████████ October 19, 2017, FBIMB017006-047 at '028.

65.     This evidence supports my conclusion that advertisers valued targeting accuracy.

66.

when advertisers experienced material targeting *inaccuracy*, that inaccuracy represented a loss in value that caused them actual damage.  Indeed, if targeting inaccuracy did not damage advertisers,



[108] Facebook Document, ███████████████████ FBIMB012118, pp. 3-4.  *See also* Email from Nipun Mathur to Andrew Bosworth, Rob Goldman, et al., █████████ February 17, 2016, FBIMB012117.



109 Facebook Document, ▮▮▮▮▮▮ August 23, 2016, FBIMB024330, p. 11.
*See also* Email from Anup Dhalwani to Mahesh Srinivasan, Jian Yuan, et al., ▮▮▮▮ August 22, 2016, FBIMB024326.

110 Facebook Document, ▮▮▮▮▮ March 8, 2017, David Amsallem, FBIMB033841, pp. 2-3.  I note that ▮▮▮▮▮ (Facebook Document, ▮▮▮▮▮ September 21, 2016, David Amsallem, FBIMB033842, p. 2.  Facebook Document, ▮▮▮▮ February 1, 2017, David Amsallem, FBIMB033843, p. 1)

111 Facebook Document, ▮▮▮▮ December 8, 2017, Sachin Kadloor with David Amsallem, FBIMB033834, p. 1.

112 Deposition of Sean Gahagan, September 18, 2020, pp. 154-155. ▮▮▮▮▮ *See also* Facebook Document, ▮▮▮▮▮ FBIMB012186.

113 ▮▮▮▮▮ (Amsallem Deposition at 145, 149.)  ▮▮▮▮▮ (Facebook Document, email chain titled ▮▮▮▮ FBIMB025391-398 at '396-397.

1

2

3

4

5

6

7

8

9

10

11

12

13  *See also* Facebook Document, email chain titled ███████████████ FBIMB024372-
14  374 at '373-374.  *See also* Email from Fred Leach to Kristy Cook, Kristin Marschhauser, et al.,
    "Message summary," January 24, 2018, FBIMB026341-342 at '342.)
15  ████████████████████████████████████████████████████████████
16  ████████████████████████████ (Facebook Document,
    ████████ September 21, 2016, David Amsallem, FBIMB033842, p. 3.)
17  ██████████████████████████████████████████████████
18  ████████████████████████████ (Email from Jian Yuan to Xingyao Ye,
    ████████ March 17, 2015, FBIMB000948-953 at '948.)
19  ████████████████████████████████████████████████████ (Facebook
20  Document, email chain titled ████████████ FBIMB024372-374 at '374.)
    ████████████████████████████████████████████████
21  ████████████████████████████████ (Email from Mahesh Srinivasan to
22  Xingyao Ye, ████████████ March 12, 2015, FBIMB000948-953 at
    '951.)
23  [114] Facebook Document, ████████████████████████████
24  ████████ December 8, 2017, Sachin Kadloor with David Amsallem, FBIMB033834, p. 1.
25  [115] Facebook Document, ████████████████████████████
    ████████ December 8, 2017, Sachin Kadloor with David Amsallem, FBIMB033834, p. 2.
26  [116] Facebook Document, ████████████████████████████
    ████████ December 8, 2017, Sachin Kadloor with David Amsallem, FBIMB033834, p. 5.

27

28



117 Facebook Document, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ December 8, 2017, Sachin Kadloor with David Amsallem, FBIMB033834, pp. 1, 5.

118 Facebook Document, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ October 19, 2017, FBIMB017006-047 at '028.

119 Facebook Document, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ May 7, 2018, FBIMB033840, p. 1.

120 Facebook Document, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ October 19, 2017, FBIMB017006-047 at '028.

121 Facebook Document, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ May 7, 2018, FBIMB033840, p. 3.

122 Facebook Document, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ FBIMB012118, pp. 3-4. *See also* Email from Nipun Mathur to Andrew Bosworth, Rob Goldman, et al., ▮▮▮▮▮▮▮▮▮▮ February 17, 2016, FBIMB012117.

123 Facebook Document, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ March 8, 2017, David Amsallem, FBIMB033841, pp. 2-3.

PINSONNEAULT DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION TO CERTIFY CLASS
CASE NO. 4:18-cv-05286 PJH-JCS

**3.** ████████████████████████████ **Support That Inaccurate Targeting Decreases Value for Advertisers**

73.   ████████████████ also supports my conclusion that a decrease in targeting accuracy decreases advertiser value: ████████████████████████████

████████████████████████████ As discussed in this section, ████████████████████████████

████████████████████████████ that advertisers value accurate targeting and were damaged when their ads were served to users who did not meet their targeting specifications.



---

[124] Facebook Document, ████████████████ FBIMB012188. *See also* Facebook Document, ████████████████ FBIMB012189. *See also* Facebook Document, ████████████████ FBIMB012190. *See also* Facebook Document, ████████ FBIMB012191. *See also* Facebook Document, ████████ FBIMB012192.

[125] Facebook Document, ████████████████ FBIMB012190, p. 1.

[126] Facebook Document, ████████████████ FBIMB012190, p. 1.

[127] Facebook Document, ████████████████ FBIMB012190, pp. 2-3.



20 | [128] Facebook Document, ███████████████████ FBIMB032749, p. 2.

21 | [129] Email from Kurt Runke to Internal Use, ███████████ June 17, 2015, FBIMB008837-838 at '837.

22 | [130] Email from Katlyn Calia to Kurt Runke, ████████████ June 17, 2015, FBIMB008837-838.

23 | [131] Email from Katlyn Calia to Kurt Runke, ████████████ June 17, 2015, FBIMB008837-838.

24 | [132] Email from Don van der Drift to David Martin, et al., ██████████ October 17, 2016, FBIMB024298-300 at '300.

25 | [133] Email from Don van der Drift to David Martin, et al., ██████████ October 17, 2016, FBIMB024298-300 at '300.



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

[134] Email from Sebastian Dettweiler to Kurt Runke, ████████████████████████████████ May 22, 2017, FBIMB032561-563.

[135] Email from Sebastian Dettweiler to Kurt Runke, ████████████████████████████████ May 22, 2017, FBIMB032561-563.

[136] Email from Sebastian Dettweiler to Kurt Runke, ████████████████████████████████ May 22, 2017, FBIMB032561-563.

[137] Email from Sebastian Dettweiler to Kurt Runke, ████████████████████████████████ May 22, 2017, FBIMB032561-563.

[138] Email from Katlyn Calia to Amy Lee, █████████████████████████████████████████ February 11, 2016, FBIMB003391-397 at '391, '396-397.

[139] Email from Laine Kavanaugh to Alexandra Moore, et al., ████████████ July 12, 2017, FBIMB012504-514 at '510.

[140] Email from Erik T. Bahr to Alexandra Moore, et al., ████████████████ July 10, 2017, FBIMB012504-514 at '512.



**4.   Advertisers Were Damaged**

82.  [redacted] lead me to conclude that advertisers received less value from their ads when those ads were displayed to users outside their targeted audience because of inaccurate targeting. [redacted]

---

[141] Email from Julia Metcalfe to Fred Leach, [redacted] July 6, 2017, FBIMB026790-791 at '790.

[142] Email from Julia Metcalfe to Fred Leach, [redacted] July 6, 2017, FBIMB026790-791 at '790.

[143] Email from Roya Sadeghi to Xingyao Ye, [redacted] FBIMB033065-076 at '066, '068.

83.     Therefore, I conclude that when advertisers' ads were displayed to users outside of the advertisers' targeting criteria, those advertisers received less value.  In other words, this evidence establishes that advertisers are damaged when their ads are delivered to users who fail to meet advertisers' targeting criteria.

**B. Damages Can Be Calculated on a Classwide Basis**

84.     In this section, I discuss methodologies for calculating the diminution in value based on the fact of damages using apportionment principles, which can be applied on a classwide basis. For the purpose of determining out-of-pocket damages, I apply the instruction on damages that I describe above; specifically, I calculate the difference in actual value between what the Class Plaintiffs gave and what they received.

85.     Price is the typical measure for the value a purchaser gave in a transaction.  Indeed, unless there are non-monetary considerations as part of the transaction, the price paid is the natural proxy for the value given by a purchaser.  Given that amounts paid by advertisers are revenue to Facebook, the price paid by the advertiser for a particular advertisement is equal to the revenue to Facebook for the advertisement.  Therefore, I use Facebook's revenue from a particular advertisement as the measure of the value given by the Class Plaintiffs.

86.     With respect to the value received by Class Plaintiffs, as discussed above, the allegations in this case are that Facebook knew, but fraudulently concealed from advertisers, that certain of its targeting categories – interest, behavior, and partner categories – were often highly

1  inaccurate, and therefore, that ███████████ were being displayed to users who did not

2  match the targeting criteria that advertisers had selected.  Therefore, for ███████████

3  displayed to users did not match the targeting criteria, advertisers were not receiving the full value

4  given to Facebook.

5         87.  I can estimate the difference in actual value between what an advertiser gave (the

6  amount paid to Facebook in connection with the display of an ad) and what value the advertiser

7  received by using apportionment principles to estimate what portion of the value given by Class

8  Plaintiffs is related to the inaccurate targeting criteria.  Apportionment principles are used to

9  allocate value across various components of a product, with the goal of isolating the value

10  attributable to a particular component or functionality.  Apportionment principles are applied in a

11  wide range of legal damages analyses.  They are applied in nearly every patent case, as well as in

12  cases involving other forms of intellectual property, where calculating damages often requires

13  identifying how infringement of a patent on one feature of a product affects the value of the entirety

14  of the product encompassing many non-infringing features.  A 2014 Federal Circuit decision

15  describes apportionment in the patent context as follows:[144]

16         When the accused infringing products have both patented and unpatented
17  features, measuring this value requires a determination of the value added by
   such features.  Indeed, apportionment is required even for non-royalty forms of
   damages: a jury must ultimately "apportion the defendant's profits and the
18  patentee's damages between the patented feature and the unpatented features"
19  using "reliable and tangible" evidence.

20         88.  I have addressed apportionment in the majority of the more than 140 intellectual

21  property cases in which I have consulted.  A wide range of economic and financial tools can be

22  employed to assist in an apportionment exercise; ultimately, the facts of the case and the data

23  available in a case guide what analysis can reasonably be executed in an apportionment exercise.

24         89.  The application of apportionment in the context of this case involves apportioning

25  (or allocating) the value paid to Facebook between the inaccurate targeting criteria at issue and

26  ──────────────
[144] *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).

1   other elements of value to advertisers that are not at issue. ███████████████

2   ████████████████████████████████████████████. I find that at least two

3   of the methods ████████████████████ can be used to estimate the diminution in value

4   on a classwide basis: (i) the proportional or "R/N" methodology ██████████████

5   ███████████████████ and (ii) the "revenue share" methodology ███████████

6   ████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████

8   ████████

9       90.    In the sections below, I discuss these methodologies, ████████████ and

10  how they can be applied to calculate damages on a classwide basis.

11      **1.   Diminution in Value Can Be Calculated** ████████████████████

12      91.    In this section, I first describe █████████████████████ and then

13  describe how this methodology can be applied to calculate the diminution in value caused by

14  Facebook's inaccurate data.

15          **(a) The R/N Methodology Is a Reasonable Way To Apportion Advertiser Value Among Targeting Criteria**





1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23   [145] Amsallem Deposition at 97:20-98:19.

24   [146] Amsallem Deposition at 98:7-19.

     [147] Amsallem Deposition at 100:23-101:5.

25   [148] Amsallem Deposition at 69-72.

26   [149] Facebook Presentation, ▮▮▮▮▮▮▮▮▮▮ February 2016, David Amsallem,
     FBIMB012120-143 at '142.

27

28

**Figure 5:**



---

[150] Facebook Presentation, ▮▮▮▮▮▮▮▮▮▮ February 2016, David Amsallem, FBIMB012120-143 at '142.

[151] Facebook Presentation, ▮▮▮▮▮▮▮▮▮▮ February 2016, David Amsallem, FBIMB012120-143 at '124.

[152] Facebook Presentation, ▮▮▮▮▮▮▮▮▮▮ February 2016, David Amsallem, FBIMB012120-143 at '121, 125-127, 133-135, 138-139, 141.

[153] Facebook Post, ▮▮▮▮▮▮▮▮▮▮▮▮▮ David Amsallem, February 1, 2016, FBIMB012144.



<sup>154</sup>

(Email from Mahesh
Srinivasan to Cheryl Dartt, et al.,
March 3, 2016, FBIMB005349-353 at '351.)

('351.)

(Facebook Document,
David Amsallem, FBIMB033838, p. 1.)

<sup>155</sup> Facebook Presentation,                          July 22, 2016,
FBIMB024132, p. 10.

<sup>156</sup> Facebook document,                          September 21, 2016, David
Amsallem, FBIMB033838, p. 1. *See also* Email from Don van der Drift to Mahesh Srinivasan, et
al.,                          September 30, 2016, FBIMB024097-100 at '098.

<sup>157</sup> Facebook Presentation,                          July 22, 2016,
FBIMB024132, p. 2.

<sup>158</sup> Facebook Presentation,                          July 22, 2016,
FBIMB024132, p. 2.

<sup>159</sup> Facebook Document,                          September 21, 2016, David
Amsallem, FBIMB033838. *See also* Email from Don van der Drift to Mahesh Srinivasan, et al.,
                         September 30, 2016, FBIMB024097-100 at '098. *See also* Email from
David Amsallem to Jian Yuan,                          February 8,
2018, FBIMB025541-543.

102. In my experience, the proportional method can be used even where a purchaser does not have the opportunity to select each of his or her desired features in a particular product.  Here, where advertisers selected the targeting criteria they wished to include, it is reasonable to apply a proportional apportionment methodology such as the R/N methodology.  The advertiser affirmatively selects each targeting criterion to be included by Facebook, and thus necessarily attributes some value to it.

(Email from David Amsallem to Jian Yuan, February 8, 2018, FBIMB025541-543 at ʼ542.)

[160] Amsallem Deposition at 88:1-89:8.



104. ████████████████████████████

████████████████████████████████████████ For purposes

of an apportionment of value for this case, I have included all the different targeting options that an

advertiser selects (including location, age, gender, language, custom / lookalike audiences, and

connections), ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████ apportioning an equal

amount of revenue to each targeting criterion actively used for a particular ad.

[161] Amsallem Deposition at 89:22-90:10.

[162] Amsallem Deposition at 87:5-87:12, 90:20-92:16.

[163] Facebook Document, ████████████████████████ June 13, 2018, Shanshan
Ma, FBIMB033849, pp. 1-2, 6.



108.

[164] Facebook, Inc. Form 10-K for the fiscal year ended December 31, 2016, pp. 5-6, 9, 39.  *See also* Facebook, Inc. Form 10-K for the fiscal year ended December 31, 2015, pp. 5-6, 9, 40.  *See also* Facebook, Inc. Form 10-K for the fiscal year ended December 31, 2017, pp. 5-6, 9, 41.  *See also* Facebook, Inc. Form 10-K for the fiscal year ended December 31, 2018, pp. 5-6, 9, 42.  *See also* Facebook, Inc. Form 10-K for the fiscal year ended December 31, 2019, pp. 7-8, 11-12, 54.

[165] Facebook Document, ███████████████████████, July 1, 2016, FBIMB001491, pp. 4-5.

[166] Facebook Document, ███████████████████████, July 1, 2016, FBIMB001491, pp. 4-5, 9. ████ (Facebook Document, ███████████████, July 1, 2016, FBIMB001491, p. 9.)

[167] Facebook Document, ███████████████████████, July 1, 2016, FBIMB001491, pp. 4-5, 9.



I have therefore incorporated this 10% reduction into my analysis to account for any non-targeting sources of value.

109.

[168] Facebook Document, ████████████████, July 1, 2016, FBIMB001491, p. 9.



111.    I therefore conclude that a reasonable approach to apportion value among the different targeting criteria selected by advertisers is to first deduct 10% of the revenue generated from the ad to account for non-targeting contributions to value, and then to apportion the remaining value equally among the targeting criteria the advertiser selected.

### (b) The R/N Methodology Is a Reasonable Way to Calculate the Diminution in Value for Particular Targeting Criteria

112.    I can calculate the diminution in value based on the R/N methodology in two steps: first, as described in the previous section, I allocate revenue among *all* of the targeting criteria used for a particular ad, and then I calculate the diminution in value for *those targeting criteria* that are inaccurate.

---

[170] Email from Brendan McNutt to Xingyao Ye, ███████████████████
███████████ November 9, 2017, FBIMB033477-482 at '481.
[171] Email from Brendan McNutt to Xingyao Ye, ███████████████████
███████████ November 9, 2017, FBIMB033477-482 at '481.
[172] Email from Brendan McNutt to Xingyao Ye, ███████████████████
███████████ November 9, 2017, FBIMB033477-482 at '481.
[173] Email from Brendan McNutt to Xingyao Ye, ███████████████████
███████████ November 9, 2017, FBIMB033477-482 at '481.



114.    I can apply the R/N methodology to allocate the value of the targeting criteria an advertiser selected.  For example, for IMB's "InvestorVillage – Page Likes" campaign,

---

[174] Facebook Document, ▮▮▮▮▮▮▮▮▮▮ FBIMB034055.  *See also* Facebook Document, "Guide to targeting types," FBIMB034056.  *See also* Facebook Document, ▮▮▮▮▮▮ ▮▮▮ FBIMB034057.  *See also* Facebook Document, ▮▮▮▮▮▮▮▮▮▮ FBIMB034058. *See also* Facebook Document, ▮▮▮▮▮▮▮▮▮ FBIMB034059.  *See also* Facebook Document, ▮▮▮▮▮▮▮▮▮▮ FBIMB034060.

[175] Facebook Spreadsheet, "FBIMB000346-HIGHLY CONFIDENTIAL.xlsx." *See also* Facebook's Response to Plaintiff's Interrogatory No. 16 & Ex. J, ▮▮▮▮▮▮▮▮▮

[176] Facebook Spreadsheet, "FBIMB001003_HIGHLY CONFIDENTIAL_AEO.xlsx."

[177] Facebook Spreadsheet, "FBIMB001003_HIGHLY CONFIDENTIAL_AEO.xlsx." *See also* Facebook Document, ▮▮▮▮▮▮▮▮▮ FBIMB034057.  *See also*

[178] (Facebook Document, █████████ FBIMB034056, pp. 5-6.)

█████████ (Facebook Document, █████████ June 13, 2018, Shanshan Ma, FBIMB033849, pp. 2-3.).  Therefore, I do not include Placements as a targeting type to which value will be attributed.

[179] (Facebook Document, █████████ FBIMB034056, p. 5.)

[180] (Facebook Document, █████████ FBIMB034055-060.)

115.    I note that certain targeting types include multiple values.  For example, the age range of "45 – 65+" corresponds to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and the income range of "$250,000 and above" corresponds ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮[181]  For the purposes of the apportionment analysis, I treat each targeting criterion as one regardless of the number of levels and values included.

116.    For example, if I apply the R/N methodology to the "InvestorVillage – Page Likes" campaign, there are eight relevant targeting criteria: location; geo-location; age; one advanced demographic ▮▮▮▮▮▮▮▮▮▮▮▮ (education level); one interest (investment); two advanced demographics ▮▮▮▮▮▮▮▮▮▮ (income and homeownership); and one connection (exclude people who like Investor Village).  After applying the 10% reduction to account for Facebook's other contributions, I attribute to each targeting criterion one-eighth of the revenue from the ads run with this specification.  In other words, the value attributed to a particular targeting criterion is one-eighth of the price paid by the advertiser (after the 10% reduction).

117.    As explained in the previous section, the value of each targeting criterion is estimated as follows:

Value of Each Targeting Criterion =

90% * [Amount Spent on Campaign] ÷ [Number of Targeting Criteria]

118.    With respect to the "InvestorVillage – Page Likes" campaign, ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[182]  Therefore, the value to the advertiser for each of the eight targeting criteria is calculated as follows:

---

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[181] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[182] Facebook Spreadsheet, "FBIMB000346-HIGHLY CONFIDENTIAL.xlsx." ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮    *See also* First Amended Complaint, p. 16.  *See also* Facebook's Response to Plaintiff's Interrogatory No. 16 & Ex. J, ▮▮▮▮▮▮▮▮▮▮▮

Value of Each Targeting Criterion = 90% * ███████ ÷ 8 = ███████

119.    After the value of each targeting criterion is estimated, the next step in applying the R/N methodology is to calculate the diminution in value caused by targeting inaccuracy.  Returning to the instruction on damages that I describe above, the diminution in value is the difference in actual value between what the Class Plaintiffs gave and what they received.  As explained above, I can apply the R/N methodology to estimate the value for each of the targeting criteria selected by Class Plaintiffs.  In each instance where an ad is delivered to a user who does not satisfy a particular targeting criterion, the advertiser does not receive the value for that particular targeting criterion. Therefore, the diminution in value is the estimated value of each targeting criterion that was not satisfied.  As an example, if the targeting specification says that the ads should be displayed to users who have a household income of $250,000 and above, and all other targeting criteria were satisfied, but the ad was displayed to a user whose household income is $100,000, then the advertiser did not receive the value of that targeting criterion, and the diminution in value would be the value of the household income targeting criterion for that ad.

120.    ███████████████████████████████████████████ ████████████████████████ I can calculate the expected diminution in value based on ████████████ ████████ the probability that a given targeting criterion is accurate.  For example, if a particular targeting criterion is accurate 20% of the time, then 80% of the time it is inaccurate.  In that case, the expected diminution in value would be 80% of the total value of that targeting criterion.  The diminution in value for each targeting criterion that is determined to be inaccurate can be calculated in a straight-forward manner as follows:

Diminution in Value =
(100% - [Probability Targeting Criteria is Accurate]) * [Value of Targeting Criteria]

121.    Returning to the example for the "InvestorVillage – Page Likes" campaign, as calculated above, each of the eight targeting criteria has a value of ████████ to the advertiser. Assuming Plaintiff's allegations are correct and, for the purposes of this exemplar calculation, that

the investment interest was ████ accurate in 2015,[183] and that the homeownership partner category was ████ accurate in 2015,[184] then the diminution in value for those two targeting criteria could be calculated as follows:

| Investment Interest | (100% - ████ ) * ████ | = | ████ |
|---|---|---|---|
| Homeownership PC | (100% - ████ ) * ████ | = | ████ |

### (c) The R/N Methodology Can Be Reasonably Applied Based on the Circumstances of the Case

122.   In the sub-sections below, I address specific issues that arise in the application of the R/N methodology, including how it can apply despite the limited information Facebook has provided, how it applies to multi-level targeting criteria, and how it can be adjusted, if necessary, to account for proof regarding advertisers' expected level of accuracy.

(1) ████████████████ relating to the probability targeting criteria are accurate

123.   One component of the diminution in value calculation is the probability that targeting criteria are accurate. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

██ ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[183] As discussed below, ████████████████████████████████████████ s a reasonable estimate based on the earliest accuracy rate that I have identified ████████████████ (Section V.B.1(c)(1).)

[184] Facebook Spreadsheet, "FBIMB025595_HIGHLY CONFIDENTIAL_AEO.xlsx." The spreadsheet indicates it was created on March 3, 2015, and last modified on April 2, 2015.



[185] 

[186] 

[187] Email thread between Jian Juan and Ning Li, ████████████ January 29 - February 2, 2016, FBIMB005598-605 at '603.

[188] Email from Yicheng Wang to Oscar Fernandez Barracel, et al., "Message summary," June 6, 2018, FBIMB024096.



128.

---

[189] Email from Jian Yuan to David Amsallem, et al., ▮▮▮▮▮▮▮▮▮
February 1, 2018, FBIMB024030-034 at '032.  *See also* Amsallem Deposition at 35:22-25.

[190] Facebook Document, ▮▮▮▮▮▮▮ June 22-23, 2016, FBIMB009727, pp.1-2.

[191] Yuan Deposition at 293:6-12, 22-25, 296:14-19, 298:23-24, & errata.  *See also* Email from Jian Yuan to David Amsallem, et al., ▮▮▮▮▮▮▮▮▮ February 1, 2018, FBIMB024030-034 at '032.  *See also* Amsallem Deposition at 35:22-25.

[192] Facebook Document, ▮▮▮▮▮▮▮▮▮▮ FBIMB024224, p. 4.

[193] Email from Chris Casorio to Mahesh Srinivasan, et al., ▮▮▮▮▮▮▮
September 21, 2016, FBIMB022066 at '067.

> (2) Targeting criteria that include multiple levels

129.    Many of the targeting criteria are binary, e.g., for interests, Facebook's system indicates that a user either has the interest or does not have the interest. However, other targeting criteria include multiple levels (or multiple values) and the user would be classified in only one level, e.g., household income.

130.    The accuracy data that I have reviewed for these criteria with multiple levels report on the accuracy of a specific level. If an advertiser selects one value within one of these targeting criteria (for example, household income of $250,000-$350,000), then the accuracy data for that level can be directly applied. However, when an advertiser selects multiple levels for such targeting criteria (for example, household income of $250,000-$350,000 or $350,000-$500,000), then I adjust the probability of accuracy to account for the probability that any of the selected levels are satisfied (in the example, the probability that either of the two levels is satisfied). For example, I understand that IMB selected ranges for household income that included the $250,000-$350,000, $350,000-$500,000, and $500,000+ levels. If the partner category data indicates a user has income in the range of $250,000-$350,000, even when this data is inaccurate, it is still possible that the household income is in the other two levels selected, so the targeting criterion for household income may still be satisfied even when the data about a particular level is inaccurate.

131.    Several adjustments can be made for these multi-level targeting criteria, depending on the data available. If no data is available about the distribution of users across levels, then an assumption that each level has equal membership can be made to adjust the accuracy. For example, if a targeting criterion has 5 levels, it could be assumed that each level includes 20% of the users. If an advertiser targets users who are in either the 4th or 5th level, and those levels have accuracy rates of 30% for the 4th level and 40% for the 5th level, then the probability that either level is satisfied and the overall accuracy rate accounting for that probability can be calculated as follows:

For those users identified as 4th level: The accuracy for the 4th level is 30%.  For the 70% of the time the data is inaccurate, given each of the four remaining levels has equal membership, there is a 1 in 4 (25%) probability that the user is in the other level selected by the advertiser.  Therefore, the probability of accuracy is calculated as 30% + 70% * 25% = 47.5%.

For those users identified as 5th level: The accuracy for the 5th level is 40%.  For the 60% of the time the data is inaccurate, given each of the four remaining levels has equal membership, there is a 1 in 4 (25%) probability that the user is in the other level selected by the advertiser.  Therefore, the probability of accuracy is calculated as 40% + 60% * 25% = 55%.

Overall, given the assumption of equal membership, there is a 50% chance that the user to which an ad would be displayed is in the 4th or 5th level.  Therefore, the overall accuracy for this targeting criteria of either the 4th or 5th level would be calcualted as 50% * 47.5% + 50% * 55% = 51.25%.

132.    When data is available about the distribution of users across levels, that data can be used in the calculation.  Continuing the example used above, if the distribution of users across the levels are the rate in the table below, then the calculation that the multiple levels are satisfied would be adjusted as follows:

| Level 1 | 25% |
|---------|-----|
| Level 2 | 15% |
| Level 3 | 20% |
| Level 4 | 15% |
| Level 5 | 25% |

For those users identified as 4th level: The accuracy for the 4th level is 30%.  For the 70% of the time the data is inaccurate, the probability that the user is in the 5th level would be calculated as 25% (the probabilty of level 5) divided by 85% (the remaining cumulative probability given the user is not in the 4th level), or 29.4%.  Therefore, the probability of accuracy is calculated as:

30% + (70% * 29.4%) = 50.58%.

For those users identified as 5th level: The accuracy for the 5th level is 40%.  For the 60% of the time the data is inaccurate, the probability that the user is in the 4th level would be calculated as 15% (the probabilty of level 4) divided by 75% (the remaining cumulative probability given the user is not in the 5th level), or 20%.  Therefore, the probability of accuracy is calculated as:

40% + (60% * 20%) = 52.0%.

Overall, given the advertiser selected the 4th level (15% of users) and the 5th level (25% of users), there is a 15% ÷ 40% = 37.5% chance that the user to which an

ad would be displayed is in the 4th level and a $25\% \div 40\% = 62.5\%$ chance that the user to whom an ad would be displayed is in the 5th level. Therefore, the overall accuracy for this targeting criteria of either the 4th or 5th level would be calculated as:

$$(37.5\% * 50.58\%) + (62.5\% * 52.0\%) = 51.47\%.$$

133.    Applying this approach to the "InvestorVillage – Page Likes" campaign, as noted above, I understand IMB used ████████████████████ and selected the levels $250,000-$350,000; $350,000-$500,000; and $500,000+. ███████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████ [195]

134.    To estimate the distribution across income levels, I can use data on the number of households in different household income bands (with a top band of $250,000+) that is estimated annually by the United States Census Bureau.[196] As relevant to IMB's campaign, the United States Census Bureau's estimate for 2015 is that 3.3% of households have a household income of $250,000 and over.[197] For purposes of this illustration, I assume that the 3.3% is split into 1.5% for

---

[194] Facebook Spreadsheet, "FBIMB025595_HIGHLY CONFIDENTIAL_AEO.xlsx." The spreadsheet indicates it was created on March 3, 2015, and last modified on April 2, 2015.

[195] ████████████████████████████████████████

████████████████████████ (Facebook Spreadsheet, "FBIMB025595_HIGHLY CONFIDENTIAL_AEO.xlsx.") ██████████████

████████ (Email from Chris Casorio to Mahesh Srinivasan, et al., ████ September 21, 2016, FBIMB022066 at '067.)

[196] U.S. Census Bureau Webpage, "HINC-06. Income Distribution to $250,000 or More for Households," accessed at <https://www.census.gov/data/tables/time-series/demo/income-poverty/cps-hinc/hinc-06.2019.html> on December 19, 2020.

[197] The U.S. Census estimates 4,184 households with income of $250,000 and a total number of households of 125,819; 4,184 / 125,819 = or 3.3%. (U.S. Census Bureau Webpage, "HINC-06. Income Distribution to $250,000 or More for Households," accessed at <https://www.census.gov/data/tables/time-series/demo/income-poverty/cps-hinc/hinc-06.2015.html> on December 19, 2020.)

the $250,000-$350,000 level, 1.0% for the $350,000-$500,000 level, and the remaining 0.8% for the $500,000+ level.[198]

135.    Applying these accuracy rates and distributions for Acxiom's three income levels results in a probability of accuracy for IMB's "InvestorVillage – Page Likes" campaign that selected all three income levels as follows:

| Probability of Accuracy | | | |
|---|---|---|---|
| $250,000-$350,000 | ■ + [ ■ * (1.8% ÷ 98.5%)] | = | |
| $350,000-$500,000 | ■ + [ ■ * (2.3% ÷ 99.0%)] | = | |
| $500,000+ | ■ + [ ■ * (2.5% ÷ 99.2%)] | = | |
| Overall | [(1.5% ÷ 3.3%) * ■ )] + [(1.0% ÷ 3.3%) * ■ ] + [(0.8% ÷ 3.3%) * ■ ] | = | |

136.    Therefore, the final damages calculation for the "InvestorVillage – Page Likes" campaign using the R/N methodology is:

| Investment Interest | (100% - ■ ) * ■ | = | |
|---|---|---|---|
| Homeownership PC | (100% - ■ ) * ■ | = | |
| Income PC | (100% - ■ ) * ■ | = | |
| Total Diminution in Value | | = | |

[198] The Unites States Census Bureau makes available the underlying survey dataset used for its estimates of household income distribution.  (U.S. Census Bureau Webpage, "Annual Social and Economic Supplements – 2020," accessed at <https://www.census.gov/data/datasets/time-series/demo/cps/cps-asec.html> on December 19, 2020.)  This data could be used to provide a more precise breakdown ■ , but that level of precision is not required for the purposes of this illustration.

1
2        (3) Adjustment to probability of inaccuracy if advertisers expect some level of
              inaccuracy

3      137.    To the extent it is determined that advertisers do not expect 100% accuracy from

4 Facebook's targeting criteria, then the methodology can be adjusted to account for this lower

5 expectation of accuracy. The adjustment would alter the probability of inaccuracy (i.e., 100%

6 minus the probability of accuracy) used in the calculation based on the accuracy expectations of

7 advertisers.

8      138.    The most straightforward and conservative assumption is that all of the advertiser's

9 expectation of inaccurate targeting occurs when the targeting is indeed inaccurate. In this case, an

10 adjusted probability of inaccuracy can be calculated and used in the calculation described above by

11 simply subtracting the expected probability of inaccuracy from the probability of inaccuracy



18                                  However, if

19 the advertiser expected 95% accuracy, then the advertiser was expecting that the ad would be

20 displayed to five users who do not satisfy the targeting criteria. Therefore, the advertiser does not

21 suffer any diminution in value for those five users, and the diminution in value would only be

22 calculated based on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23     **(d)** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **Supports the Calculation of**
                     **the Diminution in Value Based on the R/N Methodology**

24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18   [199] Facebook Document, ████████████ FBIMB012188. *See also* Facebook

19   Document, ██████████████████ FBIMB012189. *See also* Facebook Document,
     ████████████████ FBIMB012190. *See also* Facebook Document,

20   ████████████ FBIMB012191. *See also* Facebook Document, ████████████
     ████████ FBIMB012192.

21   [200] Facebook Document, ████████████ FBIMB012190, p. 1.

22   [201] Email from Kurt Runke to Internal Use, ████████████ 17, 2015,
     FBIMB008837-838.

23   [202] Email from Don van der Drift to David Martin et al., ████████████

24   October 17, 2016, FBIMB024298-300 at '300.

25   [203] Email from Sebastian Dettweiler to Kurt Runke, ████████████
     ████████ May 22, 2017, FBIMB032561-563.

26   [204] Email from Sebastian Dettweiler to Kurt Runke, ████████████
     ████████ May 22, 2017, FBIMB032561-563.

27

28

PINSONNEAULT DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION TO CERTIFY CLASS
CASE NO. 4:18-cv-05286 PJH-JCS



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

[209] Facebook Document, ████████████████████████████████████████, July 1, 2016,
FBIMB001491, pp. 4-5, 9.

24

[210] Casorio Deposition at 13:6-8, 27:3-8.

[211] Casorio Deposition at 236-240, 242-243.

25

[212] Facebook Document, ███████████████████████████████████, July 1, 2016,
FBIMB001491.  *See also* Email from Jamie Ruth to Chris Casorio, ████████████
████████████, March 9, 2017, FBIMB022747-748.

26

27

28

PINSONNEAULT DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION TO CERTIFY CLASS
CASE NO. 4:18-CV-05286 PJH-JCS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20 [213] Facebook Document, ███████████████████████, July 1, 2016,
21 FBIMB001491, p. 9. ████████████████████████████████

22 ████████████████████████████████████████████████

23 [214] Facebook Document, ██████████████████████, July 1, 2016,
24 FBIMB001491, p. 4.

25 [215] Facebook Document, ██████████████████████, July 1, 2016,
    FBIMB001491, p. 4.

26 [216] Facebook Document, ██████████████████████, July 1, 2016,
    FBIMB001491, p. 4.

27

28



149.

[217] Facebook Document, ███████████████████████, July 1, 2016, FBIMB001491, p. 4.

[218] Email from Jamie Ruth to Chris Casorio, ████████████████ ████████ March 9, 2017, FBIMB022747-748.  *See also* Facebook Document, ████████ FBIMB033831.

[219] Defendant Facebook, Inc.'s Responses and Objections to Plaintiff's Sixth Set of Special Interrogatories [Nos. 14-41], November 20, 2020, Response to Interrogatory No. 21, pp. 10-13.

[220] Casorio Deposition at 243-257.

[221] Casorio Deposition at 236-240, 242-243.

[222] Facebook Presentation, ████████████ June 19, 2018, FBIMB022064, p. 3.

[223] Facebook Document, ████████████████████, July 1, 2016, FBIMB001491, p. 9.

[224] Facebook Presentation, ████████████ June 19, 2018, FBIMB022064, p. 3.

**Figure 6:** 

**(b) It is Reasonable to Use the Revenue-Share Methodology as a Basis to Apportion Advertiser Value to Partner Categories**

---

[225] Facebook Document, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ July 1, 2016, FBIMB001491, p. 5.

[226] Facebook Presentation, ▮▮▮▮▮▮▮▮ June 19, 2018, FBIMB022064, p. 3.

[227] Facebook Document, ▮▮▮▮▮▮ FBIMB033831, p. 2.

[228] Facebook Document, ▮▮▮▮▮▮ FBIMB033831, p. 2.

[229] Facebook Document, ▮▮▮▮▮▮ FBIMB033831, p. 3.

PINSONNEAULT DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION TO CERTIFY CLASS
CASE NO. 4:18-cv-05286 PJH-JCS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

[230] Facebook Presentation, ████████████████████████████ H2
2016, FBIMB021062, p. 9.

[231] Facebook Presentation, ████████████████████████████ H2
2016, FBIMB021062, p. 9.

[232] Facebook Presentation, ████████████████████████████ H2
2016, FBIMB021062, p. 9.

[233] Facebook Presentation, ████████████████████████████ H2
2016, FBIMB021062, p. 9.

[234] Facebook Presentation, ████████████████████████████ H2
2016, FBIMB021062, p. 9.

[235] Facebook Presentation, ████████████████████████████ H2
2016, FBIMB021062, p. 9.

**Figure 7:** 

155.    Therefore, the amount of value paid by the advertiser that is attributable to the use of the partner category can be calculated from the revenue share as follows:

Amount of Value Paid by Advertiser =

---

[236] Facebook Presentation, H2 2016, FBIMB021062, p. 9.

156.   In the example above, the amount of value paid by the advertiser would be:

**(c) Calculation of Diminution in Value Based on Revenue Share**

158.   To calculate the diminution in value for partner categories based on revenue share, like with the R/N methodology, a two-step procedure applies: first, I calculate the value of each partner category used in an ad ( ███████████████████████████ , and then I calculate the diminution in value.

159.

**Figure 8:** [237]

160.   Therefore, the first step of the revenue-share methodology for the homeownership partner category would be calculated as

---

[237] Facebook Spreadsheet, "FBIMB000347-HIGHLY CONFIDENTIAL.xlsx."

161.    The second step is to calculate the diminution in value related to partner categories that are inaccurate.  As described above for the R/N methodology, for each inaccurate partner category, the diminution in value can be calculated based on the observation that the advertiser did not receive any value from that partner category if it was inaccurate.

162.    Therefore, the diminution in value for each partner category that is determined to be inaccurate can be calculated in a straight-forward manner as follows:

$$\text{Diminution in Value} = (100\% - [\text{Probability PC is Accurate}]) * [\text{Value of PC}]$$

163.    Returning to the "InvestorVillage – Page Likes" campaign example, as calculated above, the calculated value of the Homeownership partner category is ▮▮▮▮.  For the purpose of this example, if the homeownership partner category has an accuracy of ▮▮, then the diminution in value would be calculated as follows:

$$\text{Homeownership PC Diminution in Value} = (100\% - ▮▮▮) * ▮▮▮ = ▮▮▮$$

164.    Similar issues as those addressed in Section V.B.1(c)(1), V.B.1(c)(2), and V.B.1(c)(3) arise for the calculation of diminution in value summarized in this section. Specifically:



- As discussed in Section V.B.1(c)(2), the data accuracy can be adjusted to reflect multi-level partner categories. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Therefore, instead of calculating one overall accuracy rate that covers all levels targeted, an individual accuracy can be calculated for each level of the partner category, and applied to the value for that level.

[238] Email from Chris Casorio to Mahesh Srinivasan, et al., "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" September 21, 2016, FBIMB022066 at '067.

PINSONNEAULT DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION TO CERTIFY CLASS
CASE NO. 4:18-CV-05286 PJH-JCS

For example, for IMB's "InvestorVillage – Page Likes" campaign, for the HHI partner category, using the accuracy estimates calculated in Section V.B.1(c)(2) for the three levels used in the campaign ███████████████████

| Diminution in Value | | = | |
|---|---|---|---|
| $250,000-$350,000 | (100% - ████) * ██████████ | = | ██████ |
| $350,000-$500,000 | (100% - ████) * ██████████ | = | |
| $500,000+ | (100% - ████) * ██████████ | = | |
| Total | | = | |

- Based on the calculations above, the final damages calculation for the "InvestorVillage – Page Likes" campaign using the revenue-share methodology is ██████ for the homeownership partner category and ██████ for the household income partner category, for a total of ██████.

- As discussed in Section V.B.1(c)(3), to the extent it is determined that advertisers do not expect 100% targeting accuracy, then the revenue-share methodology can be adjusted in the same way as in the R/N methodology.

### 3. Conclusion

165.    It is my opinion that the R/N methodology provides a reasonable and reliable basis to estimate the diminution in value that Plaintiff suffered as to all inaccurate targeting criteria, and which can be calculated on a classwide basis.

166.    Furthermore, it is my opinion that revenue-share methodology provides an additional reasonable and reliable basis to estimate the diminution in value that Plaintiff suffered as to partner categories criteria, and which can be calculated on a classwide basis.

## VI.    Documents, Data and Other Information Received

167.    I have cited in this declaration the specific documents and evidence that support the opinions that I have reached at this time.  In addition to the documents listed in this declaration, I and my staff had access to the entirety of Facebook's production.

## VII.   Compensation

168.    I am being compensated for my time in this matter at the billing rate of $550 per hour through November 15, 2020, and at the billing rate of $495 per hour after November 15, 2020. My fees are not contingent upon the nature of any findings, or of any analyses, testimony, or the outcome of the proceeding in this matter.

## VIII.   Potential Additional Analyses to Perform

169.    My opinions are based on the information received as of the date of my declaration. I will consider any additional information provided to me, as well as any criticisms of my opinions or bases for my opinions brought to my attention or offered by experts retained by Facebook. Any of this additional information or work may cause me to change my opinions.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Walnut Creek, California this 23rd day of December 2020.

Gregory Pinsonneault

# EXHIBIT A

**CURRICULUM VITAE**
**GREGORY A. PINSONNEAULT**

**POSITION**          Managing Director and Chief Executive Officer, LitiNomics, Inc.

**RANGE OF**          Mr. Pinsonneault has more than eighteen years of experience providing consulting
**EXPERIENCE**     services and expert testimony for economic, financial, and business issues related to
                                commercial litigation, primarily in the calculation of economic damages.  He has
                                consulted on more than 210 different projects, in a variety of complex litigation matters
                                including intellectual property disputes, breach of contract, predatory pricing and buying,
                                and antitrust monopolization.

                                Mr. Pinsonneault has been designated as an expert witness or non-litigation project
                                lead in at least 90 matters, including cases involving intellectual property disputes
                                (patent infringement, misappropriation of trade secrets, copyright infringement and
                                trademark infringement), consulting on reasonable license terms (non-litigation), breach
                                of contract disputes, class certification and damages issues, and other issues.  He has
                                provided live sworn expert testimony on eighteen occasions (eleven times at deposition,
                                three times at arbitration, once at trial in state court, and three times at trial in U.S.
                                District Court).

                                Mr. Pinsonneault is a Certified Licensing Professional.

**EDUCATION**       M.A. in Economics, University of California-Berkeley (2002)
                                     Fields of Specialization: Industrial Organization and Econometrics

                                B.S. in Computer Science, University of Washington (1996)
                                     Honors: *cum laude*

                                B.A. in Mathematics and Economics, University of Washington (1996)
                                     Honors: *cum laude*

**PROFESSIONAL**   LitiNomics, Inc. (Mountain View, CA)
**AND BUSINESS**       Managing Director and Chief Executive Officer, September 2016 - Present
**HISTORY**                  Director and Chief Executive Officer, September 2011 - September 2016
                                     Principal and Chief Operating Officer, March 2011 - August 2011
                                     Principal, January 2009 - March 2011
                                     Senior Associate, April 2007 - December 2008

                                CRA International, Inc. (Palo Alto, CA)
                                     Senior Associate, January 2006 - April 2007
                                     Consulting Associate, December 2003 - December 2005

                                Independent Consultant, January 2002 - November 2003
                                     Consultant to CRA, November 2003
                                     Consultant to LECG, June 2003 - July 2003
                                     Consultant to MiCRA, May 2002 - March 2003

                                Safeway, Inc., (Bellevue, WA)
                                     Assistant Store Manager, 1993 - 1996
                                     Various Positions, 1990 – 1993

| | |
|---|---|
| **TEACHING HISTORY** | University of California-Berkeley (Berkeley, CA) |

Graduate Student Instructor:
- Spring 2002  Head Graduate Student Instructor
- Fall 2001       Industrial Organization (Professor - Dr. Glenn Woroch)
- Spring 2001   Industrial Organization (Professor - Dr. Glenn Woroch)
- Fall 2000       Industrial Organization (Professor - Dr. Jordi Gual)
- Fall 1999       Econometrics (Professor - Dr. Bronwyn Hall)
- Fall 1997       Introduction to Economics (Professor - Dr. James Pierce)

Awarded "Outstanding Graduate Student Instructor Award," University of California-Berkeley Economics Department, 2002

**PROFESSIONAL AFFILIATIONS AND CERTIFICATIONS (Current)**

Certified Licensing Professional, 2015 - Present

Member, American Economic Association, 1998 - Present

Member, Western Economic Association International, 2016 - Present

Member, Licensing Executive Society, 2015 - Present

Member, American Intellectual Property Law Association, 2015 - Present
- Committee Member, Patent Litigation, 2017 - Present
- Committee Member, Patent Litigation Damages Subcommittee, 2017 - Present

Associate, American Bar Association, 2011 - Present
- Member, Section of Intellectual Property Law, 2011 - Present
- Committee Member, Patent Litigation, 2011 - Present
- Committee Member, Trademark Litigation, 2012 - Present
- Committee Member, Copyright Litigation, 2012 - Present
  - Subcommittee Member, Copyright Damages, 2012 - Present

Member, Planning Committee for USC Gould School of Law Intellectual Property Institute, 2011 - Present
- Committee Member, Planning Committee for Patent Damages Roundtable, 2014 - 2015
- Committee Member, Planning Committee for I.P. Remedies Roundtable, 2016 - 2017

Member, Planning Committee for Stanford-Berkeley Advanced Patent Law Institute: Silicon Valley (APLISV), 2015 – Present

**PROFESSIONAL AFFILIATIONS AND CERTIFICATIONS (Past)**

Member, Intellectual Property Owners Association, 2008-2010, 2018 - 2019
- Committee Member, Damages & Injunctions Committee, 2018 - 2019

**PUBLICATIONS**    "The Perceived Shortage of High-Tech Workers" (with Clair Brown and Ben Campbell), Editorial, Spring 1998.

"Employment Systems, Technological Change and Plant Performance in the Semiconductor Industry" (with Clair Brown and Daniel Rascher), CSM-HR Working Paper, University of California, Berkeley, 1999.

"The Use of New Technology and HR Systems in Improving Semiconductor Manufacturing Performance" (with Clair Brown and Daniel Rascher), Working Paper, Center for Work, Technology, and Society, University of California, Berkeley, 1999.

ABA Report and Proposed Resolution re *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC* (with Jonathan Muenkel, Katie Karn, and Karl Gross), January 2012.

ABA Report and Proposed Resolution re Remedies in Trademark Litigation (with Nicole Emmons, Kenneth Davis, Jessica Bahr, Erin Tanner, and Justin Ourso), March 2013.

"Reasonable Royalty Damages: History and Recent Guidance," Paper Submitted for ABA IPL 30th Annual Intellectual Property Law Conference, March 2015.

ABA Report and Proposed Resolution re Mentor Graphics Corp. v. Eve-USA, Inc. et al. (with Alan Ratliff, Karl Gross, Audrey Grace Ogurchak), July 2017.

"Pre- and Post-Judgment Interest" (with Christian Tregillis), Chapter In *Lost Profits Damages: Principles, Methods, and Applications*, Edited by Everett P. Harry and Jeffrey H. Kinrich, Valuation Products and Services, 2017.

"Design Patent Damages: History and Recent Developments," Paper Submitted for AIPLA 2020 Virtual Annual Meeting, October 2020.

"Pre- and Post-Judgment Interest" (with Christian Tregillis), Chapter In *Lost Profits Damages: Principles, Methods, and Applications*, *2nd Edition*, Edited by Everett P. Harry and Jeffrey H. Kinrich, Valuation Products and Services, forthcoming 2021.

**PRESENTATIONS**   "The Rapidly Changing Patent Damages Landscape: How to Stay Ahead" (with Dominic M. Persechini), Presentation at California Society of CPAs, Litigation Section (Economic Damages) Meeting, October 2011.

"The Legacy of Judge Rader: Tying Damages to the Claimed Invention (And How Technical Experts Can Help)," Presentation at University Club of Palo Alto Luncheon, July 2014.

"Modern Approaches to Calculating Reasonable Royalty Damages" (with Matthew Blackburn, Bill Choi, and Justin Lewis), Presentation at ABA IPL 30th Annual Intellectual Property Law Conference, March 2015.

"The Winds of Change in the Patent World," Presentation to King Hall Intellectual Property Association (KHIPLA), University of California, Davis, October 2016.

"Lost Profits and Patent Damages – Lessons Learned from *Masimo v. Philips*" (with Mark Kachner), Presentation to California Society of CPAs Forensic Services Section, Economic Damages Section Meeting, February 2017.

"Apportionment, Early Damages Disclosures, Enhanced Damages, and More!" (Moderator for panel including Karen Boyd, Daralyn Durie, and Leah Waterland), Presentation at 18th Annual Berkeley – Stanford Advanced Patent Law Institute Silicon Valley, December 2017.

"Design Patents and the Supreme Court – Takeaways from the  *Apple v. Samsung* Litigation," Presentation at Berkeley Center for Law & Technology (BCLT) / Berkeley Technology Law Journal (BTLJ) Law & Tech Speaker Series, Boalt Law School, September 2018.

"IP Damages Workshop: Navigating Through Murky Waters; Recent Developments in IP Damages Law" (with Lisa S. Glasser, Blake B. Inglish, Randall E. Kay, Ryan W. Koppelman, Justin Lewis, Erik J. Olson, Jeffery A. Stec, Moderated by Shelly Irvine), Presentation at USC Gould School of Law 2019 Intellectual Property Institute, March 2019.

"Design Patents Damages – From Carpet Wars to Smartphone Wars," Presentation to American Intellectual Property Law Association (AIPLA) Damages Subcommittee, April 16, 2019.

"Design Patents Damages – From Carpet Wars to Smartphone Wars," Webinar for American Intellectual Property Law Association – AIPLA Online CLE & Programs, October 3, 2019.

"Design Patents Damages – Past and Present," Presentation to Intellectual Property Owners (IPO) Damages and Injunctions Committee, October 10, 2019.

"Damages Contentions: Theory and Practice" (Moderator for panel including Magistrate Judge Susan van Keulen and Paul Bondor), Presentation at 20th Annual Berkeley – Stanford Advanced Patent Law Institute Silicon Valley, December 2019.

"Early Damages Disclosures and Contentions – Update on Implementation," Presentation to American Intellectual Property Law Association (AIPLA) Damages Subcommittee, January 21, 2020.

**PRESENTATIONS (Continued)** "Disgorgement of Profits for Design Patents: From the 19th Century to the 21st," Webinar for California Lawyers Association (formerly The State Bar of California Sections), February 4, 2020.

"Design Patent Damages: What you need to know to get your design patent damages case ready for trial," (presented with Nicholas Kim, Scott Daniels, Scott Kamholz, the Honorable Randall Rader (retired), and Felicia Boyd as part of panel "Double Dutch: Mastering the Interplay Between District Court and PTAB Litigation: Leveraging PTAB with District Court Proceedings, and vice versa"), Presentation at AIPLA 2020 Virtual Annual Meeting, October 2020.

| | |
|---|---|
| **TESTIMONY /<br>DECLARATION<br>EXPERIENCE** | *Grewal v. Choudhury*, U.S. District Court - N.D. of CA, Case No. 3:07-cv-04218, Trial Testimony (2008), Declaration (2008). |

*Jaramillo v. The Coca-Cola Company et al.*, Superior Court of California, County of Madera, Case No. MCV037482, Deposition Testimony (2008).

*MedCorp, Inc. v. PinPoint Technologies, Inc. et al.*, U.S. District Court - District of Colorado, Civil Action No. 1:08-cv-00867, Deposition Testimony (2009).

*Ryder-Loomis v. Allstate Insurance Company*, Superior Court of California, County of San Francisco, Case No. CPF-09-509981 (referred to Arbitration at ADR Services), Arbitration Testimony (2010).

*Dr. Ho v. California Advanced Imaging Medical Associates, Inc. d/b/a National Orthopedic Imaging Associates et al.*, JAMS, Arbitration Testimony (2010), Deposition Testimony (2010).

*O'Donovan, De La Torre, Saysourivong, and all others similarly situated. v. CashCall, Inc.*, U.S. District Court - Northern District of California, Case No. 3:08-cv-03174, Declaration (2010).

*Bibiji Inderjit Kaur Puri v. Golden Temple of Oregon, LLC*, Arbitration Service of Portland, Arbitration Testimony (via perpetuation deposition, 2011).

*Bernal and all others similarly situated v. Southwestern Pacific Specialty Finance, Inc. d/b/a Check 'N Go*, U.S. District Court - Northern District of California, Case No. 4:12-cv-05797, Declaration (2012).

*FortuNet, Inc. v. Playbook Publishing, LLC, et al.*, Nevada District Court, Clark County, Case No. A-11-645734-B, Trial Testimony (2013).

*PQ Labs, Inc. v. Yang Qi, et al.*, U.S. District Court - Northern District of California, Cse No. 4:12-cv-00450, Deposition Testimony (2013), Declaration (2014), Trial Testimony (2014).

*Munson v. Splice Communications, Inc., Coan, and Bischoff*, U.S. District Court - Northern District of California, Case No. 3:12-cv-05089, Trial Testimony (2014).

*Sky Zone, LLC v. Raymond et al.*, U.S. District Court - District of Nevada, Case No. 3:11-cv-00141, Deposition Testimony (2015).

*Alfred, Barrish, and all others similarly situated v. Pepperidge Farm, Inc.*, U.S. District Court - Central District of California, Case No. 2:14-cv-07086, Declaration (2015).

*Robert Tomassini, and all others similarly situated v. FCA US LLC (f/k/a Chrysler Group LLC)*, U.S. District Court – Northern District of New York, Case No. 3:14-cv-01226, Declaration (2016), Deposition Testimony (2017).

*Anthony Shamrell and Daryl Tysdyk, and all others similarly situated v. Apple, Inc.*, Superior Court of California, County of San Diego, Case No. 37-2013-00055830, Declaration (March 2017, August 2018, November 2018, and August 2019), Deposition Testimony (March 2017, September 2018, June 2019).

**TESTIMONY /
DECLARATION
EXPERIENCE
(Continued)**

*William S. Callaway and all other similarly situated v. Mercedes-Benz USA, LLC et al.*, U.S. District Court - Northern District of California, Case No. 2:16-cv-01346, Declaration (2017).

*Jennifer Hasemann and Debbie Hoth, and all others similarly situated v. Gerber Products Co.*, *Jeremy Greene and Cetaria Wilkerson, and all others similarly situated v. Gerber Products Co.*,and *Wendy Manemeit, and all others similarly situated v. Gerber Products Co.*, U.S. District Court – Eastern District of New York, Consolidated Case Nos. 1:15-cv-02995; 1:16-cv-01153, and 2:17-cv-00093, Declaration (March 2018, June 2018, August 2018, March 2020), Deposition Testimony (March 2018).

Snap Lock Industries, Inc. v. Swisstrax Corp., U.S. District Court, District of Nevada, Case No. 2:17-cv-02742, Deposition Testimony (June 2020), Declaration (August 2020).

**GREGORY A. PINSONNEAULT**
**CONSULTING AND TESTIMONY CASE LISTING**

| | Lawsuit | | Type | Court | Work Performed | Retained Expert |
|---|---|---|---|---|---|---|
| 1 | Capital One Financial Corp. et al., Counterclaim-Plaintiffs v. Intellectual Ventures I LLC et al., Counterclaim-Defendants (Case No. 8-14-cv-00111) | D | Antitrust | U.S. District Court, District of Maryland (Greenbelt Division) | Damages Analysis | ☐ |
| 2 | Cisco Sys. Inc. v. Alcatel USA, Inc. et al. | D | Antitrust | U.S. District Court, Eastern District of Texas | Antitrust Liability and Damages Analysis | ☐ |
| 3 | Smith Street Mill, Inc. v. Weherhaeuser (Civil No. 04-1049-PA) | D | Antitrust | U.S. District Court, District of Oregon | Antitrust Liability and Damages Analysis | ☐ |
| 4 | Syngenta Seeds, Inc. v. Monsanto Company | D | Antitrust | U.S. District Court, District of Delaware | Antitrust Liability and Damages Analysis | ☐ |
| 5 | Washington Alder v. Weyerhaeuser (Civil No. 03-0552-PA) | D | Antitrust | U.S. District Court, District of Oregon | Antitrust Liability and Damages Analysis | ☐ |
| 6 | Westwood Lumber Co. v. Weyerhaeuser (Civil No. 03-0551-PA) | D | Antitrust | U.S. District Court, District of Oregon | Antitrust Liability and Damages Analysis | ☐ |
| 7 | Bancorp v. Sun Life Assurance | P | Breach of Contract | | Damages Analysis | ☐ |
| 8 | Bank One, Oklahoma, N.A. et al. v. Trammel Crow Services, Inc. et al. (Case No. 03 C 3624) | D | Breach of Contract | U.S. District Court, Northern District of Illinois (Eastern Division) | Damages Analysis | ☐ |
| 9 | Columbia Aircraft v. Affiliated FM Insurance | P | Breach of Contract | Circuit Court of the State of Oregon, Multnomah County | Damages Analysis | ☐ |
| 10 | Etex Corp. v. Medtronic, Inc. | P | Breach of Contract | Arbitration | Damages Analysis | ☐ |
| 11 | Lima Development Inc.et al. v. Columbia Aircraft Manufacturing fka The Lancair Company | D | Breach of Contract | Oregon Circuit Court, Deschutes County | Perform Financial Review Related to Insolvency | ☐ |
| 12 | Pixelworks v. Fox (individual) | P | Breach of Contract | | Damages Analysis | ☐ |
| 13 | MedCorp, Inc. v. Pinpoint Technologies, Inc. et al. | P | Breach of Contract and Fraud in the Inducement | U.S. District Court, District of Colorado | Damages Analysis | ☑ |
| 14 | Fortunet, Inc. v. Playbook Publishing et al. (Case No. A-11-645734-B) | P | Breach of Contract, Breach of Fiduciary Duty, Fraud, RICO, Misappropriation (Theft) of Trade Secrets | Nevada District Court, Clark County | Damages Analysis | ☑ |
| 15 | Viasphere International, Inc. v. Aram Vardanyan (Case No. 5:12-cv-01536) | P | Breach of Contract, Intentional and Negligent Misrepresentation, Conversion, and Other Misc. Allegations | U.S. District Court, Northern District of California, San Jose Division | Damages Analysis | ☑ |
| 16 | Dr. Ho (Individual) v. California Advanced Imaging Medical Associates, et al. | P | Breach of Contract; Employment | Judicial Arbitration and Mediation Services (JAMS) | Damages Analysis | ☑ |
| 17 | Asahi Kasei Pharma Corp. v. Actelion Ltd. Et al. | P | Breach of Contract; Intentional Interference with Contract | Superior Court of the State of California, County of San Mateo | Damages Analysis | ☐ |

**GREGORY A. PINSONNEAULT**
**CONSULTING AND TESTIMONY CASE LISTING**

| | Lawsuit | | Type | Court | Work Performed | Retained Expert |
|---|---|---|---|---|---|---|
| 18 | Illinois Tool Works, Inc. et al. vs. Seattle Safety, LLC | D | Breach of Contract; Misappropriation (Theft) of Trade Secrets; Conversion; Unfair Competition | U.S. District Court, Western District of Washington (Seattle) | Damages Analysis | ☐ |
| 19 | DefensTech International, Inc. v. Edward Robert Fyfe, et al. (Case No. 30-2014-00697473) | P | Breach of Fiduciary Duty and Slander of Title | Superior Court of California, County of Orange | Damages Analysis | ☑ |
| 20 | Bradburn Parent/Teacher Store, Inc.. v. 3M | D | Class Action - Antitrust | U.S. District Court, Eastern District of Pennsylvania | Class Certification (Damages) Analysis | ☐ |
| 21 | In re American Express Anti-Steering Rules Antitrust Litigation | P | Class Action - Antitrust | U.S. District Court, Southern District of New York | Class Certification Analysis; Antitrust Liability and Damages Analysis | ☐ |
| 22 | In Re Microsoft Corp. Antitrust Litigation | P | Class Action - Antitrust | U.S. District Court, District of Maryland Maryland | Antitrust Liability Analysis | ☐ |
| 23 | In re Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation | P | Class Action - Antitrust | U.S. District Court, Eastern District of New York | Class Certification (Damages) Analysis | ☐ |
| 24 | Morelock Enterprises, Inc. v. Weyerhaeuser | D | Class Action - Antitrust | U.S. District Court, District of Oregon | Class Certification, Antitrust Liability and Damages Analysis | ☐ |
| 25 | Tardibuono-Quigle and all others similarly situated v. HSBC Mortgage Corp. and HSBC Bank USA, N.A. (Case No. 7:15-cv-06940) | P | Class Action - Breach of Contract, Violation of NY General Business Law Sec. 349, and Claim Under NY Banking Law Sec. 598(3) | U.S. District Court, Southern District of New York | Class Certification (Damages) Analysis | ☐ |
| 26 | In re Chase Bank USA, N.A. "Check Loan" Contract Litigation | P | Class Action - Breach of Implied Covenant of Good Faith and Fair Dealing | U.S. District Court, Northern District of California | Class Certification (Damages) Analysis | ☐ |
| 27 | Tyler Barnett PR, LLC, One, LLC, and Jonathan Murdough and all others similarly situated v. Facebook, Inc. | P | Class Action - California Unfair Competition Law, Breach of Implied Duty to Perform with Reasonable Care | U.S. District Court, Northern District of California (Oakland Division) | Class Certification (Damages) Analysis | ☐ |
| 28 | Shamrell et al. v. Apple, Inc. (Case No. 37-2013-00055830) | P | Class Action - Consumers Legal Remedies Act, Breach of Express and Implied Warranty, Violation of Song-Beverly Act, Magnuson-Moss Warranty Act, California Unfair Competition | Superior Court of California, County of San Diego | Class Certification (Damages) Analysis | ☑ |

**GREGORY A. PINSONNEAULT**
**CONSULTING AND TESTIMONY CASE LISTING**

| | Lawsuit | Type | Court | Work Performed | Retained Expert |
|---|---|---|---|---|---|
| 29 | Alfred, Barrish, and all others similarly situated v. Pepperidge Farm, Inc. (Case No. 2:14-cv-07086) | P | Class Action - Employment (Failure to Pay California Overtime Compensation and other Misc. Allegations) and Violations of the Unfair Competition Law; and Representative Action Complaint for Civil Penalties Under Labor Code Private Attorney General Act | U.S. District Court, Central District of California | Class Certification (Damages) Analysis | ☑ |
| 30 | In re Textile Rental Services Litigation (Case No. CV-05-19) | Both | Class Action - Fraud and Breach of Contract | Circuit Court of Barbour County, Alabma (Clayton Division) | Valuation of settlement agreement | ☐ |
| 31 | Hasemann and Hoth and all others similarly situated v. Gerber Products Co. (Case No. 1:15-cv-02995) | P | Class Action - Fraudulent Concealment, Intentional Misrepresentation, Negligent Misrepresentation, and Violations of New York's General Business Law | U.S. District Court, Eastern District of New York | Class Certification (Damages) Analysis | ☑ |
| 32 | Callaway, Callaway, and all others similarly situated v. Mercedes-Benz USA, LLC and Mission Imports d/b/a Mercedes-Benz of Laguna Niguel (Case No. 8:14-cv-02011) | P | Class Action - Fraudulent Non-Disclosure, Violations of CA Business and Professions Code, Violations of CA Consumers Legal Remedies Act | U.S. District Court, Central District of California | Class Certification (Damages) Analysis | ☐ |
| 33 | Tomassini, and all others similarly situated v. FCA US LLC (f/k/a Chrysler Group LLC) (Case No. 3:14-cv-01226) | P | Class Action - Unfair and Deceptive Trade Practices, Breach of Express Warranty, | U.S. District Court, Northern District of New York | Class Certification (Damages) Analysis | ☑ |
| 34 | Paula Bernal, et al. (Class) v. Southwestern & Pacific Specialty Finance, Inc. DBA Check 'N Go (Case No. 4:12-cv-05797) | P | Class Action - Unfair Competition and Violation of California Finance Lender's Law | U.S. District Court, Northern District of California (Oakland Division) | Class Certification (Damages) Analysis | ☑ |
| 35 | Schmitz and Steward, et al. v. Wal-Mart Stores, Inc. | P | Class Action - Unfair Competition, Consumer Legal Remedies Act, False Advertising | U.S. District Court, Eastern District of California | Class Certification (Damages) Analysis | ☐ |
| 36 | Perez, et al. v. First American Title Insurance Company | P | Class Action - Unjust Enrichment and Unfair Discriminatin | U.S. District Court, District of Arizona | Class Certification (Damages) Analysis | ☐ |
| 37 | O'Donovan et al. (Class) v. CashCall, Inc. | P | Class Action - Unlawful / Unfair Business Practices and Other Misc. Violations | U.S. District Court, Northern District of California | Class Certification (Damages) Analysis | ☑ |

**GREGORY A. PINSONNEAULT**
**CONSULTING AND TESTIMONY CASE LISTING**

| | Lawsuit | | Type | Court | Work Performed | Retained Expert |
|---|---|---|---|---|---|---|
| 38 | In RE: Monat Hair Care Products Marketing, Sales Practices, and Products Liability Litigation | P | Class Action - Violation of FL Deceptive / Unfair Trade Practices Act, Violation of Magnuson-Moss Warranty Act, Breach of Implied Warranty of Merchantability, Violation of Express Warranty, and Misc. state consumer protection / fraud / advertising claims | U.S. District Court, Southern District of Florida (Miami Division) | Class Certification (Damages) Analysis | ☑ |
| 39 | Manemeit and all others similarly situated v. Gerber Products Co. d/b/a Nestle Nutrition, Nestle Infant Nutrition, and Nestle Nutrition North America (Case No. 2:17-cv-00093) | P | Class Action - Violation of the Florida Deceptive and Unfair Trade Practices Act, Misleading advertising (Florida), Violation of the Wisconsin Deceptive Trade Practices Act, and False Representations (Wisconsin) | U.S. District Court, Eastern District of New York | Class Certification (Damages) Analysis | ☑ |
| 40 | Keskinen and all other similarly situated v. Edgewell Personal Care Co.; Edgewell Personal Care, LLC; Edgewell Personal Care Brands, LLC; Playtex Products, LLC; and Sun Pharmeceuticals, LLC (Case No. 2:17-cv-07721) | P | Class Action - Violations of CA Unfair Competition Law, CA Consumer Legal Remedies Act, and CA False Advertising Law; Fraud / Intentional and Negligent Mispresentation; Breach of Express/Implied Warranty; etc. | U.S. District Court, Central District of California | Class Certification (Damages) Analysis | ☑ |
| 41 | IntegrityMessageBoards.com and all others similarly situated v. Facebook, Inc. (Case No. 4:18-cv-05286) | P | Class Action - Violations of California's Unfair Competition Law Cal. Bus. & Prof. Code §§ 17200, et seq. | U.S. District Court, Northern District of California (Oakland Division) | Class Certification (Damages) Analysis | ☑ |
| 42 | Helen Krukas, Andrea Kushim, and George Luke, and all others similarly situated v. AARP, Inc.; AARP Services, Inc.; and AARP Insurance Plan (Case No. 1:18-cv-01124) | P | Class Action - Violations of DC Consumer Protection Procedures Act, Breach of Fiduciary Duty, Conversion, Fraudulent Concealment, and Unjust Enrichment | U.S. District Court, District of Columbia | Class Certification (Damages) Analysis | ☑ |
| 43 | Greene and Wilkerson and all others similarly situated v. Gerber Products Co. (Case No. 1:16-cv-01153) | P | Class Action - Violations of OH Consumer Sales Practices Act, Violation of the OH Deceptive Trade Practices Act, Violations of the NC Unfair and Deceptive Trade Practices Act, Fraudulent Concealment, Intentional / Negligent Misrepresentation | U.S. District Court, Eastern District of New York | Class Certification (Damages) Analysis | ☑ |
| 44 | Gilbert et al. v. MoneyMutual, LLC et al. (Case No. 4:13-cv-01171) | P | Class Action - Violations of the California Deferred Deposit Transaction Law, Violations of California's Unfair Competition Law, Racketeering Influenced and Corrupt Organizations Act | U.S. District Court, Northern District of California, Oakland Division | Class Certification (Damages) Analysis | ☑ |

**GREGORY A. PINSONNEAULT**
**CONSULTING AND TESTIMONY CASE LISTING**

| | Lawsuit | Type | Court | Work Performed | Retained Expert |
|---|---|---|---|---|---|
| 45 | Champion Residential Services, Inc. v. Sierra Air, Inc. et al. (Case No. 3:19-cv-00375) | D | Copyright Infringement | U.S. District Court, District of Nevada | Damages Analysis | ☑ |
| 46 | Weinrib v. Williams-Sonoma, Inc., et al. | D | Copyright Infringement | U.S. District Court, Southern District of New York | Damages Analysis | ☑ |
| 47 | CrowdStrike, Inc. v. NSS Labs, Inc. (Case No. 1:17-cv-00146) | P | Copyright Infringement, Misappropriation of Trade Secrets, False Advertising, Breach of Contract, Tortious Interference with Contract, Fraud, Violation of the Computer Fraud and Abuse Act | U.S. District Court, District of Delaware | Damages Analysis | ☑ |
| 48 | XimpleWare Corp. v. Versata Software, Inc. f/k/a Trilogy Software, Inc. et al. (Case No. 3:13-cv-05160) | P | Copyright Infringement, Violation of Lanham Act 43(a), Breach of Contract, Unfair Competition | U.S. District Court, Northern District of California | Damages Analysis | ☑ |
| 49 | Holtzclaw v. CertainTeed Corp. | D | Employment | U.S. District Court, Eastern District of California (Fresno) | Damages Analysis | ☑ |
| 50 | Jeannine Clark v. AmTrust E&S Insurance Services, Inc., Amtrust North America, Inc., AmTrust Financial Services, Inc., and Tony Weddle (Case No. 3:16-cv-05561) | D | Employment | U.S. District Court, Northern District of California | Damages Analysis | ☑ |
| 51 | Martin (Individual) v. Ricoh Americas Corporation et al. | D | Employment | Judicial Arbitration and Mediation Services (JAMS) | Damages Analysis | ☑ |
| 52 | Quintana v. AAA Business Supplies, LP d/b/a AAA Business Supplies and Interiors | D | Employment | American Arbitration Association | Damages Analysis | ☑ |
| 53 | Dennis E. Munson v. Splice Communications, Inc., Andrew Coan, and Scott Bischoff (Case No. 3:12-cv-05089) | D | Employment (Unlawful Retaliation, Breach of Agreement, Violation of Labor Code, and Other Misc. Allegations) | U.S. District Court, Northern District of California | Damages Analysis | ☑ |
| 54 | United States of America ex rel. R.C. Taylor, III v. Mario Gabelli, et al. (03-cv-08762) | D | False Claims Act (Qui Tam) | U.S. District Court, Southern District of New York | Liability and Damages Analysis | ☐ |
| 55 | Grewal (Individual) v. Choudhury (Individual) | P | Fraud and Deceit, Recovery on a Promissory Note | U.S. District Court, Northern District of California | Damages Analysis | ☑ |
| 56 | The Vineyard House, LLC v. Constellation Brands U.S. Operations, Inc. (Case No. 4:19-cv-01424-YGR) | P | Lanham Act (False Advertising and False Designation of Origin), Violations of CA False Advertising Law | U.S. District Court, Northern District of California (Oakland Division) | Damages Analysis | ☐ |
| 57 | JCM American Corporation v. Mars Electronics International, Inc., Thomas P. Nugent | P | Misappropriation (Theft) of Trade Secrets | Nevada District Court, Clark County; Case No. A507304 | Damages Analysis | ☐ |
| 58 | UniRam Technology, Inc. v. Monolithic System Technology, Taiwan Semiconductor Manufacturing Company, Ltd., TSMC North America | P | Misappropriation (Theft) of Trade Secrets | U.S. District Court, Northern District of California.  Case No. CV-04-01268-VRW | Damages Analysis | ☐ |

**GREGORY A. PINSONNEAULT**
**CONSULTING AND TESTIMONY CASE LISTING**

| | Lawsuit | | Type | Court | Work Performed | Retained Expert |
|---|---|---|---|---|---|---|
| 59 | Nevada Heat Treating, Inc. v. Sulphco, Inc. | P | Misappropriation (Theft) of Trade Secrets, Breach of Contract | Nevada District Court, Washoe County | Damages Analysis | ☑ |
| 60 | Vesta Corp. v. Amdocs Management Ltd. and Amdocs, Inc. (Case No. 3:14-cv-01142) | D | Misappropriation (Theft) of Trade Secrets, Breach of Contract | U.S. District Court, District of Oregon (Portland Division) | Damages Analysis | ☐ |
| 61 | Creative Concepts Software, Inc. v. Mobiletech Solutions, Inc., et al. (Case No. SA CV 05-00670) | D | Misappropriation (Theft) of Trade Secrets, Breach of Contract & Tortious Interference, Lanham Act (False Advertising) | U.S. District Court, Central District of California (Southern Division) | Damages Analysis | ☐ |
| 62 | Elemental LED, LLC and Elemental LED, Inc. v. Alan B. Rose, Lighting Management Group, and Alloy LED, LLC (Case No. BC602281) | P | Misappropriation (Theft) of Trade Secrets, Breach of Contract, and Breach of Implied Covenant of Good Faith and Fair Dealing | Superior Court of California, County of Los Angeles, Central District | Damages Analysis | ☑ |
| 63 | Elemental LED, LLC and Elemental LED, Inc. v. Maxwell E. Darling (Case No. CV15-02247) | P | Misappropriation (Theft) of Trade Secrets, Breach of Contract, and Breach of Implied Covenant of Good Faith and Fair Dealing | Nevada District Court, Washoe County | Damages Analysis | ☑ |
| 64 | Macsolutions, Inc. v. Apple Computer, Inc. | P | Misappropriation (Theft) of Trade Secrets, Breach of Contract, Fraud | | Damages Analysis | ☐ |
| 65 | BladeRoom Group Limited, et al., v. FaceBook, Inc. (Case No. 5:15-cv-01370) | P | Misappropriation (Theft) of Trade Secrets, Breach of Contract, Unfair Business Practices / Unfair Competition; Breach of Covenant of Good Faith & Fair Dealing | U.S. District Court, Northern District of California - San Jose Division | Damages Analysis | ☐ |
| 66 | PQ Labs, Inc. v. Yang Qi, ZaagTech Inc., Jinpeng Li, and Haipeng Li (Case No. 4:12-cv-00450) | D | Misappropriation (Theft) of Trade Secrets, Copyright Infringement, Trademark Infringement, Lanham Act Violations, and Other Misc. Allegations | U.S. District Court, Northern District of California, Oakland Division | Damages Analysis | ☑ |
| 67 | Ameranth, Inc. v. Genesis Gaming Solutions, Inc., et al. (Case No. 8:11-cv-00189) | D | Misappropriation (Theft) of Trade Secrets, Interference with Contractual Relations, Interference with Prospective Economic Advantage, Patent Infringement | U.S. District Court, Central District of California | Damages Analysis | ☑ |
| 68 | Waymo LLC v. Uber Technologies, Inc.; Ottomotto LLC; Otto Trucking LLC (Case No. 3:17-cv-00939) | P | Misappropriation (Theft) of Trade Secrets, Patent Infringement, Violation of CA Bus. & Prof. Code 17200 | U.S. District Court, Northern District of California (San Francisco Division) | Damages Analysis | ☐ |
| 69 | IV League, Inc. v. Pharmaco, Inc. et al | D | Misappropriation (Theft) of Trade Secrets, Unfair Business Practices | Superior Court of the State of California | Damages Analysis | ☐ |

**GREGORY A. PINSONNEAULT**
**CONSULTING AND TESTIMONY CASE LISTING**

| | Lawsuit | | Type | Court | Work Performed | Retained Expert |
|---|---|---|---|---|---|---|
| 70 | North American Title v. Liberty Title Company | D | Misappropriation (Theft) of Trade Secrets, Unfair Business Practices, Intentional Interference | Superior Court of the State of California (Contra Costa County) | Damages Analysis | ☐ |
| 71 | Global Sign, LLC et al. v. Merto (individual) et al. | P | Misappropriation (Theft) of Trade Secrets, Unfair Competition, Theft of Trade Name, Breach of Contract | Superior Court of the State of California (Orange County) | Damages Analysis | ☐ |
| 72 | Ajaxo, Inc. v. E*Trade Group, Inc et al. | D | Misappropriation (Theft) of Trade Secrets, Breach of Contract | Superior Court of Califonia, County of Santa Clara | Damages Analysis | ☐ |
| 73 | Boston Scientific Corp.; BostonScientific SciMed, Inc.; and Fortis Advisors v. BioCardia, Inc. (Case No. 3:19-cv-05645) | D | Misappropriation of Trade Secrets Under CA UTSA, Breach of Contract, Correction of Inventorship | U.S. District Court, Northern District of California (San Francisco Division) | Damages Analysis | ☐ |
| 74 | Consulting work for Cohen and ProCinea | N/A | Non-Litigation Consulting | N/A | Design Financial Analytical Model | ☐ |
| 75 | Consulting work for COMPTEL/ALTS | N/A | Non-Litigation Consulting | N/A | Prepare FCC Comment Analyzing Local Phone Pricing | ☐ |
| 76 | Consulting work for Fidelity Investments | N/A | Non-Litigation Consulting | N/A | Analyze Trading Data for Evidence of Wrongful Conduct | ☐ |
| 77 | Consulting work for Lloyds of London | N/A | Non-Litigation Consulting | N/A | Analyze Lloyds Insurance Liability Related to Enron | ☐ |
| 78 | Consulting work for Sprint | N/A | Non-Litigation Consulting | N/A | Prepare Comment for Texas PUC | ☐ |
| 79 | Consulting work for Sprint and Nextel realted to their proposed merger | N/A | Non-Litigation Consulting | N/A | Merger Analysis | ☐ |
| 80 | Consulting work for Telstra | N/A | Non-Litigation Consulting | N/A | Perform Benchmarking Study | ☐ |
| 81 | Consulting work for Vodafone | N/A | Non-Litigation Consulting | N/A | Prepare Comment for EU on Cellular Roaming Charges | ☐ |
| 82 | Licensing Consulting related to automobile battery systems | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☑ |
| 83 | Licensing Consulting related to Casino Gaming (cannot disclose due to confidentiality agreement) | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☑ |
| 84 | Licensing Consulting related to casino gaming devices | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☑ |
| 85 | Licensing Consulting related to casino gaming systems | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☑ |

**GREGORY A. PINSONNEAULT**
**CONSULTING AND TESTIMONY CASE LISTING**

| | Lawsuit | | Type | Court | Work Performed | Retained Expert |
|---|---|---|---|---|---|---|
| 86 | Licensing Consulting related to computers, printers, and enterprise hardware | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☑ |
| 87 | Licensing Consulting related to computers, printers, tablets, and enterprise hardware | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☑ |
| 88 | Licensing Consulting related to enterprise and security software | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☑ |
| 89 | Licensing Consulting related to hearing instruments | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☑ |
| 90 | Licensing Consulting related to insurance | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☑ |
| 91 | Licensing Consulting related to internet advertising | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☐ |
| 92 | Licensing consulting related to networking equipment | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☑ |
| 93 | Licensing Consulting related to operating system software | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☐ |
| 94 | Licensing Consulting related to printers and scanners | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☑ |
| 95 | Licensing Consulting related to printers and scanners | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☑ |
| 96 | Licensing Consulting related to printers and scanners | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☑ |
| 97 | Licensing Consulting related to printers, computers, and storage systems | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☐ |
| 98 | Licensing Consulting related to printers, scanners and cameras | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☑ |
| 99 | Licensing Consulting related to printers, scanners, and cameras | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☑ |
| 100 | Licensing Consulting related to printers, scanners, cameras, and medical devices | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☑ |
| 101 | Licensing Consulting related to Providers of Cellular Service | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☑ |
| 102 | Licensing Consulting related to retail banking | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☑ |
| 103 | Licensing Consulting related to server operating systems | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☑ |
| 104 | Licensing Consulting related to servers and middleware software | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☐ |
| 105 | Licensing Consulting related to servers, storage systems, and middleware software | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☐ |
| 106 | Licensing Consulting related to social networking platforms | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☑ |

**GREGORY A. PINSONNEAULT**
**CONSULTING AND TESTIMONY CASE LISTING**

| | Lawsuit | | Type | Court | Work Performed | Retained Expert |
|---|---|---|---|---|---|---|
| 107 | Licensing Consulting related to tablet devices and advertising | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☑ |
| 108 | Licensing Consulting related to video game systems | N/A | Non-litigation Consulting (Licensing) | N/A | Licensing Consulting | ☑ |
| 109 | Advanced Neuromodulation Systems, Inc. v. Advanced Bionics Corporation (Civil No. 4:04cv131) | P | Patent Infringement | U.S. District Court, Eastern District of Texas (Sherman Division) | Damages Analysis | ☐ |
| 110 | Aircraft Technical Publishers v. Avantext, Inc. | P | Patent Infringement | U.S. District Court, Northern District of California (San Francisco Division) | Damages Analysis | ☐ |
| 111 | AllVoice Developments v. Microsoft Corp. | P | Patent Infringement | U.S. District Court, Western District of Washington | Damages Analysis | ☐ |
| 112 | Altana Pharma, AG and Wyeth v. Teva Pharmaceuticals USA, Inc. and Teva Pharmaceuticals, Ltd. | D | Patent Infringement | U.S. District Court, District of New Jersey | Declaration related to Motion for Injunction | ☐ |
| 113 | Ameranth, Inc. v. Genesis Gaming Solutions, Inc., et al. (Case No. 8:13-cv-00720) | D | Patent Infringement | U.S. District Court, Central District of California | Damages Analysis | ☐ |
| 114 | Apple Inc. v. Samsung Electronics Co., Ltd. et al. (Case No. 12-cv-00630) | D | Patent Infringement | U.S. District Court, Northern District of California | Damages Analysis | ☐ |
| 115 | Bally Technologies, Inc. v. Business Intelligence Systems Solutions, Inc. | P | Patent Infringement | U.S. District Court, District of Nevada | Damages Analysis | ☑ |
| 116 | Bee Stinger, LLC v. Leven Industries (Case No. 2:13-cv-00026) | D | Patent Infringement | U.S. District Court, District of Utah | Damages Analysis | ☑ |
| 117 | Big Baboon, Inc. v. Dell Inc. et al. | P | Patent Infringement | U.S. District Court, Central District of California (Western Division) | Damages Analysis | ☐ |
| 118 | Charles E. Hill & Associates, Inc. v. Abercrombie & Fitch Co., et al. | P | Patent Infringement | U.S. District Court, Eastern District of Texas (Marshall Division) | Damages Analysis | ☐ |
| 119 | Charles E. Hill & Associates, Inc. v. Abt Electronics, Inc. et al. (2:09-cv-00313) | P | Patent Infringement | U.S. District Court, Eastern District of Texas (Marshall Division) | Damages Analysis | ☐ |
| 120 | Commonwealth Scientific and Industrial Research Organization v. Toshiba et al. | P | Patent Infringement | U.S. District Court, Eastern District of Texas (Tyler Division) | Damages Analysis | ☐ |
| 121 | Convolve, Inc. v. Dell, Inc. et al. | P | Patent Infringement | U.S. District Court, Eastern District of Texas (Marshall Division) | Damages Analysis | ☐ |
| 122 | Datcard Systems Inc. v. Codonics, Inc. | P | Patent Infringement | U.S. District Court, Central District of California | Damages Analysis | ☐ |
| 123 | Dominion Assets LLC v. Masimo Corp. and Cercacor Laboratories, Inc. (Case No. 5:12-cv-02773) | D | Patent Infringement | U.S. District Court, Northern District of California, Oakland Division | Damages Analysis | ☑ |
| 124 | Dominion Assets LLC v. Masimo Corp. and Cercacor Laboratories, Inc. (Case No. 5:14-cv-03002) | D | Patent Infringement | U.S. District Court, Northern District of California, Oakland Division | Damages Analysis | ☑ |

**GREGORY A. PINSONNEAULT**
**CONSULTING AND TESTIMONY CASE LISTING**

| | Lawsuit | | Type | Court | Work Performed | Retained Expert |
|---|---|---|---|---|---|---|
| 125 | Eagle Harbor Holdings LLC and MediusTech, LLC v. Ford Motor Co. (Case No. 3:11-cv-05503) | P | Patent Infringement | U.S. District Court, Western District of Washington (Tacoma) | Damages Analysis | ☐ |
| 126 | Eolas Technologies Inc. v. Adobe Systems Inc., et al. (client is Texas Instruments Inc.) | D | Patent Infringement | U.S. District Court, Eastern District of Texas (Tyler Division) | Damages Analysis | ☑ |
| 127 | Extang Corp.; UnderCover, Inc.; and Laurmark Enterprises, Inc. d/b/a BAK Industries v. Truck Accessories Group, LLC d/b/a LEER, Inc. (Case No. 1:19-cv-00923) | P | Patent Infringement | U.S. District Court, District of Delaware | Damages Analysis | ☑ |
| 128 | Function Media LLC v. Google, Inc. and Yahoo!, Inc. | D | Patent Infringement | U.S. District Court, Eastern District of Texas (Marshall Division) | Damages Analysis | ☐ |
| 129 | FutureLogic, Inc. v. Nanoptix, Inc. | D | Patent Infringement | U.S. District Court, Central District of California (Western Division) | Damages Analysis | ☑ |
| 130 | GraphOn Corp v. Classified Ventures, LLC et al. | P | Patent Infringement | U.S. District Court, Eastern District of Texas (Marshall Division) | Damages Analysis | ☐ |
| 131 | GraphOn Corp. v. Juniper Networks, Inc. | P | Patent Infringement | U.S. District Court, Eastern District of Texas (Marshall Division) | Damages Analysis | ☐ |
| 132 | GraphOn v. AutoTrader.com, Inc. | P | Patent Infringement | U.S. District Court, Eastern District of Texas (Marshall Division) | Damages Analysis | ☐ |
| 133 | Guest Tek Interactive Entertainment LTD. v. Nomadix, Inc. (Civil Action No. 18-1394) | D | Patent Infringement | U.S. District Court, District of Delaware | Damages Analysis | ☑ |
| 134 | Huawei Technologies Co., Ltd.; Huawei Device Co., Ltd.; and Huawei Digital Technologies (Chengdu) Co., Ltd. v. Verizon Communications, Inc.; Cellco Partnership D/B/A Verizon Wireless; and Verizon Business Networks Services, Inc. | P | Patent Infringement | U.S. District Court, Western District of Texas (Waco Division) | Damages Analysis | ☐ |
| 135 | In Re: Copaxone 775 Patent Litigation (Teva Pharmaceuticals USA, Inc. et al. v. Sandoz, Inc. et al.) - Case No. 16-1267-GMS) | P | Patent Infringement | U.S. District Court, District of Delaware | Damages Analysis | ☐ |
| 136 | In re: NeuroGrafix ('360) Patent Litigation, retained by Toshiba America Medical Systems and Toshiba Medical Systems Corp. (MDL No. 13-md-2432) | D | Patent Infringement | U.S. District Court, District of Massachusetts | Damages Analysis | ☑ |
| 137 | INAG, Inc. and Mark H. Jones and Sheryle L. Jones as Trustees of the Mark Hamilton Jones and Sheryle Lynn Jones Family Trust U/A/D November 7, 2013 v. Richar, Inc. (Case No. 2:16-cv-00722) | P | Patent Infringement | U.S. District Court, District of Nevada | Damages Analysis | ☑ |

**GREGORY A. PINSONNEAULT**
**CONSULTING AND TESTIMONY CASE LISTING**

| | Lawsuit | | Type | Court | Work Performed | Retained Expert |
|---|---|---|---|---|---|---|
| 138 | Intel Corp., et al. v. Commonwealth Scientific and Industrial Research Organisaztion | D | Patent Infringement | U.S. District Court, Eastern District of Texas (Tyler Division) | Damages Analysis | ☐ |
| 139 | Intellectual Ventures I LLC and Intellectual Ventures II LLC v. Symantec Corp. (Case No. 1:13-cv-00440) | P | Patent Infringement | U.S. District Court, District of Delaware | Damages Analysis | ☐ |
| 140 | Intellectual Ventures I LLC v. Check Point Software Technologies Ltd. Et al. (Case No. 10-cv-1067) | P | Patent Infringement | U.S. District Court, District of Delaware | Damages Analysis | ☐ |
| 141 | Intellectual Ventures I LLC v. Trend Micro Inc. and Trend Micro, Inc. (USA) (Case No. 12-cv-01581) | P | Patent Infringement | U.S. District Court, District of Delaware | Damages Analysis | ☐ |
| 142 | Intellectual Ventures I LLC, et al. v. Capital One Financial Corp., et al. (Case No. 1:13-cv-00740) | P | Patent Infringement | U.S. District Court, Eastern District of Virginia (Alexandria Division) | Damages Analysis | ☐ |
| 143 | Intellectual Ventures I LLC, et al. v. Capital One Financial Corp., et al. (Case No. 8-14-cv-00111) | P | Patent Infringement | U.S. District Court, District of Maryland (Greenbelt Division) | Damages Analysis | ☐ |
| 144 | Intellectual Ventures I LLC, et al. v. PNC Financial Services Group, Inc., et al. (Case No. 2:13-cv-00740) | P | Patent Infringement | U.S. District Court, Western District of Pennsylvania | Damages Analysis | ☐ |
| 145 | Intellectual Ventures II LLC v. Commerce Bancshares, Inc. and Commerce Bank (Case No. 2:13-cv-04160) | P | Patent Infringement | U.S. District Court, Western District of Missouri - Central Division | Damages Analysis | ☐ |
| 146 | Intellectual Ventures II LLC v. JP Morgan Chase & Co. et al. (Case No. 1:13-cv-03777) | P | Patent Infringement | U.S. District Court, Southern District of New York | Damages Analysis | ☐ |
| 147 | Intellectual Ventures II LLC v. SunTrust Banks, Inc. and SunTrust Bank (Case No. 1:13-cv-02454) | P | Patent Infringement | U.S. District Court, Northern District of Georgia - Atlanta Division | Damages Analysis | ☐ |
| 148 | Japan Cash Machine Co. Ltd. and JCM American Corp. v. MEI, Inc. | P | Patent Infringement | U.S. District Court, District of Nevada | Damages Analysis | ☐ |
| 149 | JS Products, Inc. v. Kabo Tool Co. et al. (2:11-cv-01856) | P | Patent Infringement | U.S. District Court, District of Nevada | Damages Analysis | ☑ |
| 150 | Juniper Networks, Inc. v. GraphOn Corp. et al. | D | Patent Infringement | U.S. District Court, Eastern District of Virginia (Alexandria Division) | Damages Analysis | ☐ |
| 151 | Light Guard Systems, Inc. v. Spot Devices, Inc. | P | Patent Infringement | U.S. District Court, District of Nevada | Damages Analysis | ☑ |
| 152 | Marvell v. Commonwealth Scientific and Industrial Research Organization | D | Patent Infringement | U.S. District Court, Eastern District of Texas (Tyler Division) | Damages Analysis | ☐ |
| 153 | Masimo Corp. v. Philips Electronics North America Corp. and Philips Medizin Systeme Boblingen GMBH (Civil Action No. 09-80) | P | Patent Infringement | U.S. District Court, District of Delaware | Damages Analysis | ☐ |

**GREGORY A. PINSONNEAULT**
**CONSULTING AND TESTIMONY CASE LISTING**

| | Lawsuit | | Type | Court | Work Performed | Retained Expert |
|---|---|---|---|---|---|---|
| 154 | Masimo Corp. v. Philips Electronics North America Corp. and Philips Medizin Systeme Boblingen GMBH (Civil Action No. 11-742) | P | Patent Infringement | U.S. District Court, District of Delaware | Damages Analysis | ☐ |
| 155 | MEI, Inc. v. JCM American Corp. and Japan Cash Machine Co. Ltd. | D | Patent Infringement | U.S. District Court, District of New Jersey | Damages Analysis | ☐ |
| 156 | Microscan Systems, Inc. v. Cognex Corp. et al. | P | Patent Infringement | U.S. District Court, Western District of Washington (Seattle) | Damages Analysis | ☑ |
| 157 | Microsoft Corp. v. St. Clair Intellectual Property Consultants, Inc. | D | Patent Infringement | U.S. District Court, District of Delaware | Damages and Econometric Analysis | ☐ |
| 158 | Microsoft Corp., et al. v. Commonwealth Scientific and Industrial Research Organisaztion | D | Patent Infringement | U.S. District Court, Eastern District of Texas (Tyler Division) | Damages Analysis | ☐ |
| 159 | Microunity Systems Engineering, Inc. v. Acer Inc., et al. (client: Texas Instruments Inc.; Motorola Mobility, Inc.; LG Electronics, Inc.; LG Electronics Mobilecomm U.S.A., Inc.; Nokia Corp.; and Nokia Inc.) | D | Patent Infringement | U.S. District Court, Eastern District of Texas (Marshall Division) | Damages Analysis | ☐ |
| 160 | Motorola Mobility, Inc. v. Microsoft Corp. | P | Patent Infringement | U.S. District Court, Southern District of Florida | Damages Analysis | ☐ |
| 161 | Otter Products, LLC v. Treefrog Developments, Inc. d/b/a LifeProof (Case No. 1:11-cv-02180) | P | Patent Infringement | U.S. District Court, District of Colorado | Damages Analysis | ☐ |
| 162 | Paid Search Engine Tools, LLC v. Google, Inc. and Microsoft Corp. | D | Patent Infringement | U.S. District Court, Eastern District of Texas (Marshall Division) | Damages Analysis | ☐ |
| 163 | Papyrus Technology Corp.  v. New York Stock Exchange, Inc. | P | Patent Infringement | U.S. District Court, Southern District of New York | Damages Analysis | ☐ |
| 164 | Power Integrations, Inc. v. Fairchild Semiconductor Intl. et al. | D | Patent Infringement | U.S. District Court, District of Delaware | Damages Analysis | ☐ |
| 165 | Premier International Associates, LLC v. Microsoft Corp. et al. | P | Patent Infringement | U.S. District Court, Eastern District of Texas (Marshall Division) | Damages Analysis | ☐ |
| 166 | Qualcomm, Inc v. Broadcom Corp. (Case No. 05 CV 1662 B (DLM)) | D | Patent Infringement | U.S. District Court, Southern District of California | Damages Analysis | ☐ |
| 167 | Richtek Technology Corp. v. uPI Semiconductor Corp. et al. (Case No. 3:09-cv-05659) | P | Patent Infringement | U.S. District Court, Northern District of California | Damages Analysis | ☐ |
| 168 | Semcon IP Inc. v. MediaTek Inc. and MediaTek USA Inc. (Case No. 2:16-cv-00438) | D | Patent Infringement | U.S. District Court, Eastern District of Texas (Marshall Division) | Damages Analysis | ☐ |
| 169 | Semcon IP Inc. v. Texas Instruments Inc. (Case No. 2:16-cv-00440) | D | Patent Infringement | U.S. District Court, Eastner District of Texas (Marshall Division) | Damages Analysis | ☐ |
| 170 | Silicon Graphics, Inc. v. ATI Technologies, Inc. | D | Patent Infringement | U.S. District Court, Western District of Wisconsin | Damages Analysis | ☐ |

**GREGORY A. PINSONNEAULT**
**CONSULTING AND TESTIMONY CASE LISTING**

| | Lawsuit | | Type | Court | Work Performed | Retained Expert |
|---|---|---|---|---|---|---|
| 171 | Sky Zone, LLC v. Raymond et al. (Case No. 3:11-cv-00141) | P | Patent Infringement | U.S. District Court, District of Nevada | Damages Analysis | ☑ |
| 172 | St. Clair Intellectual Property Consultants, Inc. v. Acer, Inc. et al. | P | Patent Infringement | U.S. District Court, District of Delaware | Damages and Econometric Analysis | ☐ |
| 173 | St. Clair Intellectual Property Consultants, Inc. v. Hewlett-Packard Co. | P | Patent Infringement | U.S. District Court, District of Delaware | Damages and Econometric Analysis | ☐ |
| 174 | St. Jude Medical, Inc. et al. v. Access Closure, Inc. | D | Patent Infringement | U.S. District Court, Western District of Arkansas (Texarkana Division) | Damages Analysis | ☐ |
| 175 | Symantec v. Microsoft Corp. | P | Patent Infringement | | Damages Analysis | ☐ |
| 176 | TableMax IP Holdings, Inc., TableMax Gaming, Inc., and Vegas Amusement, Inc. v. Shuffle Master, Inc. | P | Patent Infringement | U.S. District Court, District of Nevada | Damages Analysis | ☑ |
| 177 | Townshend Intellectual Property, LLC v. Broadcom Corp. | P | Patent Infringement | U.S. District Court, Northern District of California (San Jose) | Damages Analysis | ☐ |
| 178 | TV Interactive Corp. v. Microsoft Corp. (Case No. 02 C 02385) | P | Patent Infringement | U.S. District Court, Norther District of California (Oakland Division) | Damages Analysis | ☐ |
| 179 | United Coin Machine, Co. v. Ardent Progressive Systems and Games, LLC, Golden Gaming, Inc., Golden Tavern Group, LLC, Golden Route Operations, LLC, Herbst Gaming, Inc., and E-T-T, Inc. | P | Patent Infringement | U.S. District Court, District of Nevada | Damages Analysis | ☑ |
| 180 | Universal Electronics Inc. v. Roku, Inc. (Case No. 8:18-cv-01850) | D | Patent Infringement | U.S. District Court, Central District of California (Southern Division) | Damages Analysis | ☑ |
| 181 | University of South Florida Research Foundation, Inc. v. Brit Systems, Inc. (Case No. 3:18-cv-0250) | P | Patent Infringement | U.S. District Court, Northern District of Texas (Dallas Division) | Damages Analysis | ☑ |
| 182 | University of South Florida Research Foundation, Inc. v. Fujifilm Medical Systems U.S.A., Inc. (Case No. 3:18-cv-00215) | P | Patent Infringement | U.S. District Court, District of Connecticut | Damages Analysis | ☑ |
| 183 | UNOVA v. Hewlett Packard | P | Patent Infringement | U.S. District Court, Central District of California (Western Division) | Damages Analysis | ☐ |
| 184 | Versata Software, Inc. et al. v. SAP America, Inc. et al. | D | Patent Infringement | U.S. District Court, Eastern District of Texas (Marshall Division) | Damages Analysis | ☐ |
| 185 | Volumetrics Medical Imaging v. Medison Co. et al. | D | Patent Infringement | U.S. District Court, Middle District of North Carolina | Damages Analysis | ☐ |
| 186 | Walker Digital, LLC and Walker Digital Lottery, LLC v. Multi-State Lottery Association (Case No. 1:10-cv-01113) | P | Patent Infringement | U.S. District Court, District of Delaware | Damages Analysis | ☑ |

**GREGORY A. PINSONNEAULT**
**CONSULTING AND TESTIMONY CASE LISTING**

| | Lawsuit | | Type | Court | Work Performed | Retained Expert |
|---|---|---|---|---|---|---|
| 187 | Winn, Inc. v. Eaton Corp. | P | Patent Infringement | U.S. District Court, Eastern District of Michigan (Southern Division) | Damages Analysis | ☐ |
| 188 | XimpleWare Corp. v. Versata Software, Inc. f/k/a Trilogy Software, Inc. et al. (Case No. 3:13-cv-05161) | P | Patent Infringement | U.S. District Court, Northern District of California | Damages Analysis | ☑ |
| 189 | Nichia Corporation v. Seoul Semiconductor, Ltd. and Seoul Semiconductor, Inc. | D | Patent Infringement (Design Patent) | U.S. District Court, Northern District of California | Damages Analysis | ☐ |
| 190 | Nike, Inc. v. Skechers U.S.A., Inc. (Case No. 2:17-cv-08509) | D | Patent Infringement (Design Patents) | U.S. District Court, Central District of California | Damages Analysis | ☐ |
| 191 | Snap-On Inc. v. Harbor Freight Tools USA, Inc. (Case 16-C-1265) | D | Patent Infringement (Design Patents) | U.S. District Court, Eastern District of Wisconsin | Damages Analysis | ☑ |
| 192 | Bally Gaming, Inc. v. Aristocrat Technologies, Inc., Video Gaming Technologies, Inc., and Aristocrat Leisure Ltd. (Case No. 2:16-cv-02359) | D | Patent Infringement (Design Patents); Trademark Infringement; False Designation of Origin / Unfair Competition | U.S. District Court, District of Nevada | Damages Analysis | ☐ |
| 193 | Apple Inc. v. Samsung Electronics Co., Ltd. et al. (Case No. 11-cv-01846) | D | Patent Infringement (Utility and Design Patents), Trade Dress Infringement and Dilution, and Trademark Infringement | U.S. District Court, Northern District of California | Damages Analysis | ☐ |
| 194 | BlackBerry Ltd. v. Typo Products LLC and Show Media LLC (Case No. 3:14-cv-00023) | P | Patent Infringement (Utility and Design Patents), Trade Dress Infringement and Dilution, and Unfair Business Practices | U.S. District Court, Northern District of California | Damages Analysis | ☑ |
| 195 | Masimo Corp. v. Shenzhen Mindray Bio-Medical Electronics Co., LTD. (Case No. 8-12-cv-02206) | P | Patent Infringement, Breach of Contract | U.S. District Court, Central District of California (Southern Division) | Damages Analysis | ☐ |
| 196 | Grace (Individual) v. California State Automobile Association | P | Personal Injury | N/A | Damages Analysis | ☑ |
| 197 | James Neighbor (individual) v. Owens Mortgage Investment Fund, et al. | D | Personal Injury | Superior Court of California, County of Contra Costa | Damages Analysis | ☑ |
| 198 | Jaramillo v. BCI Coca-Cola et al. | P | Personal Injury | Superior Court of California, County of Madera | Damages Analysis | ☑ |
| 199 | Ryder-Loomis (Individual) v. Allstate Insurance Co. | P | Personal Injury | Superior Court of California, County of San Francisco | Damages Analysis | ☑ |
| 200 | Weiss (Individual) v. Laderman (Individual) | P | Personal Injury | Superior Court of California, County of San Francisco | Damages Analysis | ☑ |
| 201 | LCA-Vision, Inc. d/b/a Las kPlus et al. v. Vision Group Holdings, LC et al. (Case No. A1901821) | D | Tortious Interference with Contract, Tortious Interference with Business Relations and/or Corporate Raiding, Breach of Contract, Breach of Duty of Loyalty, and Civil Conspiracy | Court of Common Pleas of Ohio, Hamilton County | Damages Analysis | ☑ |

**GREGORY A. PINSONNEAULT**
**CONSULTING AND TESTIMONY CASE LISTING**

| | Lawsuit | | Type | Court | Work Performed | Retained Expert |
|---|---|---|---|---|---|---|
| 202 | Masimo Corp. and Cercacor Laboratories, Inc. v. True Wearables, Inc. and Marcelo Lamego (Case No. 8:18-cv-02001) | P | Trade Secret Misappropriation, Breach of Contract, Breach of Fiduciary Duty, and Patent Infringement | U.S. District Court, Central District of California (Southern Division) | Damages Analysis | ☑ |
| 203 | Aesthetica LLC v. LunchboxWax Holdings, LLC, Lunchbox Franchise, LLC, and Rocketbox Ltd. (Case No. 2:17-cv-01045) | P | Trademark Infringement | U.S. District Court, District of Nevada | Damages Analysis | ☑ |
| 204 | Cross Trailers, Inc. v. Cross Trailer Manufacturing And Sales, LLC, et al. | D | Trademark Infringement | U.S. District Court, Western District of Texas (Waco Division) | Damages Analysis | ☑ |
| 205 | Puri v. Golden Temple of Oregon, LLC | D | Trademark Infringement | Arbitration Service of Portland | Damages Analysis | ☑ |
| 206 | Snap Lock Industries, Inc. v. Swisstrax Corp. (Case No. 2:17-cv-02742) | D | Trademark Infringement, False Advertising, Breach of Contract, Unfair Competition | U.S. District Court, District of Nevada | Damages Analysis | ☑ |
| 207 | Rosetta Stone Ltd. v. Google Inc. | D | Trademark Infringement, False Representation, and Unfair Competition | U.S. District Court, Eastern District of Virginia (Alexandria Division) | Damages Analysis | ☐ |
| 208 | John Fogerty v. Stuart Cook, Douglas Clifford, and Poor Boy Productions, Inc. (Case No. 2:15-cv-06069) | P | Trademark Infringement, Lanham Act Violations, Unfair Competition, Breach of Contract | U.S. District Court, Central District of California | Damages Analysis | ☑ |
| 209 | Gabriel et al. v. Idearc Media | D | Unfair Business Practices | U.S. District Court, Central District of California | Damages Analysis | ☐ |
| 210 | Department of Enforcement v. Frank Quattrone | D | Violations of NASD Rules | National Association of Securities Dealers | Damages Analysis | ☐ |
| 211 | Dias v. Kaiser Permanente | P | Wrongful Death | Mediation | Damages Analysis | ☑ |