GIBSON, DUNN & CRUTCHER LLP
CHRISTOPHER CHORBA, SBN 216692
  cchorba@gibsondunn.com
LAUREN M. BLAS, SBN 296823
  lblas@gibsondunn.com
CHRISTIAN S. BRIGGS, SBN 307387
  cbriggs@gibsondunn.com
JASON S. KIM, SBN 307532
  jkim@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

ETHAN DETTMER, SBN 196046
  edettmer@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
  abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA  94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

*Attorneys for Defendant Facebook, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| INTEGRITYMESSAGEBOARDS.COM, LLC,<br><br>           Plaintiff,<br><br>    v.<br><br>FACEBOOK, INC.,<br><br>          Defendant. | Case No. 4:18-cv-05286 PJH<br><br>PUTATIVE CLASS ACTION<br><br>**DEFENDANT FACEBOOK, INC.'S NOTICE OF MOTION AND MOTION TO SEAL PORTIONS OF DEFENDANT FACEBOOK, INC.'S CLASS CERTIFICATION OPPOSITION FILINGS**<br><br>*[Declarations of Holly Tambling, David Amsallem, and Jason Kim; and [Proposed] Order filed concurrently herewith]*<br><br>Hon. Phyllis J. Hamilton<br><br>Hearing:  April 29, 2021, 1:30 p.m. |

1   **TO THIS COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2       **PLEASE TAKE NOTICE** that on April 29, 2021 at 1:30 p.m., or as soon as the matter may

3   be heard by this Court, Facebook, Inc. will move and hereby does move this Court for an order

4   sealing certain portions of its Opposition to Plaintiff's Motion for Class Certification, related exhibits,

5   declarations, and expert reports submitted in support of the Opposition.

6       The portions of these filings identified in this Motion, and in the concurrently filed Appendix

7   to the Declaration of Holly Tambling and [Proposed] Order, should be sealed pursuant to Civil Local

8   Rule 79-5, which authorizes courts to seal information if there is a showing that "the document, or

9   portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under

10  the law," and as long as the request is "narrowly tailored to seek sealing only of sealable material."

11  Facebook's sealing request is "narrowly tailored"—for example, Facebook seeks to seal in full only 1

12  document it previously designated "Highly-Confidential—Attorneys' Eyes Only" or "Confidential"

13  under the Stipulated Protective Order (Dkt. 71) out of the over 60 documents it submits in support of

14  its Opposition.  Moreover, the passages at issue reflect and/or quote from Facebook's internal

15  proprietary, commercially sensitive, and confidential information.  Facebook would be at a

16  competitive disadvantage if this information were to be publicly released, and disclosure of the

17  information is not necessary to the public's understanding of the case.

18      Under Civil Local Rules 7-11 and 79-5, Facebook also moves the Court to provisionally seal

19  portions of its opposition filings that constitute, quote, reference, or otherwise rely on documents that

20  Plaintiff IntegrityMessageBoards.com LLC and/or former Plaintiff Retour, Inc. designated as

21  "Highly-Confidential—Attorneys' Eyes Only" or "Confidential" under the Protective Order, pending

22  briefing under Local Rule 79-5(e) on whether the material should be sealed permanently.

23      Facebook bases this Motion on this Notice, the accompanying Memorandum of Points and

24  Authorities, the Declarations of Holly Tambling, David Amsallem, and Jason Kim, all pleadings and

25  records on file in this matter, and on such matters as may be brought before the Court at the hearing

26  on this Motion.

27

28

1

DATED:  March 3, 2021                    GIBSON, DUNN & CRUTCHER LLP

2

By:        /s/ Christopher Chorba
                Christopher Chorba

3

*Attorneys for Defendant Facebook, Inc.*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FACEBOOK'S NOTICE OF MOTION AND MOTION TO SEAL PORTIONS OF PLAINTIFFS' FIRST AMENDED
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

3      Under Local Rule 79-5, Facebook seeks to seal only the most confidential information in its

4   Opposition, related exhibits, supporting declarations, and supporting expert reports.  In particular,

5   Facebook requests the Court seal the following categories of documents that, if disclosed, would

6   reveal confidential material that would place the company at a disadvantage by giving competitors

7   unfair insight into Facebook's confidential internal processes:  (1) Facebook's internal testing and

8   assessments of product features; (2) Facebook's internal revenue streams; (3) refunds issued to

9   advertisers and the reasons for them; (4) Facebook's business dealings with third parties; and

10  (5) certain technical processes and functionalities of Facebook's systems, including its internal

11  information management systems, and the data underlying them.[1]  Facebook has submitted

12  Declarations from Holly Tambling (Associate General Counsel) and David Amsallem (Data Science

13  Manager) to support its sealing requests.

14      In its ruling on the First Amended Complaint ("FAC") and Facebook's Motion to Dismiss

15  (*see* Dkt. 147), this Court permanently sealed information from the first, second, and fifth categories.

16  These categories include Facebook's internal assessments, revenue streams, and technical processes,

17  respectively.  (*Id*. at 20–22.)  As in the FAC, the internal assessments and technical processes

18  discussed in the filings at issue here are "specific" enough to warrant sealing, and the revenue streams

19  at issue are "financial details" that "provide a glimpse into [Facebook's] mental impressions about

20  how to dedicate its organizational efforts."  (*Id.*)  Plaintiff agrees that such information should be

21  sealed, inasmuch as it did not oppose Facebook's motion to seal information that falls into the second

22  category (revenue) and fifth category (technical processes/data)  and "specific findings of internal

23  testing" contained in Plaintiff's class certification filings.  (Dkt. 160 at 3, 3 n.1.)  Because the same

24  "compelling reasons" standard governs the FAC, the class certification filings, and the opposition

25  filings, the Court should permanently seal information that falls into these categories here.

26

27      [1]  Facebook also seeks to file provisionally under seal portions of its opposition filings that
        constititue, quote, reference, or otherwise rely on documents that IMB and/or Retour designated
28      confidential under the Stipulated Protective Order (Dkt. 71) pending further briefing under Local
        Rule 79-5(e).  This material is listed in the Declaration of Jason Kim.

As for categories 3 and 4 (advertiser refunds and the identities of non-parties), although the Court has not ruled in this case whether such information should be sealed, the "public does not need [to] see" this information in order "to understand this action," let alone to understand what is at issue at class certification.  (Dkt. 147 at 20.)  The refunds are akin to Facebook's "financial details" that this Court has already ordered sealed (*id.*), and courts regularly determine that a non-party's privacy is sufficient to seal information about that non-party.  Facebook respectfully requests the Court seal both categories of information.

## II.  LEGAL STANDARD

"[T]he compelling reasons standard applies to motions to seal documents relating to class certification."  *Yan Mei Zheng v. Toyota Motor Corp.*, No. 17-06591-BLF, 2019 WL 6841324, at *1 (N.D. Cal. Dec. 16, 2019); *see also Hadley v. Kellogg Sales Co.*, No. 16-04955-LHK, 2018 WL 7814785, at *2 (N.D. Cal. Sept. 5, 2018) (same).[2]  Under this standard, the public's right to inspect and access court records "can be overridden given sufficiently compelling reasons for doing so."  *Foltz v. State Farm Mut. Auto Ins. Comp.*, 331 F.3d 1122, 1135 (9th Cir. 2003).

"Compelling reasons" include "sources of business information that might harm a litigant's competitive standing."  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598–99 (1978)).  As this Court has held, "compelling reasons" also include the following:  (a) a company's technical processes and system functions, if "specific description[s]" of them are at issue (Dkt. 147 at 22); (b) its internal studies, if "the specificity" of them "suggest[s] that they might qualify as trade secrets" (*id.* at 21); and (c) a company's "financial details," if the "subject numbers provide some glimpse into [a company's] mental impressions" (*id.* at 20).

## III.  THE COURT SHOULD SEAL SELECT CONFIDENTIAL INFORMATION QUOTED AND SUMMARIZED IN FACEBOOK'S OPPOSITION FILINGS

Consistent with Section 5 of the Protective Order and as stated above, Facebook proposes to narrowly seal only the most confidential information discussed and referenced in its opposition

---

[2]  The alternative, "good cause" standard "presents a lower burden for the party wishing to seal documents than the 'compelling reasons' standard."  *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010).  Facebook would thus prevail under that standard as well.

Gibson, Dunn &
Crutcher LLP

1    filings.  The five categories Facebook seeks to seal are discussed below.

2    **A.      Category 1:  Facebook's Internal Testing and Assessments of Ads Targeting Products**

3           Facebook asks the Court to seal summaries of Facebook's internal testing and assessments of

4    its advertising platform that reveal competitively sensitive information about the platform, including

5    about how advertisers use and value it, the disclosure of which could cause substantial harm.  (*See*

6    Tambling Decl. ¶ 8; Amsallem Decl. ¶¶ 4, 8.)  The Court previously determined that the "specificity"

7    of similar internal assessments supported protection as trade secrets, and accordingly, Facebook has

8    shown a "compelling reason to justify sealing."  (Dkt. 147 at 21.)  Plaintiff agrees, as it must, that

9    "specific findings of internal testing" should be sealed, and it did "not oppose[]" (Dkt. 160 at 3 n.1)

10   the previous motion to seal this material (Dkt. 158).  Finally, the information should be sealed

11   because it reflects and affects Facebook's "business strategies and internal decisionmaking" about the

12   path forward for its ads products.  *Hadley*, 2018 WL 7814785, at *2; *see also* Amsallem Decl. ¶ 6.

13   **B.      Category 2:  Facebook's Revenue Streams**

14          Facebook also seeks to seal characterizations of internal Facebook documents and data that

15   reveal confidential information about the size and relative importance of Facebook's revenue streams,

16   including the amounts that advertisers spend on Facebook's ads targeting products.  This Court has

17   ruled this kind of information should be sealed because it provides a "glimpse into [Facebook's]

18   mental impressions about how to dedicate its organizational efforts," and the "public does not need

19   [to] see the subject financial details to understand this action."  (Dkt. 147 at 20; *see also* Tambling

20   Decl. ¶ 9.)  Plaintiff previously did "not oppose" sealing this information.  (Dkt. 160 at 3.)

21   **C.      Category 3:  Facebook's Refunds and the Reasons for those Refunds**

22          The information in this category includes sensitive information about refunds and the

23   circumstances under which Facebook issues them.  Similar to Facebook's revenue streams, refunds

24   and the reasons for them are precisely the kinds of "financial details" that the public does not need to

25   see to understand this lawsuit, let alone the class certification filings.  Dkt. 147 at 20; *see also Apple v.*

26   *Samsung Elecs. Co., Ltd.*, 727 F.3d 1214, 1225–26 (Fed. Cir. 2013) (sealing "profit, cost, and margin

27   data" under "compelling reasons" standard).  Disclosure would also be improper because it would

28   reveal sensitive information about Facebook's ads auction and delivery process and give competitors

1    unfair insight into how Facebook conducts its business.  *See* Tambling Decl. ¶¶ 10–12.  Both are

2    protected under the "compelling reasons" standard.  *See Apple*, 727 F.3d at 1223–24 ("product-specific

3    information" protected); *Hadley*, 2018 WL 7814785, at *2 ("business strategies" protected).

4    **D.       Category 4:  Facebook's Business Dealings with Third Parties**

5              Facebook also seeks to seal sensitive information about its business dealings with third

6    parties.  The references to these dealings reveal non-public, sensitive information about third-party

7    businesses, and the disclosure of such information in public filings would likely harm Facebook's

8    business relationships with them.  (*See* Tambling Decl. ¶ 13.)  Where, as here, disclosure would

9    result in the "invasion of the third party's privacy," sealing is necessary and appropriate.  *Icon–IP Pty*

10   *Ltd. v. Specialized Bicycle Components, Inc.*, No. 12-03844-JST, 2015 WL 984121, at *3 (N.D. Cal.

11   Mar. 4, 2015) (protecting from disclosure business dealings); *see also Nicolosi Distrib., Inc. v.*

12   *Finishmaster, Inc.*, No. 18-03587-BLF, 2018 WL 10758114, at *2 (N.D. Cal. Aug. 28, 2018) (same).

13   **E.       Category 5:  The Technical Processes and Functionalities of Facebook's Systems**

14             Finally, Facebook seeks to seal confidential, proprietary, and commercially sensitive

15   information regarding the technical functionalities of Facebook's ad targeting systems, and the data

16   and databases that inform those functionalities, disclosure of which could cause substantial harm.

17   (Amsallem Decl. ¶¶ 7–8.)  The documents contain "specific description[s]" of Facebook's ads

18   targeting "functions" and construction, reflect Facebook's trade secrets, and thus should be sealed.

19   (Dkt. 147 at 22.)  Facebook's databases, details regarding the engineering of the databases, and the

20   "specific" data within them are of the same order and should be sealed as well.  *Id*.; *see also*

21   *Opperman v. Path, Inc.*, No. 13-00453-JST, 2017 WL 1036652, at *4 (N.D. Cal. Mar. 17, 2017)

22   (sealing "proprietary source code and sensitive information about Apple's internal review process").

23   **IV.  FACEBOOK'S INTEREST IN SEALING OVERRIDES ANY PUBLIC INTEREST**

24             Relevant factors in deciding whether a party's interest in sealing overcomes the public's

25   interest in disclosure include: (1) the amount of material sought to be sealed (*see Algarin v.*

26   *Maybelline, LLC*, 2014 WL 690410, at *3 (S.D. Cal. Feb. 21, 2014)); (2) the "public interest in

27   understanding the judicial process," and (3) "whether disclosure of the material could result in

28   improper use of the material for scandalous or libelous purposes or infringement upon trade secrets"

1   (*see Pintos*, 605 F.3d at 679 n.6, citation and quotation marks omitted).

2        Here, all of these factors support sealing the material: *First*, Facebook seeks to seal only

3   narrow portions of its opposition filings.  For example, it seeks to seal in full only 1 document that it

4   previously designated confidential out of the over 60 exhibits it submitted in support of its

5   Opposition. *See Algarin*, 2014 WL 690410, at *3 (permitting sealing because party "only s[ought] to

6   seal a limited amount of information"); Dkt. 147 at 14 ("volume of material sought to be sealed" is

7   relevant to sealing inquiry).  Facebook does not seek to seal the majority of Dr. Dominique Hanssens'

8   expert report, only the portions that are competitively sensitive.  The other two expert reports (those

9   of Drs. Catharine Tucker and Stuart Madnick) contain, among other things, trade secret, technical

10   information about Facebook's databases and data within those databases, in the same category of

11   information that Plaintiff did "not oppose" before.  (Dkt. 160 at 3.)

12        *Second*, the passages and exhibits that Facebook seeks to seal are not necessary for the public

13   to understand this lawsuit, let alone the class certification issues.  The public does "not need to know"

14   about the structure of Facebook's data systems, the reasons under which it issues refunds, or non-

15   public revenue streams "to understand this litigation." (Dkt. 147 at 22.)  Moreover, the "specificity"

16   of the internal assessments that Facebook seeks to seal and the fact that they comprise a small

17   fraction of the information at issue "cut in favor of sealing" the information.  (*Id.* at 21.)

18        *Third* and finally, as detailed above and in the Declarations of Holly Tambling and David

19   Amsallem, there is a substantial risk that, if the information at issue is unsealed, it will be used for

20   "scandalous or libelous purposes." *Pintos*, 605 F.3d at 679 n.6; *see also* Tambling Decl. ¶ 15

21   (explaining disclosure could put "Facebook at a competitive disadvantage"); Amsallem Decl. ¶ 8

22   (same).  Facebook's competitors would likely take advantage of the sensitive materials in its internal

23   documents for their own gain, a result that the sealing process is meant to prevent.

24   ## V.  CONCLUSION

25        Facebook narrowly tailors its sealing request to information this Court has previously sealed

26   in the FAC, and additional confidential information that would place the company at a competitive

27   disadvantage, cause substantial harm, and that is unnecessary to the public's understanding of this

28   action.  Facebook respectfully requests the Court seal the information in the Appendix.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED:  March 3, 2021

GIBSON, DUNN & CRUTCHER LLP

By:  _____/s/ Christopher Chorba_____
Christopher Chorba

*Attorneys for Defendant Facebook, Inc.*